George A. Zelcs (*pro hac vice*)
  gzelcs@koreintillery.com
Robert E. Litan (*pro hac vice*)
Randall P. Ewing, Jr. (*pro hac vice*)
  rewing@koreintillery.com
Jonathon D. Byrer (*pro hac vice*)
  jbyrer@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
  stillery@koreintillery.com
Jamie Boyer (*pro hac vice*)
  jboyer@koreintillery.com
Michael E. Klenov, CA Bar #277028
  mklenov@koreintillery.com
Carol O'Keefe (*pro hac vice*)
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Karma M. Giulianelli, CA Bar #184175
  karma.giulianelli@bartlitbeck.com
Glen E. Summers, CA Bar # 176402
  glen.summers@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewetta St. Suite 1200,
Denver, Colorado 80202
Telephone: (303) 592-3100
Facsimile: (303) 592-3140

Ann Ravel
  aravel@mcmanisfaulkner.com
**MCMANIS FAULKNER**
Fairmont Plaza, 10th Floor, 50 West San Fernando Street
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GARY FEITELSON, a Kentucky resident, and DANIEL MCKEE, an Iowa resident, on behalf of themselves and all others similarly situated.;<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE, INC.;<br><br>Defendant. | CASE NO. 5:14-CV-02007 BLF<br><br>**PLAINTIFF MARY CARR'S OPPOSITION TO GOOGLE LLC'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |

Pursuant to Local Rule 3-12, Plaintiff Mary Carr, on behalf of herself and all others similarly situated, submits this Opposition to Google, LLC's Administrative Motion to Consider Whether Cases Should be Related ("Motion"). Judge Donato, who is presiding over *Epic Games, Inc. v. Google, LLC et al.*, Case No. 3:20-cv-05671 ("*Epic*"), has already determined that *Carr, et al. v. Google, LLC, et al.*, Case No. 5:20-cv-05761 ("*Carr*"), and *Pure Sweat Basketball, Inc. v. Google, LLC, et al.*, Case No. 3:20-cv-05792-EMC ("*PSB*"), are related to *Epic* and ordered those cases transferred to his court. For its part, Google admits all of those cases are related. Nevertheless, Google's present Motion posits that *Epic, Carr* and *PSB* "may" be related to *Feitelson v. Google, Inc.*, Case No. 14-cv-02007 ("*Feitelson*"), a lawsuit dismissed over five years ago.

*Epic, Carr* and *PSB* all concern the same subject matter (Google's restrictions on Android-compatible hardware manufacturers and application developers), factual and expert inquiry (whether such restrictions result in anticompetitive harm in a relevant antitrust market), and claims (federal and state antitrust laws). The same is not true of *Feitelson*. That case focused on Google's behavior in the search engine market and involved different parties, conduct and classes. Moreover, *Feitelson* was dismissed in 2015, so there is no risk of duplicative efforts or inconsistent results with *Epic, Carr* and/or *PSB* if the cases are not related. Local Rule 3-12 ensures related cases proceed efficiently and consistently. Relating newly filed app distribution and use cases to a long-defunct search engine lawsuit does not serve that goal. *Feitelson* is not related to *Epic, Carr* and/or *PSB*.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 13, 2020, Plaintiff Epic Games, Inc. ("Epic") filed suit against various Google entities (collectively "Google") for violating the Sherman Antitrust Act, the California Cartwright Act and the California Unfair Competition Law. (*See Epic* Compl., attached as Ex. 1). Three days later, on August 16, 2020, Plaintiff Mary Carr sued the same defendants on behalf of "[a]ll persons in the United States who paid for an app on Google Play, subscribed to an app obtained on Google

Opposition to Administrative Motion to Relate | 2

Play, or paid for in-app digital content on an app obtained on Google Play….." (*See Carr* Compl. at ¶109, attached as Ex. 2). Finally, on August 17, 2020, *PSB* filed suit against those defendants on behalf of "[a]ll U.S. developers of: (a) any paid Android OS app sold in or via the Google Play store, or (b) any paid in-app product (including subscriptions) sold in the Google Play store or via apps distributed in or via the Google Play store." (*See PSB* Compl., at ¶140, attached as Ex. 3).

