Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

EPIC GAMES, INC., a Maryland      )
corporation,                      )
                                  )
          Plaintiff,              )
                                  )
  VS.                             )   **NO. C 20-05671 JD**
                                  )
GOOGLE LLC; et al.,               )
                                  )
          Defendants.             )
_____  )
MARY CARR, individually and on    )
behalf of all others similarly    )
situated,                         )
                                  )
          Plaintiffs,             )
                                  )
  VS.                             )   **NO. C 20-05761 JD**
                                  )
GOOGLE LLC; et al.,               )
                                  )
          Defendants.             )
_____  )

                            San Francisco, California
                            Thursday, October 29, 2020


                 **TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR**




        **(CAPTION AND APPEARANCES CONTINUED ON NEXT PAGE)**



Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

1             UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3  Before The Honorable James Donato, Judge

4

   PURE SWEAT BASKETBALL, INC.,    )
5                        )
           Plaintiff,       )
6                        )
   VS.                   )  **NO. C 20-05792 JD**
7                        )
   GOOGLE LLC; et al.,            )
8                        )
          Defendants.      )
9  _____)
   PEEKYA APP SERVICES, INC., on  )
10 behalf of itself and the       )
   proposed class,                )
11                        )
          Plaintiffs,      )
12                        )
   VS.                   )  **NO. C 20-06772 JD**
13                        )
   GOOGLE LLC; et al.,            )
14                        )
          Defendants.      )
15  _____)

16

   **APPEARANCES BY ZOOM WEBINAR:**

17

18  **APPEARANCES:**

19  For Plaintiff Epic Games in C 20-05671 JD:
                  CRAVATH, SWAINE & MOORE LLP
20                825 Eighth Avenue
                New York, New York  10019
21          **BY:  YONATAN EVEN, ATTORNEY AT LAW**

22  For Plaintiffs in Carr, C 20-05761 JD:
                  KOREIN TILLERY LLC
23                505 N. 7th Street - Suite 3600
                St. Louis, Missouri  63101
24          **BY:  JAMIE L. BOYER, ATTORNEY AT LAW**

25      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

1   <u>**APPEARANCES BY ZOOM WEBINAR**</u>:   (CONTINUED)

2   For Plaintiffs in Carroll, C 20-07379 SK:
                             PRITZKER LEVINE LLP
3                            1900 Powell Street - Suite 450
                             Emeryville, California  94608
4                       BY:  **ELIZABETH C. PRITZKER, ATTORNEY AT LAW**

5   For Plaintiffs in Peekya App Services, Inc., C 20-06772 JD:
                             HAUSFELD LLP
6                            600 Montgomery Street - Suite 3200
                             San Francisco, California  94111
7                       BY:  **BONNY E. SWEENEY, ATTORNEY AT LAW**

8   For Plaintiff Pure Sweat Basketball, Inc., C 20-05792 JD:
                             HAGENS BERMAN SOBOL SHAPIRO LLP
9                            1301 Second Avenue - Suite 2000
                             Seattle, Washington  98101
10                      BY:  **STEVE W. BERMAN, ATTORNEY AT LAW**

11  For Defendants:
                             MORGAN, LEWIS & BOCKIUS LLP
12                           One Market - Spear Street Tower
                             San Francisco, California  94105
13                      BY:  **BRIAN C. ROCCA, ATTORNEY AT LAW**
                             **SUJAL J. SHAH, ATTORNEY AT LAW**

14

15

16

17

18

19

20

21

22

23

24

25

1   **Thursday - October 29, 2020**                    **10:32 a.m.**

2                   **P R O C E E D I N G S**

3                      **---oOo---**

4        **THE CLERK:**  Calling Civil 20-5671, Epic Games vs.

5   Google; Civil 20-5761, Carr vs. Google; Civil 20-5792,

6   Pure Sweat Basketball vs. Google; and Civil 20-6772, Peekya

7   Services, Inc., vs. Google.

8        Counsel for the plaintiffs, please indicate which case you

9   are attorneys for.

10        **MR. EVEN:**  Yonatan Even for Epic Games.

