Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL**
**SHAPIRO LLP**
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Eamon P. Kelly (*pro hac vice*)
ekelly@sperling-law.com
**SPERLING & SLATER, P.C**.
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile: (312) 641-6492

*Co-Lead Interim Class Counsel for the*
*Developer Class and Attorneys for*
*Plaintiff Pure Sweat Basketball, Inc. v.*
*Google LLC, et al.*

[Additional counsel appear on signature page]

Bonny E. Sweeney (SBN 176174)
bsweeney@hausfeld.com
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

*Co-Lead Interim Class Counsel for the*
*Developer Class and Attorneys for*
*Plaintiff Peekya App Services, Inc. v.*
*Google LLC, et al.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY DEVELOPER ANTITRUST LITIGATION | Master File No. 3:20-cv-05792-JD<br><br>**DEVELOPER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' SEPARATE MOTION TO DISMISS DEVELOPERS' CLAIM FOR DAMAGES**<br><br>Judge:      Hon. James Donato<br>Courtroom: 11, 19th Floor (via Zoom)<br>Hearing:    January 28, 2021<br>Time:       10:00 a.m. |

1    Google has separately moved to dismiss the app developers' claims for Sherman Act over-

2    charge damages. (Google Mem. at 1 (ECF 71-1).) Google has not moved to dismiss the app de-

3    velopers' claims for restitution under the California Unfair Competition Law or damages under

4    the Cartwright Act. According to Google, *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), holds that

5    app developers who directly purchase app-distribution services from Google cannot sue for over-

6    charge damages. Google says app developers, as "upstream suppliers," may sue only for "lost

7    profit damages under a monopsony theory." (Google Mem. at 1.) But *Pepper* contains no such

8    holding. To the contrary, *Pepper* reaffirmed the "bright-line rule" allowing upstream and down-

9    stream direct purchasers, without exception, to sue for overcharge damages. 139 S. Ct. at 1524.

10   In this case, the developer plaintiffs allege they directly purchase app-distribution and in-

11   app-purchase ("IAP") services from Google and that Google charges supracompetitive prices in

12   an abuse of its monopoly power. They alternatively allege that they directly sell digital products

13   to Google and that Google underpays them in abuse of its monopsony power. These are viable

14   claims. Nowhere did *Pepper* overrule longstanding precedent allowing for the recovery of over-

15   charge damages. *See, e.g.*, *Meijer, Inc. v. Abbott Labs.*, No. C 07-5985, 2008 WL 4065839, at *7

16   (N.D. Cal. Aug. 27, 2008) ("[T]he standard method of measuring damages in price enhancement

17   cases is overcharge, not lost profits.") (citation omitted). Nor did it limit damages available on a

18   monopsony theory. The Court merely observed that developers (not before the Court) *might* sue

19   on the theory that Apple, as a monopsonist retailer, caused them to suffer lost profits. *Pepper*, 139

20   S. Ct. at 1525 ("[I]t *could be* that some upstream app developers will also sue Apple on a monop-

21   sony theory.") (emphasis added). Google's motion should be denied.

22   **I.    Pertinent factual allegations.**

23   Plaintiffs allege that they directly purchase app-distribution and IAP services from Google;

24   that Google monopolizes the market for those services; and that Google extracts from them a mo-

25   nopoly overcharge. (Compl. ¶¶ 14, 21, 35, 60, 161, 168, 170, 190, 198, 235, 245, 267.) Alterna-

26   tively, plaintiffs allege that they sell digital products to Google; that Google monopsonizes the

27   market for the digital products; and that "Google uses its monopsony power to underpay … devel-

28   opers below the price they would obtain in a competitive market." (*Id.* ¶¶ 21, 28, 29.)

## II.     Plaintiffs are direct purchasers and may sue for overcharge damages.

In *Pepper*, app developers purchased app-distribution services from Apple, which sold apps to consumers. Apple asserted that the developers "absolutely would have antitrust standing" under *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977), because "they are direct purchasers of distribution services from Apple" and have an "undiluted cause of action for the entire over-charge."[1] Apple argued that consumers could not sue because their overcharge damages would be duplicative of the damages suffered by the upstream developers. This case is the converse. The plaintiffs are app developers, so Google reverses Apple's failed argument and asserts that consumers may sue for overcharge damages but direct-purchaser developers may not.

