Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Eamon P. Kelly (*pro hac vice*)
ekelly@sperling-law.com
SPERLING & SLATER P.C.
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: 312-641-3200

*Co-Lead Interim Class Counsel for the
Proposed Class and Attorneys for Plaintiffs
Pure Sweat Basketball, Inc. and LittleHoots LLC*

Melinda R. Coolidge (*pro hac vice*)
mcoolidge@hausfeld.com
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200

*Co-Lead Interim Class Counsel for the
Proposed Class and Attorneys for Plaintiffs
Peekya App Services, Inc. and Scaliso LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE GOOGLE PLAY DEVELOPER ANTITRUST LITIGATION | Case No. 3:20-cv-05792-JD<br><br>**SUPPLEMENTAL NOTICE AND DISTRIBUTION PLAN FOR PROPOSED DEVELOPER PLAINTIFF SETTLEMENT**<br><br>Judge: Hon. James Donato |

## I.   PRELIMINARY STATEMENT

On June 30, 2022, Developer Plaintiffs moved for preliminary approval of their settlement with Google. Under the proposed settlement, Google will contribute $90 million to a non-reversionary settlement fund—36-38% of the settlement class's alleged single damages—and commit to a range of structural reforms that will make Android app development a more productive and profitable enterprise. *See* ECF No. 218 at 11-14.

Plaintiffs' moving papers anticipated a claims rate comparable to the 13% rate achieved in a previously approved developer settlement with Apple. *See* ECF No. 218 at 17. The settlement fund in that Apple case represented 30-34% of asserted damages, slightly below the 36-38% ratio secured by this settlement. *See* ECF No. 218 at 12.

At the August 4, 2022 preliminary approval hearing, the Court reserved judgment pending submission of a supplemental plan that would (a) drive participation in the settlement above 13%, and (b) provide "additional methods of notice that will leverage the direct relationship defendant Google has with proposed class members." *See* ECF No. 220, Minute Entry.

Working diligently since the preliminary approval hearing, the parties have designed a proposed supplemental notice and distribution plan to address both of the Court's concerns.

*First*, to drive settlement participation, the parties propose a process for pushing payments directly to developers. Under this proposed approach, developers would not need to submit a claim. Developers will have the opportunity to elect an electronic payment, but even if a developer does not elect an electronic payment, the Settlement Administrator will send a paper check to the developer using contact and other information maintained by Google in connection with the developer's account.

*Second*, to leverage its relationship with the settlement class, Google has agreed to use its class member contact information to notify class members of the settlement and direct them to the Settlement Website. Specifically, Google will send developers supplemental notice via the "console" developers access to manage their Google Play accounts, which would trigger a corresponding email to developers. This supplemental notice by Google would augment the existing notice plan, which

already includes direct email and postcard notice from the Settlement Administrator, as well as a comprehensive media campaign.

While the parties are optimistic that this revised plan addresses the Court's concerns, rather than submit amended settlement and notice documents at this time, the parties felt it would be most efficient to first outline the proposed plan for the Court's consideration. If the contours of the plan are acceptable to the Court, Plaintiffs can promptly renew their motion for preliminary approval with the supporting documents amended accordingly and consistent with any further guidance the Court provides.

## II. SUPPLEMENTAL NOTICE AND DISTRIBUTION PLAN

### A. Proposed Procedures for Distributing Payments to Settlement Class Members.

The $90 million settlement fund is non-reversionary and all parties involved have an interest in seeing the fund distributed to as many settlement class members as possible. While involving Google more directly in notice (*see* Point II.B *infra*) could drive claims above the 13% initially estimated, Plaintiffs believe that the increase could be modest, particularly with respect to those developers receiving the $250 minimum settlement payment. Mindful of the Court's comments at the preliminary approval hearing, the parties have worked constructively with Settlement Administrator Angeion to eliminate the claims process entirely. Under this revised approach, the parties would utilize class member contact information maintained by Google to ***push payments directly to developer class members***. The process would work as follows:

**Notice**. Using developer contact information provided by Google, Angeion would provide direct notice to settlement class members and, as addressed below, Google would augment this direct notice with supplemental notice of the settlement through messages delivered in the Play console. *See* Point II.B *infra*. In substance, the Settlement Administrator's notice documents would be comparable to the versions previously submitted (ECF No. 218-2, Exs. B & C), except that the notice will state that, if a potential class member does not take any action, the Settlement Administrator will send a check to the developer using the information Google has provided regarding the developer.

All forms of direct notice from the Settlement Administrator would also contain a unique identification code that settlement class members could input on the settlement website to identify the address the Settlement Administrator has on file for the developer, and the developer's estimated payment amount. As initially proposed, this direct notice campaign would be supplemented with a robust media and advertising campaign. *See* ECF No. 218-2, ¶¶ 24-32.

**Right to Opt-Out, Object, and/or Contest Accuracy of Settlement Administrator's Data**. Class members would have 65 days to opt-out of the settlement or to object. In addition, settlement class members would have the right to contest the accuracy of the Settlement Administrator's data before making an election. That is, if a developer believes it is entitled to a higher settlement payment because it paid service fees exceeding those the administrator has on record, that developer would have an opportunity to supply supporting records and, if warranted, receive a higher payment.