Judge Donato, who is presiding over *Epic*, has already ruled that *Carr* and *PSB* are related to that case and should be transferred to his court. (*See Epic* ECF Docs. 42 & 46, Related Case Orders, attached as Ex. 4 & 5). Google's present Motion admits that *Epic, Carr* and *PSB* are related. (Google's Mot. at p. 1 & 2). Briefly, those cases allege Google is abusing its monopoly power in the Android app market by: (1) forcing manufacturers to pre-install and prominently display the Google Play Store icon; (2) prohibiting the distribution of an app through Google Play Store that helps users bypass the Store for app downloads or purchases; (3) conditioning use of Google advertising on app distribution through Google Play Store; (4) inhibiting consumers' ability to circumvent the Google Play Store; (5) tying app distribution through the Google Play Store to an agreement to exclusively use Google Play Billing for in-app purchases; and (6) using its role in app distribution and purchasing to enhance Google's revenue-generating services. (Ex. 1, *Epic* Compl.; Ex. 2, *Carr* Compl.; Ex. 3, *PSB* Compl.)

*Epic, Carr* and *PSB* will require a showing that Google's restrictions on original equipment manufacturers ("OEMs") (such as Samsung) *and* app developers (such as Epic) cause an anticompetitive impact in the Android app distribution and in-app payment processing markets. Plaintiffs must produce economic testimony establishing not only the same relevant markets, but harm within those markets—an inquiry involving overlapping factual and expert evidence. The cases also require a showing that no procompetitive impact outweighs Google's marketplace harm, another inquiry requiring essentially identical evidence. Simply put, *Epic*, *Carr* and *PSB* involve

Opposition to Administrative Motion to Relate | 3

the same conduct, markets, facts showing an impact on market participants (including consumers), and legal claims. They are related.

*Feitelson*, in contrast, centered on the Internet search market and alleged Google abused its monopoly power in that market by forcing OEMs to make Google the default search engine on Android devices. (*See Feitelson* Compl., attached as Ex. 6). Proposed class members were Android equipment purchasers whose devices featured Google as the default search engine because of the company's anticompetitive behavior. (*Id*. at ¶84). The case alleged those purchasers paid more for their devices because Google's behavior deprived OEMs of revenue that might otherwise have subsidized prices. (*Id*. at ¶ 71-73). *Feitelson*, therefore, involved a different market and—had it survived the pleading stage—would have involved an entirely different theory of market effects.

While *Feitelson* discussed Google's Mobile Application Distribution Agreement ("MADA"), its sole focus was how that agreement forced OEMs to select Google as the default search engine. (*Id*. at ¶35-36, 41-42, 52). *Feitelson* did not mention app developers, distributors or users, did not discuss how Android apps were distributed, and did not address how users made in-app purchases. (*Id*. at ¶59-73). *Feitelson* was dismissed at the pleading stage in 2015. *See Feitelson, et al. v. Google, Inc.*, 80 F.Supp.3d 1019 (N.D. Cal. 2015).

## ARGUMENT

### I. LEGAL STANDARD

Under Local Rule 3-12(a), actions are related when they "concern substantially the same parties, property, transaction or event" and "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different judges." L.R. 3-12(a) (2020). To determine relatedness, courts consider the parties, procedural posture, claims and underlying facts. *See Pepper v. Apple, Inc.*, 2019 WL 4783951 (N.D.

Opposition to Administrative Motion to Relate | 4

Cal. August 22, 2019). The specific relief sought is not a factor because "courts routinely relate cases in which the theories of damages differ." *Id.* at *2.

## II.   *FEITELSON* IS NOT RELATED TO *EPIC*, *CARR* OR *PSB*.

As described above, Judge Donato has already ruled that *Epic, Carr* and *PSB* are related and Google agrees. Those newly-filed lawsuits concern the same defendants, markets, agreements, abusive conduct governing Android app distribution and in-app purchasing and antitrust claims. By party admission, Local Rule and judicial Order, they are related.

The same is not true of *Feitelson*. That lawsuit involved:

- Different markets (search engine vs. app distribution/in-app payment processing);

- Different classes (Android device purchasers vs. Android app developers and users who utilize Google's app distribution and payment processing);

- Different conduct (abuse of power over OEMs to stifle search engine competition vs. abuse of power over app developers to stifle distribution outside of Google Play Store and/or in-app payment processing outside of Google Play Billing); and

- Different theories of competitive impact (an alleged overcharge in the cost of Android phones vs. an overcharge on app and in-app purchases by virtue of Google's toll to use Google Play Store and/or Google Play Billing).