11        **MS. BOYER:**  This is Jamie Boyer for Mary Carr.

12        **MS. PRITZKER:**  I'm Elizabeth Pritzker, Pritzker

13   Levine, on behalf of the Carroll plaintiffs in the action

14   20-cv-07379.  Good morning.

15        **MS. SWEENEY:**  Good morning, Your Honor.  Bonny Sweeney

16   for Peekya App Services, Inc.

17        **MR. BERMAN:**  Good morning, Your Honor.  Steve Berman

18   on behalf of Pure Sweat Basketball.

19        **THE COURT:**  Okay.  Anybody else?  That's it?  Okay.

20        **THE CLERK:**  Counsel for defendants.

21        **MR. ROCCA:**  Good morning, Your Honor.  This is Brian

22   Rocca and I'm joined by my colleague Sujal Shah representing

23   the Google defendants.

24        **THE COURT:**  All right.

25        Okay.  This is our continuing proposed order so that you

1   have smooth sailing later.

2        Let me ask a question on the plaintiffs' side.  So the

3   developers have all consolidated; is that right, Ms. Sweeney?

4              **MS. SWEENEY:**  That's correct, Your Honor.

5              **THE COURT:**  Okay.  Now, I have currently two of the

6   consumer cases and I believe there are at least three more in

7   the pipeline; in other words, they're on their way with

8   requests to relate and barring unforeseen circumstances, it's

9   probably going to happen.

10        So it looks like we're now going to have somewhere around

11   five consumer classes -- consumer class actions, and it looks

12   to me also -- I could be wrong, you can tell me -- that it's

13   more or less the same class.

14        So who is here on the consumer side for the plaintiffs?

15              **MS. BOYER:**  Your Honor, I am.

16              **THE COURT:**  Okay.  What are we going to do about that,

17   Ms. Boyer?

18              **MS. BOYER:**  So the three-most recently filed cases

19   we've had some minimal communication with counsel there.  We do

20   not oppose them being related, but we've not had the

21   opportunity to talk about consolidating those matters into a

22   single complaint.

23        We have filed -- on behalf of Carr and Bentley, we have

24   filed a motion to appoint interim counsel, and so we are

25   working toward getting everything coordinated so that things

1   can move forward smoothly but we've not had the opportunity to

2   do that with everyone involved.  We have had the opportunity to

3   speak with Ms. Pritzker, who filed the Carroll case, but our

4   conversations with the other attorneys have been more limited.

5          **THE COURT:**  Okay.  Well, I think we ought to work that

6   through.  I don't want to have and I'm sure you don't either,

7   we're not going to have related entirely overlapping classes.

8   They need to be treated in a consolidated fashion, and I'm not

9   going to get into interim counsel or anything else until

10  everybody has been invited to the table and has had an

11  opportunity to present what they would like to do.

12         I'm sure you-all can work it out.  I'm not worried about

13  that on the counsel's side, but you ought to -- I'm going to

14  task you, Ms. Boyer, with reaching out to all of the pending

15  cases that have asked to be related and all the ones that are

16  related on the consumer side, and why don't you set up some

17  kind of a meeting and come up with a game plan.  All right?

18         **MS. BOYER:**  Okay.

19         **THE COURT:**  Everything else -- I'm going to terminate

20  the interim counsel motions without prejudice.  I'm just going

21  to turn them off because for admin purposes on my end.  And

22  then you-all can either present an attorney proposal or if

23  there's some kind of disagreement about that, then people can

24  bring motions.  Okay?

25         **MS. BOYER:**  Understood, Your Honor.

1          **THE COURT:**  I would prefer not to do the motions.  I'm

2     sure you would too.  I have had very good luck with plaintiffs'

3     counsel working everything out.  There have been a couple of

4     cases where that didn't happen; and if we get to that point,

5     it's usually not a necessarily pleasant experience for

6     everyone.  So I hope you-all can work that out and come up with

7     some kind of a plan.