The Supreme Court rejected Apple's contention that *Illinois Brick* prevents direct purchasers, whether upstream developers, downstream consumers, or both, from suing for overcharge damages. The Court held that "our decision in *Illinois Brick* established a bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." 139 S. Ct. at 1520 (emphasis in original). It explained that "[w]hen there is no intermediary between the purchaser and the antitrust violator, the purchaser may sue" for "the higher-than-competitive price" it paid. *Id*. at 1522-23. Under *Illinois Brick*, a direct purchaser may sue, "as a matter of law," for "the full amount of the overcharge paid by it." 431 U.S. at 724; *see also Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) (holding direct purchaser may seek overcharge damages because seller "takes from the buyer more than the law allows"). Reaffirming that bright-line rule, *Pepper* concludes that "[m]ultiple suits are not atypical when the intermediary in a distribution chain is a bottleneck monopolist or monopsonist (or both)" and that the bottleneck retailer "may be liable … both to downstream consumers and to upstream suppliers." 139 S. Ct. at 1525.

Here, plaintiffs allege they directly purchase app-distribution and IAP services from Google. There is no intermediary between them and Google, and they are not "two or more steps removed from the antitrust violator." *Id*. at 1521. As a matter of law, the "bright-line rule" of

---

[1]     Brief of Apple at 18, 41, *In re Apple iPhone Antitrust Litig.*, No. 14-15000 (9th Cir. July 11, 2014); Brief of Apple at 17, *Apple Inc. v. Pepper*, No. 17-204, 2018 WL 3870180 (Aug. 10, 2018).

1  *Illinois Brick*, reaffirmed in *Pepper*, allows plaintiffs to sue Google for the amount in excess of

2  what "they would have paid in a competitive market" for distribution services. *Id.* at 1519-20.

3  ## III.  Alternatively, Plaintiffs are direct sellers and may sue for underpayments.

4  The law also allows Plaintiffs to sue for underpayments under a monopsony theory. It is

5  unlawful not only for a seller to monopolize a market and overcharge purchasers, but also for a

6  buyer to monopsonize a market and underpay sellers. *See, e.g.*, *Mandeville Island Farms, Inc. v.*

7  *American Crystal Sugar Co.*, 334 U.S. 219, 235 (1948) (holding that agreement to reduce price

8  paid to beet growers was unlawful "even though the price-fixing was by purchasers" and injured

9  "sellers, not customers or consumers"). As the Supreme Court held in *Weyerhaeuser Co. v. Ross-*

10  *Simmons Hardwood Lumber Co.*, "monopsony is to the buy side of the market what a monopoly

11  is to the sell side." 549 U.S. 312, 320 (2006). Thus, "monopsony pricing … is analytically the

12  same as monopoly or cartel pricing and [is] so treated by the law." *Id.* at 321-22 (quoting paren-

13  thetically *Khan v. State Oil Co*, 93 F.3d 1358, 1361 (7th Cir. 1996)).

14  Just as purchasers are entitled to sue for overcharge damages, sellers are entitled to sue for

15  underpayment. *American Crystal Sugar Co. v. Mandeville Island Farms, Inc.*, 195 F.2d 622, 625

16  (9th Cir. 1952) (awarding damages based on underpayment to beet growers); *In re High-Tech*

17  *Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1223 (N.D. Cal. 2013) (allowing plaintiff to prove

18  class-wide damages by showing "percentages by which Defendants undercompensated" class).

19  Here, plaintiffs allege in the alternative that Google directly purchases digital products and

20  "uses its monopsony power to underpay Android OS developers below the price they would obtain

21  in a competitive market." (Compl. ¶¶ 21, 28, 29.) Google can be viewed as the "bottleneck" retailer

22  addressed in *Pepper*—dealing directly as a monopsonist with upstream sellers and directly as a

23  monopolist with downstream consumers. As *Pepper* holds, both "downstream consumers" and

24  "upstream suppliers" may sue. 139 S. Ct. at 1525. Thus, because the upstream app developers sell

25  directly to Google, they may (as a matter of law) sue for underpayments they suffer, just as direct

26  purchasers may sue for overcharges. They also may sue for lost profits if they choose.

27

28

1

## IV.    Plaintiffs are not limited to lost profit damages.

2

3        Google nonetheless argues that the app developers are merely "upstream suppliers" who

4    "may only seek alleged lost profits under a monopsony theory, not overcharges." (Google Mem.

5    at 1, 3.) But no court has ever held that one party who deals directly with an antitrust violator is

6    precluded from seeking overcharge or underpayment damages. *Pepper* certainly did not do so.