**Pushed Distribution.** Payments would be pushed to settlement class members both digitally and by check with no need to submit a claim. Specifically, the settlement website would provide the option to select a digital payment—PayPal, Venmo, or prepaid card. To elect this option, the settlement class member would be required to check boxes providing the verifications of class membership contained in the previously proposed claim form. *See* ECF No. 218-2, Ex. E.

Settlement class members that elect a digital payment would receive their settlement payment in the chosen digital format. Any settlement class member that does not elect a digital payment would, without taking any further action, receive a physical check with their settlement distribution. Checks would be directed to the address Google has on file for settlement class members, with the endorsement line requiring the same verifications of class membership contained in the previously proposed claim form. *See* ECF No. 218-2, Ex. E.

Before checks are pushed, Angeion would perform due diligence to ensure that the recipient addresses are valid. Angeion would also undertake reasonable efforts to contact settlement class members receiving checks greater than $20,000, both to reconfirm class membership and to ensure that the checks are properly addressed. Approximately one month after distributing payments to the class, Angeion would begin using available telephone numbers and email addresses to contact class

members who have not cashed their checks. Checks uncashed after six months would be cancelled and the funds redistributed to settlement class members who elected digital payments or cashed their initial checks. Any funds remaining or uncashed six months after the second distribution would be redistributed to Code.org, the settlement's cy pres recipient. *See* ECF No. 218-1, ¶ 14.

**Supplemental Claims Process**. The settlement website will also contain a claim form that developers can populate if they believe they are members of the settlement class but did not, for whatever reason, receive direct notice. Again, there would be no requirement for settlement class members to complete the form to receive a payment. The claim form would exist only to supplement the direct distribution scheme outlined above. Before pushing payments, Angeion would process any claim forms received, and any claimant substantiating class membership would receive a payment in a chosen format (digital or physical check).

In sum, this proposed distribution plan would not only expand settlement participation beyond the 13% claims rate initially estimated, it would result in nearly all—if not all—members of the settlement class receiving a distribution, with the burden of a claim form eliminated entirely. After consulting with Angeion, the proposed Settlement Administrator, Plaintiffs believe that this approach is feasible, secure, and will ensure the highest possible participation in the settlement.

**B.     Proposed Supplemental Notice From Google.**

Notice would not be needed to drive claims under the distribution plan proposed above, since payments would be pushed. Notice would, however, still be necessary to apprise class members of the settlement and their rights to opt out and object.

As directed by the Court, the parties have evaluated how Google can leverage its relationship with settlement class members to augment the Settlement Administrator's notice campaign. The parties propose the following steps:

*First*, Google can use the Google Play Console to communicate directly with the settlement class. The Google Play Console is the online interface that developers access to publish and manage apps distributed through the Google Play Store. The console features an "inbox" where Google periodically delivers messages affecting Google Play developers and their accounts. An apparatus is

thus already in place for Google to message its developers, and it can be utilized by Google to notify class members of the settlement.

*Second*, the posting to developers' console inboxes will also trigger a separate email to the email address associated with each settlement class member's Google Play account. Accordingly, even developers who do not log into the console during the notice period will receive notification from Google.

In terms of substance, the parties believe Google's supplemental console and email notice will have the most impact, and the least risk of interfering with the Settlement Administrator's own notice efforts, if they are streamlined to include only the essential details of the settlement, along with directions to visit the settlement website for additional information. The notice provided by Angeion would, as initially proposed, be more detailed and feature all the elements required by Rule 23 and this Court's Procedural Guidance for Class Action Settlements. *See* ECF No. 218-2, Exs. B & C

### III.   CONCLUSION

Plaintiffs respectfully submit that the foregoing modifications to the notice and distribution plan will provide the best notice practicable and yield maximum settlement participation. If the supplemental plan is acceptable to the Court, the parties will amend their settlement agreement accordingly and Plaintiffs will file a renewed motion for preliminary approval with amended supporting documents. The parties can also appear at the Court's convenience to elaborate on this supplemental plan and address any questions the Court may have.

Dated:  August 25, 2022                    Respectfully submitted,

By    /s/ *Steve W. Berman*
   Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
Ted Wojcik (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ben M. Harrington (SBN 313877)
Benjamin J. Siegel (SBN 256260)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
benh@hbsslaw.com
bens@hbsslaw.com

By *s/ Melinda R. Coolidge*
    Melinda R. Coolidge (*pro hac vice*)
Yelena W. Dewald (*pro hac vice*)
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200 (main)
Telephone: (202) 540-7144 (direct)
Facsimile:  (202) 540-7201
mcoolidge@hausfeld.com
ydewald@hausfeld.com

Katie R. Beran (*pro hac vice*)
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270 (main)
Telephone: (267) 702-3215 (direct)
Facsimile:  (215) 985-3271
kberan@hausfeld.com

Kyle Geoffrey Bates (SBN 299114)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908 (main)
Telephone: (415) 633-1953 (direct)
Facsimile:  (415) 358-4980
kbates@hausfeld.com

By   */s/ Eamon P. Kelly*
Eamon P. Kelly (*pro hac vice*)
Joseph M. Vanek (*pro hac vice*)
Alberto Rodriguez (*pro hac vice*)
**SPERLING & SLATER, P.C.**
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile:  (312) 641-6492
jvanek@sperling-law.com
ekelly@sperling-law.com
arodriguez@sperling-law.com

*Interim Co-Lead Class Counsel and Proposed Settlement Class Counsel*