Google's argument otherwise cannot survive scrutiny. For instance, Google claims the cases all focus on Google contracts "regarding the preloading and placement of Google apps on Android devices." (Google's Mot. at p. 3). However, even a cursory inspection of *Feitelson* reveals no meaningful discussion of Android apps. Nor is there any mention of other Google agreements (for example, the Developer Distribution Agreement) at issue in *Epic, Carr* and *PSB*. There is certainly no examination of how such apps are distributed or how consumers make in-app purchases—the inquiries at the heart of those lawsuits.

Similarly, Google claims the complaints allege "overlapping" anticompetitive theories because they all discuss how Google uses the MADA "to purportedly foreclose competition in the markets alleged in each complaint…." (*Id.*) Again, this paints with too broad a brush. The competition

allegedly foreclosed (competing search engines vs. competing app delivery and payment systems) is markedly different. *Epic*, *Carr* and *PSB* have nothing to do with Yahoo or Bing – the foreclosed search engine competition. Conversely, *Feitelson* had nothing to do with competing app distribution platforms or payment processing options. Even Google admits *Epic, Carr* and *PSB* involve different markets than *Feitelson*. (*Id.*) Google also fails to acknowledge that *Feitelson* never even mentions the "in-app payment processing market," a market whose function is a significant focus in the other three lawsuits. These differences are not minor. They go to the core inquiries and evidence presented in an antitrust case—the markets involved, the anticompetitive conduct alleged and the resulting harm.[1]

Finally, *Feitelson* was dismissed in 2015, so there is no risk of duplicative efforts or inconsistent results if *Epic, Carr* and *PSB* are not related. L.R. 3-12(a). Google does not explain how relating those cases to *Feitelson* would somehow streamline proceedings or conserve resources. Moreover, considering *Feitelson* ended over five years ago, there is little threat of inconsistent rulings. These facts alone defeat any attempt to relate *Epic, Carr* and *PSB* to *Feitelson*.

## **CONCLUSION**

For these reasons, the Court should deny Google's Administrative Motion and rule that *Epic, Carr* and *PSB* do not relate to *Feitelson*.

---

[1] The Court should also reject Google's suggestion that all of these cases be transferred to the San Jose Division of this Court due to §16.8 of Google's DDA and/or Terms of Service. (Google's Mot. at p. 2 n.3). Google subjected itself to the jurisdiction of the Northern District of California and cannot circumvent Local Rule 3-12. Even assuming without conceding that plaintiffs were required to file suit in the San Jose Division of this Court, they abided by that obligation. (*See* Ex. 1, *Epic* Compl., Ex. 2, *Carr* Compl. & Ex. 3, *PSB* Compl.) Google does not explain why a federal court cannot, as a matter of discretion over its docket, transfer a properly filed case to another division in the interests of judicial efficiency and consistency. In fact, the opposite is true. *See, e.g., Chapman Univ. v. Atlantic Richfield Co.*, 2013 WL 12126015 at *4 & 6 (C.D. Cal. 2/25/13); *Barto v. Alon USA Energy, Inc.*, 2012 WL 13020327 at *3 (C.D. Cal. 10/3/12).

| | |
|---|---|
| Dated: September 14, 2020 | s/ Jamie L. Boyer |

George A. Zelcs *(pro hac vice)*
Robert E. Litan *(pro hac vice)*
Randall P. Ewing *(pro hac vice)*
Jonathon D. Byrer *(pro hac vice)*
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *(pro hac vice)*
Jamie L. Boyer *(pro hac vice)*
Michael E. Klenov, CA Bar #277028
Carol L. O'Keefe *(pro hac vice)*
KOREIN TILLERY LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Karma M. Giulianelli, CA Bar #184175
Glen E. Summers, CA Bar #176402
BARTLIT BECK LLP
1801 Wewetta St. Suite 1200,
Denver, Colorado 80202
Telephone: (303) 592-3100
Facsimile: (303) 592-3140

Ann Ravel
MCMANIS FAULKNER
Fairmont Plaza, 10th Floor, 50 West San Fernando Street
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all parties of record on September 14, 2020, through the Court's Electronic Case Filing System.

/s/ Jamie L. Boyer

Opposition to Administrative Motion to Relate | **7**