8          I will just -- as you discussed, please keep one thing in

9     mind.  You are free on the plaintiffs' side, of course, just

10    like the defendants are, to organize your case in any way; but

11    like every other judge I know, when it comes time for payday if

12    you reach that point, there will not be duplicative bills,

13    triplicate bills, quadruple bills.  And I tend to take a very

14    skeptical eye towards five or six different committees for

15    liaisons and this and that and discovery and, you know,

16    national class and state class.

17         So, you know, come up with something that is streamlined

18    and efficient.  You can look at some of my other class cases

19    and you'll get some indication of what those factors might be,

20    but I'm going to leave it up to you, Ms. Boyer.  You're in

21    charge.  Okay?

22         **MS. BOYER:**  Very good.

23         **THE COURT:**  Now, in terms of a scheduling order,

24    first, the way I like to pace cases is to have fact

25    discovery -- class cert proceedings go before the close of fact

1    discovery.  All right?  So it's class cert, get through that;

2    close the fact discovery, finish that; then you do your expert

3    discovery, and then you file your dispositive motions and

4    *Daubert* motions.  All right?

5        So you-all who are here should go back and come up with a

6    schedule for that.  I think that has the happy circumstance of

7    relieving your disagreements about the discovery deadlines

8    before and after class certs and what should the -- should

9    there be a different set of dates for Epic versus the

10   developers and so on.  All right?  So you just work that out

11   because the class cert will be built in before the end of fact

12   discovery.

13       So there should be, unless there's some problem that you

14   can share with me later, but there should be a unified schedule

15   up to trial for all of the cases in that pattern, and you can

16   look at some of my other scheduling orders in class cases if

17   you want to see how that works.

18       Okay.  Any thoughts from anyone about anything else?

19       **MR. BERMAN:**  Yes, Your Honor.  Steve Berman.  Just two

20   questions.

21       **THE COURT:**  Yes.

22       **MR. BERMAN:**  There is a motion for appointment of

23   interim lead counsel that's been filed in the app developer

24   case in response to --

25       **THE COURT:**  I'm sorry.  I was just talking about the

1    consumer side, if there are any there.  On the developer side,

2    you've all worked something out?

3          **MR. BERMAN:**  Yes, we have, Your Honor.  We've

4    submitted a proposed order.  We looked at your other orders.

5    We're aware of your views on duplication and so forth, and

6    we've taken account of that in the order.  We're not aware of

7    any other app developer cases in the pipeline.  Any opposition

8    would be due on November 4th.

9          **THE COURT:**  Just one second.  I think the -- we laid

10   this out in Robinhood, didn't we?  In Robinhood didn't I lay

11   out the nonduplication issue?

12      Okay.  You might -- look, just for everybody on the phone,

13   if you haven't done it already -- it sounds like you've done,

14   you know, what you need to do, but just in case -- look at my

15   consolidation orders in the Robinhood Outage case, the online

16   trader, and a case pending here called Tetra Tech -- Tetra and

17   Tech, two separate words -- and that will give you some

18   guidance on how to structure things.

19      Okay.  I won't terminate that on the developer side.  I

20   have to say I generally don't find interim counsel to be

21   necessary and they have something of a preemptive effect when

22   people get to class counsel side and other cases come in.  So

23   I'll take a look at it, but I may have to have you come in and

24   discuss it.  All right?

25         **MR. BERMAN:**  All right.  We hear you.  One reason we

1  think it's important to do it now rather than later is this is

2  an awful extensive and massive case and in order to get the

3  three proposed leads, you know, comfortable funding and taking

4  their risk, we thought it should be something that should

5  happen now.

6      **THE COURT:**  All right.  I didn't mean to be preemptive

7  because I haven't looked at it at all, but I just wanted to

8  share with you that's the lens through which I will be looking

9  at it.

10      **MR. BERMAN:**  I hear you, Your Honor.

11      **THE COURT:**  The day will come when I take a look at

12  it.  Okay.  It may be just fine, I don't know, but historically

13  it's something that's given me some pause.

14      **MR. BERMAN:**  And then one minor housekeeping issue,

15  Your Honor.  You consolidated the Peekya and Pure Sweat cases,

16  and we want to know whether you want us to file stuff in one

17  docket or both dockets.

18      **THE COURT:**  Oh.

19      **MR. BERMAN:**  I'm just trying to make it easy for your

20  staff.