7        Apple argued in *Pepper* (as Google does here) that "direct purchasers from the alleged

8    monopolist" may not sue for overcharges if the policy reasons given by *Illinois Brick* for prevent-

9    ing indirect purchasers from suing—including avoidance of duplicative recovery—are met. 139

10   S. Ct. at 1524. But the Supreme Court rejected that argument, reaffirming that direct purchasers

11   may sue for allowable damages without exception: "As we said in *Utilicorp*, however, the bright-

12   line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of *Illinois*

13   *Brick* 'apply with equal force' in every individual case. We should not engage in 'an unwarranted

14   and counterproductive exercise to litigate a series of exceptions.'" *Id*. (citations omitted).

15       Having reaffirmed that plaintiffs who deal directly with an antitrust violator may sue for

16   overcharges (or underpayments) without exception, the Court rejected, for a second independent

17   reason, Apple's contention that direct purchasers' ability to sue for overcharge damages can be

18   restricted. "[E]ven if we engage with this argument," the Court stated, "we conclude that the three

19   *Illinois Brick* rationales—whether considered individually or together—cut strongly in the plain-

20   tiffs' favor here, not Apple's." *Id*. In this regard, the Court also rejected Apple's argument that

21   "allowing consumers to sue will result in 'conflicting claims to a common fund'":

22           This is not a case where multiple parties at different levels of a distribution chain
             are trying to all recover the same passed-through overcharge initially levied by the
23           manufacturer at the top of the chain. … The overcharge [to consumers] has not been
             passed on by anyone to anyone. Unlike in *Illinois Brick*, there will be no need to
24           "trace the effect of the overcharge through each step in the distribution chain."

25   *Id*. at 1524-25 (citations omitted).

26       The Court acknowledged that this may leave the antitrust violator "subject to multiple suits

27   by different plaintiffs." *Id*. at 1525. But the "mere fact that an antitrust violation produces two

28

---

OPPOSITION TO MOTION TO DISMISS DEVELOPERS'
CLAIM FOR DAMAGES – Case No. 3:20-cv-05792-JD                                    4

1  different classes of victims hardly entails that their injuries are duplicative." *Id*. (citation omitted).[2]

2  Where the antitrust violator is an intermediary, it may be liable "both to downstream consumers

3  and to upstream suppliers." *Id*. Thus, the developers' recovery of damages based on supracompet-

4  itive commissions would not duplicate any recovery by consumers because consumers' damages

5  would not be based on commission overcharges. Under *Pepper*, "consumers seek damages based

6  on the difference between the price they paid and the competitive price," *id*., and thus, in this case,

7  would need to prove that Google abusively charged anticompetitive prices for apps (and in-app

8  products). Nor would consumers' damages duplicate any alternative monopsony damages sought

9  by the developer plaintiffs—whether based on underpayment or lost profits.

10      Google places great weight on one sentence in *Pepper*, which stated hypothetically that

11  "app developers would seek lost profits they could have earned," *id*. (Google Mem. at 1, 3.) Google

12  insists the Court intended—without explanation—to overrule the body of law that direct purchas-

13  ers from a monopolist or sellers to a monopsonist may, as a matter of law, seek overcharge or

14  underpayment damages. But Google is wrong. The Court did not say that app developers could

15  not also sue for underpayment damages, or that such damages are prohibited by an exception to

16  *Illinois Brick*'s bright-line rule. Nor is there a logical reason to treat monopsony damages differ-

17  ently than monopoly damages because "monopoly and monopsony are symmetrical distortions of

18  competition from an economic standpoint." *Weyerhaeuser Co.*, 549 U.S. at 321-22 (quoting par-

19  enthetically *Vogel v. American Soc. of Appraisers,* 744 F.2d 598, 601 (7th Cir. 1984)).

20      **VI.    Conclusion.**

21      Plaintiffs respectfully request that Google's motion be denied but that, if needed, they be

22  given leave to amend their complaint, including with respect to monopsony lost-profits damages.

23

24

25

26  _____

[2]    The overcharge paid by a consumer is the difference between the price paid and the competitive
27  retail price. It is not the underpayment suffered by the upstream developer. *See* Roger D. Blair &
Jeffrey L. Harrison, *Antitrust Policy and Monopsony*, 76 Cornell L. Rev. 297, 358 (1991) (explain-
28  ing that there is no "multiple liability problem" between upstream sellers and downstream buyers).