21      **THE COURT:**  Yes, let me reflect on that.  I'll put it

22  in the minutes.

23      **MR. BERMAN:**  Okay.

24      **THE COURT:**  I'll let you know.

25     Oh, also, let's see -- okay.  Anything else from anybody?

1          **MR. EVEN:**  Your Honor, if I may, Yonatan Even for

2     Epic.

3          **THE COURT:**  Yes.

4          **MR. EVEN:**  One clarification.  So Your Honor I believe

5     said that you'd like a joint schedule.  Our view, at least with

6     respect to once class certification motion is filed, is that

7     our case should proceed and we should not wait on that.  And so

8     I just wanted to clarify Your Honor's view because otherwise

9     I'm sure that we and Google will just go back and disagree on

10    that again.

11         **THE COURT:**  Well, as I was struggling to say earlier,

12    and I probably didn't do it very well, it should have no impact

13    on that because class cert is done before the end of fact

14    discovery.  All right?  So the people who have class -- the

15    cases who have class cert motions will file their class cert

16    motion.  That will then effectively take a scheduling off ramp.

17    I will deal with that, but the next looming deadline will be

18    fact discovery cutoff for everybody.  So it's not going to have

19    any impact on Epic v. Google.

20         The reason I pace it that way is precisely for that

21    reason.  You-all keep doing your thing for fact discovery, for

22    experts, everything gets done while I am reflecting on

23    class cert.  So you will not have a problem with that.

24         **MR. EVEN:**  Thank you, Your Honor.

25         **THE COURT:**  All right.  Anybody else?

1          **MR. ROCCA:**  Yes, Your Honor.

2          **THE COURT:**  Oh, I have -- Yes.  Go ahead.

3          **MR. ROCCA:**  Sorry, Your Honor.  Good morning.  Brian

4    Rocca for Google.

5      I appreciate the Court's guidance on the consolidation

6    issues on the consumer side, 100 percent agree with that.  I'm

7    mindful of the motion to dismiss proposal that we have before

8    the Court, which has a November 13th proposed deadline to file

9    a motion to dismiss.

10     The consumer consolidation side may impact that so if the

11   Court has any guidance on what we should do with that immediate

12   deadline that's coming up, I would appreciate it.

13         **THE COURT:**  Well, that's a deadline across all the

14   cases; is that right?

15         **MR. ROCCA:**  That's correct, Your Honor.

16         **THE COURT:**  You should file that with respect to the

17   developers and to Epic.  I don't want to slow this down.  And

18   the consumer cases likely in my experience have sufficiently

19   different issues so that you're going to end up doing some

20   different briefing anyway.  So you keep on track with Epic and

21   the developers and we'll deal with the consumers later.

22     You will not have to file anything, though, on the 13th

23   for the consumer cases.  I want to get the consolidation worked

24   out first and so your response to the consumer complaints, the

25   two I have now and the three that will be coming in, will be

1  continued until we set another date.  But the other two you

2  should file on the 13th.

3          **MR. ROCCA:**  Very well, Your Honor.

4      The other -- if I may, Your Honor.

5          **THE COURT:**  Yes, of course.

6          **MR. ROCCA:**  We've made a tremendous amount of progress

7  in the last few weeks, and I want to thank the Court and the

8  Court's staff for scheduling this status conference.  It's very

9  helpful.

10      We have submitted, as you may have seen, an ESI protocol.

11  The parties worked very hard on that.  We reached agreement.

12  We've also proposed a discovery coordination order that we're

13  all comfortable with for Your Honor's consideration.

14      There is one issue, though, on the protective order that

15  we flagged in a separate filing.  There's an Exhibit A that's

16  Google's proposal.  There's an Exhibit B that's plaintiffs'

17  proposal, and it has -- it's identical except for one section,

18  7.4, which Google believes is the Model Order Section 7.4, and

19  we understand Your Honor previously indicated that you would

20  implement the model order.  So we're asking you to resolve that

21  issue.  It's the only dispute we really had, to be honest with

22  you.

23          **THE COURT:**  All right.  Just one second.  Let me get

24  that in hand.