1

2   Dated:  December 21, 2020                    Respectfully submitted,

3                                               By:    /s/ Eamon P. Kelly
                                                    _____
4

5                                               Eamon P. Kelly (*pro hac vice*)
                                                Paul E. Slater (*pro hac vice*)
6                                               Joseph M. Vanek (*pro hac vice*)
                                                Alberto Rodriguez (*pro hac vice*)
7                                               SPERLING & SLATER, P.C.
                                                55 W. Monroe Street, 32nd Floor
8                                               Chicago, IL 60603
                                                Telephone: (312) 676-5845
9                                               Facsimile:  (312) 641-6492
                                                pes@sperling-law.com
10                                              ekelly@sperling-law.com
                                                jvanek@sperling-law.com
11                                              arodriguez@sperling-law.com

12

13                                              Steve W. Berman (*pro hac vice*)
                                                Robert F. Lopez (*pro hac vice*)
14                                              HAGENS BERMAN SOBOL SHAPIRO LLP
                                                1301 Second Avenue, Suite 2000
15                                              Seattle, WA  98101
                                                Telephone:  (206) 623-7292
16                                              Facsimile:  (206) 623-0594
                                                steve@hbsslaw.com
17                                              robl@hbsslaw.com

18

19                                              Benjamin J. Siegel (SBN 256260)
                                                HAGENS BERMAN SOBOL SHAPIRO LLP
20                                              715 Hearst Avenue, Suite 202
                                                Berkeley, CA 94710
21                                              Telephone: (510) 725-3000
                                                Facsimile:  (510) 725-3001
22                                              bens@hbsslaw.com

23
                                                *Co-Lead Interim Class Counsel for the Developer*
24                                              *Class and Attorneys for Plaintiff Pure Sweat*
                                                *Basketball v. Google LLC et al.*
25

26

27

28

OPPOSITION TO MOTION TO DISMISS DEVELOPERS'
CLAIM FOR DAMAGES – Case No. 3:20-cv-05792-JD                                6

1

Dated:  December 21, 2020                         Respectfully submitted,

2                                                  By:    /s/ Bonny E. Sweeney

3

4                                                  Bonny E. Sweeney (SBN 176174)
                                                   Samantha J. Stein (SBN 302034)
5                                                  HAUSFELD LLP
                                                   600 Montgomery Street, Suite 3200
6                                                  San Francisco, CA 94111
                                                   Telephone.: (415) 633-1908 (main)
7                                                  Telephone: (415) 633-1953 (direct)
                                                   Facsimile:  (415) 358-4980
8                                                  bsweeney@hausfeld.com
                                                   sstein@hausfeld.com
9

10                                                 Melinda R. Coolidge (pro hac vice forthcoming)
                                                   HAUSFELD LLP
11                                                 1700 K Street, NW, Suite 650
                                                   Washington, DC 20006
12                                                 Telephone: (202) 540-7200 (main)
                                                   Telephone: (202) 540-7144 (direct)
13                                                 Facsimile:  (202) 540-7201
                                                   mcoolidge@hausfeld.com
14

15                                                 Katie R. Beran (pro hac vice forthcoming)
                                                   HAUSFELD LLP
16                                                 325 Chestnut Street, Suite 900
                                                   Philadelphia, PA 19106
17                                                 Telephone: (215) 985-3270 (main)
                                                   Telephone: (267) 702-3215 (direct)
18                                                 Facsimile:  (215) 985-3271
                                                   kberan@hausfeld.com
19

20                                                 Scott A. Martin (pro hac vice forthcoming)
                                                   Irving Scher (pro hac vice forthcoming)
21                                                 HAUSFELD LLP
                                                   33 Whitehall Street, 14th Floor
22                                                 New York, NY 10004
                                                   Telephone: (646) 357-1100 (main)
23                                                 Telephone: (646) 357-1195 (direct)
                                                   Facsimile:  (212) 202-4322
24                                                 smartin@hausfeld.com

25

26                                                 *Co-Lead Interim Class Counsel for the Developer
                                                   Class and Attorneys for Plaintiff Peekya App
27                                                 Services, Inc. v. Google LLC et. al*

28

1

2

## **E-FILING ATTESTATION**

3

   I, Eamon P. Kelly, am the ECF User whose ID and password are being used to

4

file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the

5

signatories identified above has concurred in this filing.

6

7

             /s/ Eamon P. Kelly

_____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28