25      While we're waiting, now, I typically do this in larger

 1   cases.  This is a larger case.  It may or may not be necessary

 2   so I'm going to ask you.  But at least for the start of the

 3   first six or eight months or so I like to have just 30-day

 4   status conferences set as a matter of course.  You can cancel

 5   them if you-all get together and nobody has anything to

 6   discuss.  That's perfectly fine.  But is there any opposition

 7   to that idea?

 8           **MR. EVEN:**  No, Your Honor.

 9           **MS. SWEENEY:**  No, Your Honor.

10           **MR. BERMAN:**  No, Your Honor.

11           **MR. ROCCA:**  No, Your Honor.  Great idea.

12           **MS. BOYER:**  No.

13           **THE COURT:**  So we'll do that.  For some reason I set

14   you at 10:30.  It will normally not be at 10:30.  It will be at

15   10:00, but I will -- we'll do that; and if it turns out we

16   don't need them, just write to me a week in advance and tell me

17   you're all having a great time together and we don't need to

18   meet.  That would be terrific.

19       Okay.  7.4, Google's position.  I'm looking at Docket

20   Number 77, page 1.

21       All right.  What do you want to do, Mr. Rocca?

22           **MR. ROCCA:**  Your Honor, Section 7.4 relates to highly

23   confidential, attorneys' eyes only designated material, which

24   the parties have stipulated to, that that will be a category of

25   information in this case.  And the question on 7.4 is whether

1    or not in advance of sharing that information with consultants

2    or experts, the identities need to be disclosed.  Google is in

3    favor of disclosure.  The model order for this district

4    includes 7.4 as the default, and that's what we're asking.

5         And there are good reasons and recent case law that

6    enforce 7.4.  In a case of this magnitude involving a lot of

7    third parties, a lot of competitively sensitive information, it

8    seems very appropriate and it is the model order.  So that's

9    all that we're asking.

10        **THE COURT:**  All right.  Who wants to respond on the

11   plaintiffs' side?

12        **MS. BOYER:**  Yes, Your Honor.  This is Jamie Boyer.

13        The use of the phrase "model order" is interesting here

14   because Mr. Rocca is referring to the model order that is

15   typically entered in patent cases as opposed to the stipulated

16   model order for standard litigation.  And so when we're talking

17   about what the norm is and what the default position should be,

18   the inclusion of 7.4 and the provisions that Google wants are

19   not typically included in that.

20        And I think perhaps most persuasive as to why they should

21   not be included in this particular litigation is because in the

22   parallel cases proceeding involving Apple, they have entered

23   protective orders that do not, in fact, include 7.4 and require

24   the disclosure of experts and consultants prior to -- I'm

25   sorry -- disclosing that we want to show attorneys' eyes only

1    information to experts and consultants other than what would be

2    normally required by the federal rules and the orders governing

3    this case.

4        We've not seen and Google's pleadings did not provide an

5    explanation for why in this antitrust action we need to impose

6    these additional hurdles.  Plaintiffs have already agreed to

7    some more limiting language as to who can serve as an expert

8    witness, and we think that the safeguards that we've agreed to

9    are adequate to protect their interests here as well as I think

10   what we all have to agree will be the professionalism of all

11   the attorneys involved, that we will not inappropriately

12   disclose things to our experts nor allow those experts to be

13   bound by this protective order to use that kind of information

14   in --

15       **THE COURT:**  Let me ask you this.  So obviously you-all

16   are far ahead of me, but I'm struggling to see what the trade

17   secrets might be here.  I mean, this is really a case on what

18   happens in public transactions.  So what are the trade secrets,

19   Mr. Rocca?

20       **MR. ROCCA:**  Your Honor, just to be clear, the model

21   order that we're referring to includes the highly sensitive

22   confidential information designation, which all of the parties

23   that are on this Zoom meeting have agreed will be implicated in

24   this case.  The protective order that we've submitted jointly

25   includes that category, and I am very confident that the

parties in this case will produce highly confidential

information.

The model order is not a patent model order.  It is a

patent comma highly sensitive confidential information and/or

trade secret model order.  And so this category will include,

for example, sensitive communications between third parties and

Google, for example; Epic and third parties, for example; that

if the plaintiffs have their way, Your Honor, a party could

take that information and feed it to a consultant who's

involved in the industry.

I can give you an example.  If, for example --

**THE COURT:**  Wait a minute.  Just one moment.  So it's

not trade secrets.  It's communications with business partners;

is that what you're saying?

**MR. ROCCA:**  It's highly -- it's both.  It's internal

Google information that deals with product road maps, highly

sensitive information about competition.  And this matter,

Your Honor, involves OEMs throughout the world who are

competitors with each other.  It involves alternative app

stores who compete with each other.  It involves the video game

industry.  What's interesting here, Your Honor, is that Epic is

a video game company and so it competes with Microsoft Xbox,

Sony PlayStation, Nintendo Switch.  That's all going to be

subject to discovery in this case.

And so if Google, for example, wants to hire as a secret

 1    consultant Epic's number one competitor, under their version,

 2    we could just feed information to those consultants without

 3    having to disclose that to Epic, which would be unfair.  We're

 4    willing to live with the disclosure requirement and the model

 5    order mandate Section 7.4.

 6          And in our statement --

 7          **THE COURT:**  Let me ask you this, though.  Surely --

 8    look, I haven't looked at your proposed order.  Surely you have

 9    restrictions on who can be a consultant or an expert.  For

10    example, it's very typical in cases of this sort that it can't

11    be any -- you know, people will often do a variety of things.

12    They'll say for two years after this case they won't consult

13    with a competitor of any of the parties or they pledge that

14    they never do that business and never will do that business.

15          I mean, what are the restrictions on who can be -- who can

16    see the highly sensitive materials?

17          **MR. ROCCA:**  Your Honor, the restrictions are in the

18    model order, but I wanted to alert the Court to very recent

19    case law which addressed this very concern, and it's called the

20    *In Re Google Assist Privacy Litigation*.  It's cited a few pages

21    down from where you're at, and it addresses this very point

22    that you're making.

23          We're not suggesting any nefarious issues here.  What

24    we're suggesting is if a party brings on a consultant without

25    disclosure and is allowed to provide information that's been

designated highly sensitive, attorneys' eyes only information,
even if that person has no nefarious intent, you can't unring
the bell.

And all we're asking for, Your Honor, is what's allowed to
every other litigant that deals with highly sensitive
information, which is model provision 7.4 that would allow
disclosure.  It doesn't mean that there's going to be a
problem.  It just means there's a disclosure, and Google is
willing to --

**THE COURT:**  Well, here is my concern.  It's a heavy
hand that interferes with opposing party's litigation
strategies.  You've got plenty of safeguards if anything goes
wrong, and it's all hypothetical.  I mean, I just -- you know,
we can spend all day saying "Here are the following 10 things
that can happen that would be a disaster," but that's just
people guessing.  I mean, there's no indication that's going to
happen and you have restrictions, as I understand it -- I
haven't read it yet as I said -- as I understand it, you have
restrictions on who is eligible to be a consultant or either
behind-the-scenes consultant, nontestifying consultant, or
testifying consultant.

So, you know, I'm not really -- you know, restraints on
opposing party's side to handle their case are not ones I don't
tend to be fond of.  I'll tell you what.  Let me take a look at
it.

1          Plaintiffs, you have responded to Google's request?

2          **MS. BOYER:**  Yes, Your Honor.  Each party's statements

3    are put forth in the joint proposed statement --

4          **THE COURT:**  Oh, I see.

5          **MS. BOYER:**  -- and then our competing proposed orders

6    are Exhibit A and B to that proposed statement.

7          **THE COURT:**  All right.  I will -- not today, but

8    probably next week -- issue a short text order on the

9    resolution.

10         Okay.  Anything else for today from anyone?

11         **MR. ROCCA:**  Your Honor, with respect to page limits,

12   you previously indicated that you would consider reasonable

13   extensions in light of the consolidation.  What format would

14   you like us to propose page limits?  I think we proposed some

15   previously.

16         **THE COURT:**  When you do the proposed scheduling order,

17   just put in your agreements on page limits.  Okay?  So there

18   will be a core brief.  It's typically, you know -- 30? -- 25 --

19   typically 25 pages per side, you know, opening brief, opposing

20   brief, and then 15 for the reply.  And 25 should be enough.  If

21   that's not, you can tell me why if you-all agree on it.

22         And then you-all have the opportunity to do a little side

23   brief up to 5 pages each, supplemental side brief, if you have

24   unique fact issues.  If there's a developer or some consumer or

25   somebody who has a special twist on terms of the facts, that's

1  perfectly fine to do in a side brief of 5 pages.

2      This is all laid out in my Capacitors MDL case.  You

3  should consult that if you want to see some actual guidance.

4      And then just put it in the case management statement your

5  proposed scheduling order, and I will take a look at it.

6      Okay.  Anything else?

7                      (No response.)

8      **THE COURT:**  All right.  So we'll meet again probably

9  the first week of December.  I think 30 days from now may be

10  the Thanksgiving holiday.  So we'll meet again the first

11  Thursday in December, and file a joint case management

12  statement a week ahead of time.

13      This is what you need to do.  I'm glad I remembered this.

14  It does not have to be the full one.  All right?  These are

15  check-in conferences.  So, you know, one possibility is you

16  have nothing to discuss, everything is fine, and you would

17  prefer to vacate the conference.  That's fine.  Just send me

18  two lines on that, everybody agrees.  If not, you can just

19  identify what it is you'd like to talk about.

20      Now, what I'd like to do in these is deal with discovery

21  issues as they're coming up.  Make sure that they are set up

22  for me and not on the fly.  I don't -- you can't just spring

23  them on me when we're on the call.  So give me some background

24  about what the discovery issue is, and have each side or each

25  party involved in the dispute give a little statement about

1  what the discovery dispute is; or it can be a discussion about,

2  you know, "We'd like to have the following modifications to the

3  schedule."  Whatever it is, but you can just do a bullet point.

4  You don't have to do the full case management conference

5  statement every time.  Really it's kind of an agenda what you

6  want to talk about with the facts in it so that I can make an

7  informed decision if we have to on the call.

8       As you know from my discovery standing order, you do

9  three-page letters but I'm perfectly happy to use the status

10  conferences to resolve any discovery issues as well.  It keeps

11  your case moving, reduces your workload, and reduces the amount

12  of money you have to spend on discovery disputes.

13       All right.  And anything else you want to raise too is

14  fine.  If I don't want to do it, I'll just say no; but you can

15  put it in the statement, and the odds are good we will take it

16  up.

17       Okay.  Last call, last time, anything else from anybody?

18            **MR. ROCCA:**  Oh, Your Honor, Brian Rocca one more time.

19            **THE COURT:**  Yes.  Sure.

20            **MR. ROCCA:**  On the protective order issue, I just want

21  to make sure it didn't get lost that we are seeking enforcement

22  of the protective order that the parties have agreed to in this

23  case and the plaintiffs are seeking a departure, and our

24  understanding was that the Court in the event of a dispute

25  would impose the model order.

1          And I'm just mindful of the third-party discovery issues,

2     the fact that plaintiffs are a putative class of app developers

3     who compete with each other and have communications with

4     Google; and it just seems like we're going to be back when a

5     third party says, "Okay, I'll produce information," but who's

6     going to get to see it?  Counsel won't be able to articulate

7     who will be able to see it and it's going to lead to far more

8     discovery disputes than Your Honor wants to deal with.  So it's

9     just -- I just ask you to review the papers as I've already

10    indicated, and I appreciate it very much.

11          **THE COURT:**  Okay.

12          **MR. EVEN:**  Your Honor, if I may, one last thing.

13          Just to avoid additional dispute, so we obviously have

14    provided Your Honor with competing schedules but I think the

15    core issue between the parties is whether this case needs to go

16    longer than the 18 months suggested in Your Honor's standing

17    order.

18          Google and Epic mainly have had some back and forth.  I

19    think Epic has proposed something that's around 16 months.

20    Google has proposed something that's a little over two years, I

21    believe.  And I think additional guidance from Your Honor would

22    be helpful for the parties.

23          **THE COURT:**  Now, look, it's your case.  Now, I'll tell

24    you what I will do.  Well, three thoughts.  One, you know,

25    you're redoing the order, the scheduling orders.  Okay?  It's a

clean slate so anything you've done so far is gone.  You're

redoing them.

      **MR. EVEN:**  Understood, Your Honor.

      **THE COURT:**  All right.  And then the second thing is I

don't know why this would take even 18 months.  In my view,

this is probably something that could be done in the next -- we

could probably set a trial in the next -- I was imagining and

hoping we'd have a trial in 2021.  That seems realistic to me

and I may end up doing that.  I don't know.

     But two years is much too long so please do not take

anything over 18 months.  I know you're deep in this case, but

the issues are not so extraordinarily complicated that this

needs to be drawn out for another, you know -- it will be over

24 months if you're going to be 24 months from today because

the complaints were all filed over the summer.

     So this is a good time to move and move briskly in a way

that satisfies everyone's due process interests and the Court's

interest in making sure that justice is done, but we do not

need to drag this thing out.  So I would consider 18 months an

outer limit, and I think you could probably do it faster than

that; and I may -- I, of course, may end up doing that myself

once I see your schedule, but I will let you take the first

crack at it.  Okay?

      **MR. EVEN:**  Thank you, Your Honor.

      **MR. ROCCA:**  Your Honor?

1          **THE COURT:**  Yes, Mr. Rocca.

2          **MR. ROCCA:**  Thank you, Judge Donato.  If I might be

3     heard on that because that raises a notable red flag.

4          The schedules are not that far off.  We have proposed what

5     we believe to be a very realistic and reasonable schedule.

6     Your Honor has cited the Capacitors case on many occasions, and

7     that is not an 18-month case.

8          And this particular case, just so there's no

9     misunderstanding, this is not the Apple iOS case, which is a

10    different ecosystem.  It's a closed ecosystem that competes

11    with Android.  This is an open ecosystem and the plaintiffs

12    have in their complaints identified many, many third parties

13    that are going to be relevant, many of whom sit overseas; and

14    all we're asking is for Your Honor to consider the third-party

15    discovery burdens that we are going to have to grapple with

16    together and to coordinate with, which we've committed to do in

17    the order, but we need sufficient time to do it.  That cannot

18    be rushed when we're dealing with OEMs that are in Korea, in

19    Japan, in Europe, app developers that are strewn throughout the

20    world, alternative app stores, video game companies, Epic's

21    competitors, Google's competitors, Apple, Samsung.

22         It is a very lengthy list of discovery matters that we're

23    going to have to grapple with together, and we have proposed a

24    very reasonable, we believe aggressive, schedule that's not

25    that far off; but to have class cert and trial scheduled so

1   soon, and I know Your Honor has hasn't ordered it yet, but I

2   just want to make sure that we understand the differences

3   between, for example, the Apple case, which doesn't involve as

4   many third parties, and this case, which is inherently an open

5   ecosystem Android and involves a lot of third-party work.

6          **THE COURT:**  All right.  Let me just step in.  I have

7   not paid a whit of attention to the *Apple* case.  I have no idea

8   what the schedule is, I don't know what it's about, and I wish

9   them all good luck.  We're here on your case and I've got

10  confidence, Mr. Rocca, you can make this thing work.

11         So let's get moving.  That's the take away if I were in

12  your position, I wouldn't wait, and let's get that launched and

13  we'll see what happens; but my concerns are that if we set

14  dates too far out, it's going to become an impediment rather

15  than a stimulant to progress.  So you do your dates and I will

16  take a look at them, and we'll see where we are.

17         Okay.  So I will see you-all the first week of December.

18  All right.  Thanks.

19         **ALL:**  Thank you, Your Honor.

20              (Proceedings adjourned at 11:02 a.m.)

21                        ---oOo---

22

23

24

25

1
2
3                    **CERTIFICATE OF REPORTER**

4            I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Thursday, October 29, 2020

8
9
10
11    _____

12        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                   U.S. Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25