1  | Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Bonny E. Sweeney (SBN 176174)
bsweeney@hausfeld.com
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908

Eamon P. Kelly (*pro hac vice*)
ekelly@sperling-law.com
SPERLING & SLATER P.C.
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: 312-641-3200

*Co-Lead Interim Class Counsel for the*
*Proposed Class and Attorneys for Plaintiffs*
*Peekya App Services, Inc. and Scaliso LLC*

*Co-Lead Interim Class Counsel for the*
*Proposed Class and Attorneys for Plaintiffs*
*Pure Sweat Basketball, Inc. and LittleHoots*
*LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY DEVELOPER ANTITRUST LITIGATION | Case No. 3:20-cv-05792-JD<br><br>**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF DEVELOPER PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**<br><br>Date: November 17, 2022<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

DECLARATION OF STEVE W. BERMAN IN SUPPORT OF DEVELOPER PLAINTIFFS'
RENEWED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 3:20-cv-05792-JD

010803-11/2046445 V1

1    I, Steve W. Berman, declare under penalty of perjury under the laws of the United States as

2    follows:

3    1.    I am an attorney duly licensed to practice before all of the courts of the State of

4    Washington, and my *pro hac vice* application was approved by this Court. I am the Managing partner

5    of the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"). I submit this Declaration

6    in Support of the Developer Plaintiffs' Renewed Motion for Preliminary Settlement Approval. I have

7    full knowledge of the matters stated herein and could and would testify thereto.

8    2.    Hagens Berman, Sperling & Slater, P.C., and Hausfeld LLP were appointed by the

9    Court as co-lead Interim Class Counsel ("Class Counsel") for the Developer Plaintiffs on December

10    11, 2020. *See* ECF No. 79.

11    3.    During the course of this litigation, Developer Plaintiffs' case was coordinated for

12    pretrial purposes with similar actions brought by consumers and Epic Games (ECF No. 70) and then

13    incorporated into the *In Re: Google Play Store Antitrust Litigation*, which has since expanded to

14    include claims brought by 39 Attorneys General and Match Group, LLC. Case management has been

15    complex, with the parties negotiating more than twenty protocols and joint status submissions,

16    including with respect to discovery coordination, protective orders (several), depositions, and

17    experts.

18    4.    Coordinated discovery has yielded a massive discovery record and required enormous

19    effort. The parties propounded more than 560 Document Requests and Interrogatories. More than 5.7

20    million documents and 28.7 million pages have been produced. The parties have collectively taken

21    45 depositions, and Developer Plaintiffs have taken or defended 26 of these. More than 75 third

22    parties have been subpoenaed for either documents or testimony, or both, with third parties alone

23    producing approximately 600,000 documents. Google has produced massive transactional and

24    revenue datasets that total close to 11 terabytes. Three of the Named Plaintiffs (Peekya, LittleHoots,

25    and Scalisco LLC) responded to 71 document requests, and a third class representative, Pure Sweat

26    Basketball, responded to 92. The Named Plaintiffs also responded to eighteen interrogatories and

27    thirteen preservation interrogatories.

28

5.      Developer Plaintiffs have worked closely with economic, accounting, and technical experts to build their case. After analyzing the record, these experts prepared four opening expert reports, all dated February 28, 2022, addressing issues related to class certification. After Google served two opposition reports on March 31, 2022, Developer Plaintiffs' experts prepared three rebuttal reports, which were served on Google on April 25, 2022. Developer Plaintiffs' expert reports total 723 pages, exclusive of backup files.

6.      The parties engaged in two remote mediation sessions with Professor Eric D. Green to discuss potential resolution of the case. The first occurred on March 8, 2021. At that initial session, the parties discussed a potential resolution involving a reduced Google service fee for small developers. Although the parties did not reach agreement, Google announced shortly after this initial session that it would be reducing its service fee to 15% for the first $1 million in annual earnings for all developers. *See* **Exhibit A**.

7.      After more than another year of intensive litigation, the parties mediated again with Professor Green on May 13, 2022. This second session was conducted after the Apple settlement had been preliminarily approved, which provided a framework for discussions. The parties made substantial progress but, after a full day of negotiations, were unable to reach a final resolution. With a potential settlement within reach, the parties agreed to continue their discussions, and, by the end of day May 24, 2022, the parties reached agreement on the principal terms of a settlement.

8.      Plaintiffs initially moved for preliminary approval of the settlement and notice plan on June 30, 2022. *See* ECF No. 218. At the August 4, 2022 preliminary approval hearing, the Court reserved judgment and instructed the parties to supplement their notice plan to leverage Google's relationship with the Settlement Class, and to bring the claims rate above the 13% level Plaintiffs had anticipated.

9.      Following the August 4, 2022 hearing, the Parties worked with Angeion Group, the Settlement Administrator, to modify the notice and distribution plan in accordance with the Court's instructions. As detailed in the Settlement Administrator's accompanying declaration, and the Amended Settlement Agreement attached hereto as **Exhibit B**, the Parties agreed to a process whereby Settlement Class members can receive a payment without having to make a claim. The

Parties further agreed that Google will provide supplemental notice through the Google Play Console. While the Amended Settlement Agreement modifies the notice and distribution plan accordingly, it does not modify other terms of the settlement, including the size of the Settlement Fund, the conduct relief, or the release. Those terms are identical to the Settlement Agreement initially submitted for preliminary approval on June 30, 2022.

10. During the pendency of this litigation, Developer Plaintiff Pure Sweat Basketball settled comparable claims asserted against Apple on behalf of a class of developers selling apps and in-app products in Apple's App Store. *See Cameron v. Apple, Inc.*, 19-cv-3074 (N.D. Cal.) (YGR). The Apple settlement is similar to the Amended Settlement proposed here. The Apple settlement was preliminarily approved by the Honorable Gonzalez Rogers in November 2021 and, following notice, there was only one objection and just 13 opt outs, notwithstanding a settlement class that encompassed 67,440 unique developer accounts. Judge Gonzalez Rogers granted final approval on June 10, 2022, concluding that the settlement was "fair, adequate, and reasonable." *See* **Exhibit C**.

11. As noted, Plaintiffs' Counsel engaged Angeion Group to administer this Amended Settlement. Angeion was selected in consultation with Google after a competitive bidding process involving Requests for Proposals ("RFPs") sent to Angeion and two other leading settlement administrators. The RFP included a carefully drafted outline requiring the respondents to make the same fixed assumptions about notice and administration of the settlements, ensuring an apples-to-apples comparison. All respondents provided comprehensive responses, and comparable bids. All three proposed direct notice through email, with digital payments by email and paper checks. Angeion offered competitive pricing, with the advantage of having served as the administrator for the comparable settlement achieved in the Apple developer litigation. Developer Plaintiffs ultimately concluded that Angeion would provide the best value for the Settlement Class.

12. In the last two years, Angeion has served as a notice and/or claims administrator in five cases in which Class Counsel was counsel:

- *Cameron v. Apple Inc.*, 19-cv-3074 (N.D. Cal.)
- *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation*, 3:17-cv-02777 (N.D. Cal.)

- • *In re Glumetza Antitrust Litigation*, 3:19-cv-05822 (N.D. Cal.)
- • *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, 14-md-02503 (D. Mass.)
- • *In re Broiler Chicken Grower Antitrust Litigation No. II*, 5:20-md-02977 (E.D. Ok.)

13. After further consultation with Angeion and modifications to the scope of work, Angeion has anticipated administrative costs of approximately $310,000. These administrative costs will be paid from the Settlement Fund and represent approximately 0.34% of the entire fund.

14. The Amended Settlement Agreement provides that any Court-awarded fees and costs will be paid from the Settlement Fund. *See* **Ex. B** ¶ 6.1.2. Plaintiffs will make a request for attorneys' fees of up to $27 million, which represents 24% of the sum of the cash Settlement Fund ($90 million) and structural relief ($22 million) that can be reasonably quantified ($112 million total). This does not account for the other forms of structural relief that were likewise included in the Apple settlement and found, at final approval, to be "valuable to the settlement class." **Ex. C** at 3. Through the end of May 2022, when the initial settlement was reached, Developer Plaintiffs had invested approximately 33,989 hours and approximately $17.48 million in attorneys' fees in this litigation. Developer Plaintiffs will also request reimbursement of certain costs and expenses, not to exceed $6.5 million. These expenses include approximately $5 million or more in expert costs.

15. Developer Plaintiffs intend to request Service Awards of $10,000 for each of the four Named Plaintiffs. Named Plaintiffs have been actively involved in the litigation, and because they operate businesses, their involvement and discovery obligations have been more onerous than what is common for consumer class representatives. Each Named Plaintiff reviewed pleadings and consulted with interim Class Counsel regarding case developments. All but one were deposed and devoted numerous hours to preparing for deposition. All conducted document searches and collected materials for production, which collectively total approximately 46,000 documents. No Named Plaintiff derived a personal benefit beyond any recovery to the Settlement Class. A $10,000 service award represents 0.01 percent of the Settlement Fund.

16. The parties have selected Code.org as the settlement's proposed *cy pres* awardee. If settlement funds remain after two rounds of distribution to Settlement Class members, the remaining

- 4 -

funds will be distributed to Code.org. Working in schools across the country, Code.org is a nonprofit that seeks to expand access to computer science, with a focus on increasing participation by underrepresented groups. *See* **Exhibit D**. Among other projects, Code.org has developed courses that teach students the fundamentals of app design, using an App Lab tool that allows students to create apps and games in JavaScript. *See* **Exhibits E & F**. More than 70 million students are enrolled in Code.org courses. *See* **Exhibit D**. I have been advised by Google's counsel that the company and its philanthropy supports this organization financially, and Google's employees volunteer to support the organization's mission, including through service on its board.

17.     True and correct copies of the aforementioned Exhibits are attached hereto:

Exhibit A:   March 21, 2021 Google Android Developers blog entry entitled, "Boosting developer success on Google Play";

Exhibit B:   Amended Settlement Agreement and Release;

Exhibit C:   Order Granting Motion for Final Approval of Class Action Settlement; Granting in Part and Denying in Part Motion for Attorney's Fees, Costs, and Service Award; and Judgment, *Cameron v. Apple Inc.*, Case No. 19-cv-03074-YGR (N.D. Cal.), entered June 10, 2022;

Exhibit D:   Code.org web page entitled, "About Us," *available at*: https://code.org/about;

Exhibit E:   Code.org web page entitled, "Computer Science Principles ('21-'22), *available at*: https://studio.code.org/s/csp3-2021; and

Exhibit F:   Code.org web page entitled, "App Lab," *available at*: https://code.org/educate/applab

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 12th day of October, 2022, in Seattle, Washington.

_____*/s/ Steve W. Berman*_____
Steve W. Berman

# EXHIBIT A

 developers

## Android Developers Blog

The latest Android and Google Play news for app and game developers.

## Boosting developer success on Google Play

16 March 2021

*Posted by Sameer Samat, VP, Product Management*

Helping developers build sustainable businesses is a core part of Google Play's mission. We work with partners every day to understand the challenges they face and help them bring their innovative ideas to life. Getting a new app off the ground and into orbit is not easy! To aid their quest for growth we provide a broad range of support, from powerful marketing tools and actionable data in the Play Console, education via Play Academy, best practices and thought leadership resources, programs such as the Indie Games Festival, Indie Corner, and accelerator programs around the world. We're always looking for new ways to give them an added boost.

Starting on July 1, 2021 we are reducing the service fee Google Play receives when a developer sells digital goods or services to 15% for the first $1M (USD) of revenue every developer earns each year. With this change, 99% of developers globally that sell digital goods and services with Play will see a 50% reduction in fees. These are funds that can help developers scale up at a critical phase of their growth by hiring more engineers, adding to their marketing staff, increasing server capacity, and more.

While these investments are most critical when developers are in the earlier stages of growth, scaling an app doesn't stop once a partner has reached $1M in revenue — we've heard from our partners making $2M, $5M and even $10M a year that their services are still on a path to self-sustaining orbit. This is why we are making this reduced fee on the first $1M of total revenue earned each year available to every Play developer, regardless of size. We believe this is a fair approach that aligns with Google's broader mission to help all developers succeed. We look forward to sharing full details in the coming months.

As a platform we do not succeed unless our partners succeed. Android and Google Play have always listened to our developer partners from around the world and we continue to take their input into account as we build and run the ecosystem. We look forward to seeing more businesses scale to new heights on Android, and to further discussions with our developer

 developers

    

**Labels:** Apps , developer success , developers , Featured , Google Play , latest , service fees

    

## Global Google developer blogs

Google Developers Blog

Programa con Google (Spanish LATAM)

Codigo (Portuguese LATAM)

Developers Italia

Google Developers Indonesia Blog

Google Developers Korea

Google Developers Japan

Privacy  |  License  |  Brand guidelines

Get news and tips by email     SUBSCRIBE

# EXHIBIT B

## Amended Settlement Agreement and Release

Subject to the approval of the Court, this Amended Settlement Agreement and Release ("Amended Settlement Agreement") amends, modifies, and supersedes the Settlement Agreement and Release (as defined herein).  The Parties, by and through their respective counsel, in consideration for and subject to the promises, terms, and conditions contained in this Amended Settlement Agreement, hereby warrant, represent, acknowledge, covenant, stipulate and agree, subject to Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure, as follows:

**1.      Definitions**

As used herein the following terms have the meanings set forth below:

1.1      "Action" means *In re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-05792-JD, pending in the Northern District of California, coordinated with other actions as part of MDL No. 2981, and previously captioned *Pure Sweat Basketball, Inc, v. Google LLC*, as well as any actions consolidated by the Court with *In re Google Play Developer Antitrust Litigation*, including *Peekya Services, Inc. v. Google LLC*, 3:20-cv-06772.

1.2      "Affiliates," with respect to a Party, shall mean (i) all entities now or in the future controlling, controlled by or under common control with that party; (ii) all entities in the past controlling, controlled by or under common control with that party, for the period of time that such control exists or existed; and (iii) predecessors, successors or successors in interest thereof, including all entities formed or acquired by that party in the future that come to be controlled by that party. For purposes of this definition, "control" means possession directly or indirectly of the power to direct or cause the direction of management or policies of a company or entity through the ownership of voting securities, contract, or otherwise, and "entities" includes all persons, companies, partnerships, corporations, associations, organizations, and other entities.

1.3     "Attorneys' Fees and Expenses" means any attorneys' fees, costs, and expenses of any kind or description incurred by Class Counsel or other attorneys, experts, consultants, or agents of the Plaintiffs or the Settlement Class.

1.4     "Claim Form" means documents or forms, in a form mutually agreeable to the parties and attached as an exhibit to the Renewed Motion for Preliminary Approval, that Settlement Class Members may submit to make a claim pursuant to this Amended Settlement Agreement.

1.5     "Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Sperling & Slater, P.C., and Hausfeld LLP, which has any and all authority and capacity necessary to execute this Amended Settlement Agreement and bind all of the Plaintiffs who have not personally signed this Settlement Agreement, as if each of those individuals had personally executed this Amended Settlement Agreement.

1.6     "Console Notice" means notice of this Amended Settlement Agreement, in a form mutually agreeable to the Parties, that Google will provide to Settlement Class Members via the Google Play Console and that shall cause corresponding emails to be sent to the email addresses associated with Settlement Class Members' Google Play Developer accounts.  It is the intent of the Parties that Console Notice shall be a supplement to, and not a replacement for, Notice and Summary Notice, and that Console Notice shall be simple in form and direct Settlement Class Members to the Settlement Website for additional information.

1.7     "Court" means The United States District Court for the Northern District of California.

1.8     "Defense Counsel" means the law firms of Munger, Tolles & Olson LLP;  Morgan, Lewis & Bockius LLP; O'Melveny & Myers LLP; Hogan Lovells; and Kwun Bhansali Lazarus LLP.

2

1.9     "Developer" means a person or entity who has accepted Google's Developer Distribution Agreement ("DDA"). A "U.S. Developer" means a Developer that identified the United States as the Developer's country when enabling payments from Google Play.

1.10     "Effective Date" means the first business day after which all of the following events and conditions of this Amended Settlement Agreement have been met or occurred:

(a) Google, Class Counsel, and Defense Counsel have executed this Amended Settlement Agreement; and

(b) The Final Approval Order has become a final, non-appealable judgment approving the Amended Settlement Agreement in all respects and is no longer subject to review, reconsideration, rehearing, appeal, petition for permission to appeal, petition for writ of certiorari, or any other appellate review of any kind.

1.11     "Final Approval Order" means a final judgment and order entered by the Court approving the Amended Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action with prejudice and without costs (except as specified in this Amended Settlement Agreement).

1.12     "Final Judgment" means a final judgment and dismissal of the Action with prejudice.

1.13     "Forms of Notice" means any material that will be sent or disseminated to the Settlement Class by the Settlement Administrator to notify the Settlement Class of this Settlement, the process for receiving payments or submitting claims, and how to opt out or object to the Settlement, including but not limited to the Notice, Summary Notice, Console Notice, the Claim Form, the Settlement Website and the domain name for the Settlement Website, the content of any media, social media, or advertising campaign, and the script of any outbound telephone notice.

1.14 "Google" means Google LLC, Google Ireland Limited, Google Commerce Limited, Google Asia Pacific Pte. Limited, and Google Payment Corp.

1.15 "Google Play" means the app store operated by Google.

1.16 "Google Play Console" means the online platform that Google provides to Developers to publish and manage their apps in the Google Play store.

1.17 "Notice" means the notice of this Amended Settlement Agreement in a form mutually agreeable to the Parties, to be attached as an exhibit to the Renewed Motion for Preliminary Approval and disseminated to Settlement Class Members in accordance with this Settlement Agreement.

1.18 "Notice Date" means the date set forth in the Preliminary Approval Order for commencing the transmission of the Summary Notice.

1.19 "Parties" means Google and the Plaintiffs, individually and on behalf of the Settlement Class.

1.20 "Net Settlement Fund" means the Settlement Fund, reduced by the sum of the following amounts: (1) the costs of notice and the costs of administering the Settlement, as set forth in Section 7.1 below; (2) any Attorneys' Fees and Expenses awarded by the Court, as set forth in Section 12 below; (3) any Service Awards provided to Plaintiffs with the authorization of the Court.

1.21 "Plaintiffs" means Pure Sweat Basketball, Inc.; Peekya App Services, Inc.; LittleHoots, LLC; and Scalisco LLC d/b/a Rescue Pets.

1.22 "Preliminary Approval Order" means an order preliminarily approving the Amended Settlement Agreement, providing for notice to the Settlement Class, and preliminarily approving a proposed disposition of the Settlement Fund.

4

1.23    "Proceeds" means a Developer's net revenues on Google Play across all the Developer's accounts collectively, after subtracting any service fee retained by Google.

1.24    "Released Parties" means (a) Alphabet Inc. and Google; (b) the past, present, and future parents, subsidiaries, Affiliates, divisions, joint ventures, licensees, or franchisees of the entities in part (a) of this paragraph; (c) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, consultants, administrators, representatives, fiduciaries, insurers, predecessors, successors, and assigns of any of the entities in parts (a) - (b) of this paragraph.

1.25    "Renewed Motion for Preliminary Approval" means a renewed motion asking this Court to issue a Preliminary Approval Order.  The Renewed Motion for Preliminary Approval will supersede Developer Plaintiffs' Motion for Preliminary Settlement Approval, ECF No. 218 (June 30, 2022), which was terminated by Order of the Court dated September 2, 2022.

1.26    "Service Award" means a payment from the Settlement Fund to any or all of the Plaintiffs, in an amount not to exceed $10,000 and approved by the Court, in recognition of their service in prosecuting this action as developer businesses, exclusive of any other payments to which they might be entitled under this Amended Settlement Agreement, if approved by the Court. Google reserves all rights to object to any Service Award or the amount of any Service Award requested for any or all of the Plaintiffs.

1.27    "Settlement" or "Amended Settlement Agreement" means the amended settlement agreement and release described in this document.

1.28    "Settlement Agreement and Release" means the settlement agreement and release previously executed by the Parties, and submitted for preliminary approval on June 30, 2022 (ECF No. 218-1 at Exhibit B).  The Settlement Agreement and Release is superseded by this Amended Settlement Agreement.

1.29    "Settlement Administrator" means Angeion Group ("Angeion"), or another firm agreed to by the Parties, subject to approval by the Court, which shall provide settlement notice and administration services pursuant to the terms of this Amended Settlement Agreement.

1.30    "Settlement Class"  means all former or current U.S. Developers that meet each of the following criteria: (a) sold an application or in-app product (including subscriptions) for a non-zero price between August 17, 2016 and December 31, 2021; (b) paid Google a service fee greater than 15% on at least one such transaction between August 17, 2016 and December 31, 2021; and (c) earned Proceeds between U.S. $0 and U.S. $2,000,000.00 through Google Play in every calendar year between and inclusive of 2016 and 2021.  Solely for Settlement Class definition purposes, the 2016 calendar year shall consist of August 17, 2016 through December 31, 2016. Additionally and notwithstanding the foregoing, excluded from the Settlement Class are (a) directors, officers, and employees of Google or its subsidiaries and affiliated companies, as well as Google's legal representatives, heirs, successors, or assigns; (b) the Court, the Court staff, as well as any appellate court to which this matter is ever assigned and its staff; (c) Defense Counsel, as well as their immediate family members, legal representatives, heirs, successors, or assigns; (d) any Developers who validly request exclusion ("opt out") from the Settlement Class; and (e) any other individuals or entities whose claims already have been adjudicated to a final judgment.

1.31    "Settlement Class Member" means and includes every member of the Settlement Class who does not validly and timely request exclusion ("opt out") from the Settlement Class.

1.32    "Settlement Fund" means the fund administered by the Settlement Administrator as described in Section 5.1.

1.33    "Settlement Website" means a website hosted at http://www.googleplaydevelopersettlement.com, and created and maintained by the Settlement Administrator for the purpose of providing the Settlement Class with notice of the Settlement.

1.34    "Summary Notice" means a summary of the Notice, in a form mutually agreeable to the parties, that is sent to potential Settlement Class Members by U.S. Mail or electronic mail.

**2.    Recitals**

This Agreement is made for the following purposes and with reference to the following facts:

2.1    On August 17, 2020, Pure Sweat Basketball, Inc., filed a complaint in the Action in the United States District Court for the Northern District of California.  On September 29, 2020, Peekya Services, Inc. filed a complaint in the United States District Court for the Northern District of California.  On November 20, 2020, the Court consolidated into the Action the case filed by Peekya Services, Inc.  Order re Consolidation, *In re Google Play Developer Antitrust Litigation*, No. 3:20-cv-05792-JD, ECF No. 33 (Nov. 20, 2020).

2.2    On October 21, 2020, Pure Sweat Basketball, Inc., and Peekya Services, Inc. filed a Consolidated Class Action Complaint.  The Consolidated Class Action Complaint alleged that Google had monopolized and attempted to monopolize a U.S. Android app distribution market in violation of 15 U.S.C. § 2; that Google had monopolized and attempted to monopolize a U.S. market for Android in-app payment processing services in violation of 15 U.S.C. § 2; that Google's contracts with app developers with respect to in-app payments are unlawful restraints of trade that violate 15 U.S.C. § 1 and 3; that Google unlawfully tied distribution services for Google Play to its in-app payment processor, Google Play Billing, in violation of 15 U.S.C. § 1 and 3; and that Google's conduct violated Section 17200 of the California Business and Professions Code. The Consolidated Class Action Complaint sought damages and injunctive relief.

2.3    On November 13, 2020, Google filed a motion to dismiss the Consolidated Class Action Complaint.  Before that motion could be decided, Pure Sweat Basketball, Inc., and Peekya Services, Inc., filed a First Amended Consolidated Class Action Complaint on August 30, 2021.

2.4     On January 21, 2022, Plaintiffs filed a Second Amended Consolidated Class Action Complaint, which, among other things, made certain changes to the markets alleged by Plaintiffs.

2.5     The Parties engaged in extensive discovery in the Action, which was coordinated with *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-5671-JD; *In re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-5761-JD; and *State of Utah et al. v. Google LLC et al.*, No. 3:21-cv-05227-JD.  To date, Google has produced over 21 million pages of documents, and the parties in the Action and coordinated MDL proceedings collectively deposed approximately 84 individuals, not including experts.  On February 28, 2022, Plaintiffs served class certification expert reports from four experts, and on March 31, 2022, Google served class certification expert reports from two experts.  Plaintiffs served reply expert reports on April 25, 2022.

2.6     On March 16, 2021, Google announced that it was reducing (effective July 1, 2021) the service fee Google Play receives when a developer sells digital goods or services to fifteen percent (15%) for the first $1,000,000 of developer earnings each year.  According to Google, this announcement reflected a competitive response to Apple's Small Business Program and was designed to help boost developer success on Google Play.  Google also acknowledges that the pendency of this lawsuit was a factor in its decision to announce this service fee reduction.

2.7     On October 4, 2021, Google released Android 12, an updated version of the Android operating system.  Google had previously announced, in September 2020, that Android 12 would include certain changes Google believes make it even easier for people to use other app stores on their mobile devices while being careful not to compromise the safety measures Android has in place.  More specifically, Android 12 introduced a new method to allow installer apps to perform app updates without requiring the user to confirm the action.  Google considers this aspect of Android 12 to be consistent with Google's belief and longstanding practice that developers should have a choice in how they distribute their apps and that stores should compete

for the user's and developer's business.  Google also acknowledges that the pendency of this lawsuit was a factor in its decision to invest in this aspect of Android 12.

2.8    The Parties engaged in extensive, arm's-length negotiations over the course of the Action, with the assistance of Professor Eric Green of Resolutions, LLC, a highly experienced and nationally renowned mediator.  As a result of these arm's-length negotiations, the Parties reached the Settlement set forth in this Amended Settlement Agreement, which memorializes the Parties' agreement. The Parties intend that this Settlement completely resolve any and all claims that were, or could have been, asserted in the Action on behalf of the Settlement Class.  The Parties intend this Amended Settlement Agreement to bind Google, the Plaintiffs, and all other Settlement Class Members.

2.9    Google disputes the claims alleged in the Action and believes it has strong defenses to these claims.  Google nevertheless has decided to enter into this Settlement to avoid further expense, inconvenience, and the distraction of burdensome and costly litigation; to obtain the releases, orders, and judgment contemplated by this Amended Settlement Agreement; and to provide additional support to the Google Play developer community.  The Settlement is not an admission of wrongdoing, fault, liability, or damage of any kind.  Google disputes that Plaintiffs' claims have merit, that Plaintiffs will be able to certify any class in this Action for litigation purposes, and that Plaintiffs and the putative class would be entitled to any relief.

2.10    Class Counsel and the Plaintiffs believe that the claims asserted in the Action have merit and have examined and considered the benefits to be obtained under this Settlement, the risks associated with the continued prosecution of this complex and potentially time-consuming litigation, and the likelihood of ultimate success on the merits, and have concluded that the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

**3.    Confidentiality**

3.1     The Parties must comply with all portions of the Stipulated Third Amended Protective Order, ECF No. 211 (May 25, 2022), and any other operative protective orders entered in this Action, including but not limited to Section 15 of the Stipulated Third Amended Protective Order, ECF No. 211 (May 25, 2022), which requires the return, destruction, or deletion of Protected Materials (as defined in that order).  For avoidance of doubt, under the Stipulated Third Amended Protective Order, ECF No. 211 (May 25, 2022), "final disposition of the action" refers to the final disposition of all member cases in MDL No. 2981, *In re Google Play Store Antitrust Litigation*, No. 21-md-2981-JD.  Notwithstanding the above, Class Counsel will comply with, and ensure compliance by Plaintiffs with, Section 15 of the Stipulated Third Amended Protective Order, ECF No. 211 (May 25, 2022), including the 60-day destruction and certification requirements, after the Effective Date.

3.2     This Amended Settlement Agreement and its terms shall remain confidential until the Renewed Motion for Preliminary Approval is filed with the Court.  Before the filing of that motion, Class Counsel and Defense Counsel may disclose this Amended Settlement Agreement and its terms only to their respective clients and their respective experts, who will also maintain the confidentiality of this Amended Settlement Agreement and its terms.

**4.      Certification of the Settlement Class**

4.1     The Parties stipulate and agree that, subject to Court approval, the Settlement Class should be conditionally certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure solely for purposes of the Settlement embodied in this Amended Settlement Agreement.  If, for any reason, this Amended Settlement Agreement is not approved by the Court, the stipulation for certification and all of the agreements contained herein shall be considered null and void as provided in Section 12.6.

4.2     Google does not consent to certification of the Settlement Class, or to the propriety of class certification for any purpose, other than to effectuate this Settlement.  For the avoidance of doubt, Google does not agree that this, or any, class of Developers could be certified for litigation purposes or that a trial of these claims would be manageable.  Google's agreement to provisional certification for purposes of settlement does not constitute an admission of wrongdoing, fault, liability, or damage of any kind, or that any class certification would be appropriate for litigation or any other purpose other than to effectuate this Settlement.

4.3     If for any reason the Effective Date does not occur or this Amended Settlement Agreement is terminated, disapproved by any court (including any appellate court), or not consummated for any reason, the order certifying the Settlement Class for purposes of effectuating the Settlement (and all preliminary and final findings regarding that class certification order) shall be automatically vacated upon notice of the same to the Court. The Action shall then proceed as though the Settlement Class had never been certified pursuant to this Amended Settlement Agreement and such findings had never been made, and the Action shall return to its procedural posture as of May 25, 2022. Additionally, the Parties and their counsel shall not contend that certification (or agreement to certification) of the Settlement Class supports certification of any litigation class if this Amended Settlement Agreement is not consummated and the Action is later litigated and certification is contested by Google under Rule 23 or any equivalent statute or rule.

**5.     Settlement Consideration**

5.1     **Settlement Fund**.  In consideration of the releases and dismissals set forth in this Amended Settlement Agreement, subject to Court approval, and subject to the other terms and conditions of this Amended Settlement Agreement, Google shall establish a Settlement Fund as follows:

5.1.1    Within sixty (60) days after a Preliminary Approval Order, Google shall transfer $1,800,000.00 into an account established by the Settlement Administrator for payment of the costs of settlement administration. Within forty-five (45) days after the Effective Date, Google shall transfer $88,200,000.00 into an account established by the Settlement Administrator for the Settlement Fund.  Google's total financial commitment under this Amended Settlement Agreement shall be $90,000,000.00, and shall not exceed that sum for any reason including Attorneys' Fees and Expenses, litigation costs, costs of settlement administration and notice, and taxes.

5.1.2    The Settlement Administrator shall agree to hold the Settlement Fund in an interest-bearing account and administer the Settlement Fund, subject to the continuing jurisdiction of the Court and from the earliest possible date, as a qualified settlement fund as defined in Treasury Regulation § 1.468B-1 et seq.  Any taxes owed by the Settlement Fund shall be paid by the Settlement Administrator out of the Settlement Fund.  The interest earned in the Settlement Fund shall be added to the Settlement Fund.  Google shall have no liability, obligation, or responsibility with respect to the investment, disbursement, or other administration or oversight of the Settlement Fund.

5.1.3    Within thirty (30) days of execution of this Amended Settlement Agreement, the Settlement Administrator will furnish to Defense Counsel adequate payment instructions, consisting of wire transfer instructions, instructions for payment by check, and a completed IRS Form W-9, including an address and tax ID number.

5.2    **Conduct Relief**.   In consideration of the releases and dismissals set forth in this Amended Settlement Agreement, subject to Court approval, and subject to the other terms and conditions of this Amended Settlement Agreement, Google shall take the following steps.

5.2.1    Through May 25, 2025, Google shall maintain for U.S. Developers a service fee of no greater than fifteen percent (15%) for the first $1,000,000 of developer earnings each year, pursuant to the terms and conditions of Google Play and subject to program participation requirements.

5.2.2    For a period of at least three (3) years following the Final Approval Order, Google shall continue to allow developers to use contact information obtained in-app (with user consent) to communicate with users out-of-app, including to promote alternatives to Google Play's billing system.  In the interest of clarity, Google agrees to modify the Google Play Developer Distribution Agreement (DDA) by eliminating the last sentence of ¶ 4.9, as follows:

> You will not engage in any activity with Google Play, including making Your Products available via Google Play, that interferes with, disrupts, damages, or accesses in an unauthorized manner the devices, servers, networks, or other properties or services of any third party including, but not limited to, Google or any Authorized Provider. ~~You may not use user information obtained via Google Play to sell or distribute Products outside of Google Play.~~

Google agrees to implement this modification within three (3) months of the Final Approval Order.

5.2.3    For a period of at least three (3) years following the public release of Android 12 (October 4, 2021), Google shall, subject to technical requirements published at https://developer.android.com/reference/android/content/pm/PackageInstaller.SessionParams#setRequireUserAction(int), maintain in subsequent versions of Android the changes implemented in Android 12 that Google believes made it even easier for people to use other app stores on their mobile devices while being careful not to compromise the safety measures Android has in place. More specifically, Android 12 introduced a new method to allow installer apps to perform app

13

updates without requiring the user to confirm the action.  Google considers this aspect of Android 12 to be consistent with Google's belief and longstanding practice that developers should have a choice in how they distribute their apps and that stores should compete for the user's and developer's business.  Google also acknowledges that the pendency of this lawsuit was a factor in its decision to invest in this aspect of Android 12.

5.2.4   For at least two (2) years following the Final Approval Order, Google Play will develop an "Indie Apps Corner" to help spotlight a collection of qualifying independent and small startup developers building high quality and unique apps.  The collection would appear on the apps tab on the U.S. homepage and would be refreshed at least quarterly.  Developers will be able submit their apps for consideration, and Google will attempt in good faith to identify qualifying apps, based on the following criteria:

- **Indie app Developer**: team size 1-30 people, and company is self-funded or has a small outside investment.

- **Quality:** user rating of 4.0 stars or higher

- **Freshness**: app launched no later than 2 years before submission date

- **Location**: developer based in the United States

5.2.5   For a period of at least three (3) years following the Final Approval Order, Google will publish an annual transparency report that, at a minimum, will convey meaningful statistics such as apps removed from Google Play, account termination, and objective information regarding how users interact with Google Play.

5.3   **Covenant Not to Sue.** In light of the conduct and monetary relief afforded by Google pursuant to this Amended Settlement Agreement, the members of the Settlement Class covenant not to sue Google on any claim that was or could have been asserted in the Action.

**6.   Disposition of Settlement Fund**

6.1    **The Settlement Fund shall be applied as follows:**

    6.1.1    to pay the Settlement Administrator's costs of notice and the costs of administering the Settlement, as set forth in Section 7.1 below.

    6.1.2    to pay any approved Attorneys' Fees and Expenses to Class Counsel as set forth in Section 12 below;

    6.1.3    to pay any Court-approved Service Awards to Plaintiffs; and

    6.1.4    to distribute the Net Settlement Fund to Settlement Class Members in accordance with Section 6.2.

6.2    **Distribution of the Settlement Fund**

    6.2.1    After this Amended Settlement Agreement becomes final with the meaning of Section 1.10 (the Effective Date), the Net Settlement Fund shall be distributed  as set forth in Sections 6.2.2 through 6.2.4, subject to approval by the Court:

    6.2.2    **First Round Distribution**: The Net Settlement Fund shall be distributed to Settlement Class Members based pro rata on the total amount of service fees each Settlement Class Member paid to Google at a level above 15%, with a $250 minimum payment.  As provided in Section 7, Settlement Class Members will have the option of electing a digital payment. Settlement Class Members who do not elect a digital payment, but for whom Google maintains a legal address and legal entity name, will be sent a physical check.  The Settlement Administrator shall use reasonable efforts to contact Settlement Class Members projected to receive more than $20,000 from the Settlement Fund to confirm class membership, contact information, and payment instructions.  To receive a digital payment or endorse a physical check, Developers will be required to certify membership in the Settlement Class.  Any checks not cashed within six months of the date of issuance will expire, and the funds will revert to the Settlement Fund for further distribution.

6.2.3    **Potential Second Round Distribution**: If, after the distribution described in Section 6.2.2, the Net Settlement Fund is not fully disbursed to Settlement Class Members (including as a result of uncashed checks), Plaintiffs shall propose to the Court a method for making additional distributions to Settlement Class Members who elected a digital payment or cashed their check.  Plaintiffs shall make additional distributions to Settlement Class Members as instructed by the Court.

6.2.4    **Potential *Cy Pres* Distribution:** If, after the distributions described in Sections 6.2.2 and 6.2.3, the Net Settlement Fund is not fully disbursed to Settlement Class Members (including as a result of uncashed checks), any remaining funds will be used as a cy pres distribution to Code.org.

6.3    Following the Effective Date, under no circumstances will there be any reversion of settlement funds to Google.

6.4    Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. Google and the Released Parties shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Settlement Class's respective attorneys, experts, consultants, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

**7.    Notice and Settlement Administration**

7.1    Class Counsel shall seek appointment of a Settlement Administrator as part of the Preliminary Approval Order.  Subject to Court approval, the Settlement Administrator shall provide settlement notice and administration services, in accordance with the terms of this Amended Settlement Agreement and as ordered by the Court in the Preliminary Approval Order. As provided in Section 6.1.1, the Settlement Administrators' reasonable costs of notice and the costs of administering the Settlement shall be paid out of the Settlement Fund.  Google shall send

Console Notice as provided in Section 7.4.6, but shall not have any further obligation or liability to any person or entity for the administration of the Settlement, receiving and responding to any inquiries from Settlement Class Members, or disbursement of the money in the Settlement Fund.

7.2     The Renewed Motion for Preliminary Approval, as contemplated in Section 1.25, shall include a proposed form of, method for, and date of dissemination of Notice.  The text of the foregoing shall be agreed upon by Plaintiffs and Google before submission of the Renewed Motion for Preliminary Approval.  Google has the right to review and approve all Forms of Notice, including any Forms of Notice proposed by the Settlement Administrator after the Renewed Motion for Preliminary Approval is filed.

7.3     Individual notice of the Settlement shall be provided as described in the Renewed Motion for Preliminary Approval and as approved by the Court, with all expenses incurred by the Settlement Administrator paid from the Settlement Fund.  The Renewed Motion for Preliminary Approval shall recite and ask the Court to find that the notice program constitutes valid, due, and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

7.4     The parties agree to propose to the Court at least the following forms and methods of notice to the Settlement Class:

7.4.1    A copy of the Notice, together with the Claim Form, the Amended Settlement Agreement, the motions for the Final Approval Order and Final Judgment, and Attorneys' Fees and Expenses, and Court orders pertaining to the Settlement, shall be posted and available for download on the Settlement Website maintained by the Settlement Administrator.

7.4.2    The Settlement Administrator shall send a copy of the Summary Notice to the email and physical addresses for Developers who are or reasonably may be members of the Settlement Class. Summary Notice will identify the Settlement Website and advise Settlement

Class Members that they are entitled to a payment.  The Summary Notice will provide credentials that Settlement Class Members can input on the Settlement Website to determine their estimated payment amount and elect a digital payment via PayPal, Venmo or virtual prepaid card.  The Summary Notice shall also advise Settlement Class members that if they do not elect a digital payment (or opt out), a check will be directed to the Settlement Class Member's legal entity name and legal address, to the extent that information is maintained by Google.  The legal entity and legal address will be specified in the Summary Notice and/or on the Settlement Website, and Settlement Class members will have the option to provide corrected information to the Settlement Administrator.

7.4.3    To facilitate the distribution of the Summary Notice, within thirty (30) days of the date of execution of the Amended Settlement Agreement, Google shall provide the Settlement Administrator with email addresses, entity names, telephone numbers, and physical addresses, to the extent reasonably available, for the accounts of U.S. Developers who are or reasonably may be members of the Settlement Class, along with transaction data previously produced in this Action regarding service fees paid to Google.  Google does not warrant and is not responsible for ensuring the accuracy of this information.

7.4.4    The information disclosed to the Settlement Administrator, as described in Section 7.4.3, shall be provided to the Settlement Administrator solely for the purposes of providing notice, processing requests for exclusion, and administering payment.  The Settlement Administrator shall take all reasonable steps to ensure that all such information is used solely for the purpose of administering this Settlement.

7.4.5    The Settlement Administrator shall commence disseminating notice by the Notice Date.  If, despite using best efforts, the Settlement Administrator is unable to commence disseminating notice by the Notice Date, the Settlement Administrator shall inform the parties of

the status of the dissemination of notice and notify the parties when dissemination of notice has been commenced.

7.4.6    Google shall make diligent efforts to commence disseminating Console Notice by the Notice Date.  If Google is unable to commence Console Notice by the Notice Date, it shall advise Plaintiffs of the status of its efforts and notify Plaintiffs when Console Notice commences.

7.4.7    In addition to the notice required by the Court, the parties may jointly agree to provide additional notice to the members of the Settlement Class, although Class Counsel and Google must both approve any additional notice, and the contents and method of distribution of such notice.

7.5    If the notice plan proposed in the Renewed Motion for Preliminary Approval is not approved, or is modified in a material way by the Court, the Parties shall have the right to terminate the Settlement.

**8.    Claims**

8.1    The Settlement Website will contain an optional Claim Form that Developers, including any that do not receive Summary Notice, may complete.  The Settlement Administrator may require further information and/or materials from claimants to establish their membership in the Settlement Class and the validity of their claim.  Claim Forms shall be submitted to the Settlement Administrator electronically through the Settlement Website or via U.S. mail.

8.2    To be valid, Claim Forms must be received by the Settlement Administrator by the date specified in the Renewed Preliminary Approval Order.

**9.    Process for Opting Out of Settlement**

9.1    The Class Notice shall provide a procedure and an opt-out deadline by which members of the Settlement Class may exclude themselves from the Settlement.  Any member of

the Settlement Class who does not timely and validly request exclusion shall be a Settlement Class Member and shall be bound by the terms of this Settlement. As soon as practicable after the opt-out deadline, the Settlement Administrator shall provide the Court and the parties with a list of Settlement Class Members who timely and validly requested exclusion from the Settlement.

**10.     Process for Objections**

10.1     The Notice shall provide a procedure whereby Settlement Class Members may object to the Settlement and shall inform Settlement Class Members of the objection deadline. Any objection shall, at a minimum, include: (a) a statement describing such Settlement Class Member's objections to the Settlement and the grounds for such objections; and (b) identifying information sufficient to enable the Settlement Administrator to determine whether the objector is a member of the Settlement Class.

**11.     Process for Contesting Payment Amount**

11.1     The Settlement Website will enable Settlement Class Members to identify both their estimated payment and the total amount of service fees on which the estimated payment amount is based.  The Notice shall specify a procedure whereby Settlement Class Members can contest the service fee amount the Settlement Administrator has on record and, upon providing sufficient information, receive a different payment amount from the Settlement Fund.

**12.     Court Approval**

12.1     The parties agree that the Plaintiffs shall submit this Amended Settlement Agreement to the Court and shall apply for entry of the Preliminary Approval Order.

12.2     The Parties agree to recommend approval of the Settlement to the Court as fair and reasonable, and to undertake their best efforts to obtain approval of the Settlement. "Best efforts" includes that the Parties may not oppose any application for appellate review by one of the Parties in the event the Court denies preliminary or final approval.

12.3    Class Counsel shall draft the Renewed Motion for Preliminary Approval requesting issuance of the Preliminary Approval Order as soon as practicable after execution of this Amended Settlement Agreement, and shall provide that draft to Defense Counsel at least seven (7) days prior to its submission. The Renewed Motion for Preliminary Approval shall be written in a neutral manner that does not contain inflammatory language about the Parties or their perceived conduct in the Action.  The Parties shall agree on the form of all exhibits attached to the Renewed Motion for Preliminary Approval, including but not limited to the Forms of Notice.

12.4    Not later than ten (10) days after the filing of the Renewed Motion for Preliminary Approval, Google shall provide timely notice of the Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1711, et seq.

12.5    In accordance with the schedule set in the Preliminary Approval Order, Class Counsel shall draft the motion for Final Approval Order and Final Judgment and shall provide that draft to Defense Counsel at least seven (7) days before filing such motion with the Court.

12.6    In the event that the Settlement is not approved (following the exhaustion of any appellate review), then (a) this Amended Settlement Agreement shall be null and void and of no force or effect; (b) any payments made to the Settlement Fund or to the Settlement Administrator, including any and all interest earned thereon less monies expended toward settlement administration, shall be returned to Google within ten (10) days from the date the Amended Settlement Agreement becomes null and void; (c) any release shall be of no force or effect; and (d) neither the Amended Settlement Agreement nor any facts concerning its negotiation, discussion, terms, or documentation shall be referred to or used as evidence or for any other purpose whatsoever in the Action or in any other action or proceeding.  In such event, the Action will proceed as if no settlement has been attempted, and the Parties shall be returned to their respective procedural postures existing on May 25, 2022, so that the Parties may take such litigation steps

that they otherwise would have been able to take absent the pendency of this Settlement. However, any reversal, vacatur, or modification on appeal of (a) any amount of the Attorneys' Fees and Expenses awarded by the Court to Class Counsel, or (b) any determination by the Court to award less than the amounts requested in Attorneys' Fees and Expenses or Plaintiff Service Awards shall not give rise to any right of termination or otherwise serve as a basis for termination of this Settlement.

**13.     Attorneys' Fees and Expenses**

13.1     Class Counsel may submit an application or applications to the Court for distribution to them from the Settlement Fund of an award of Attorneys' Fees and Expenses incurred in connection with prosecuting the Action and as may be awarded by the Court (the "Fee and Expense Award").  Google reserves the right to object to or oppose a request for Attorneys' Fees and Expenses.

13.2     Following Court approval, the Fee and Expense Award shall be paid solely from the Settlement Fund after the Effective Date to an account designated by Class Counsel.  Class Counsel has the authority and responsibility to allocate and distribute the awarded funds to other counsel based, in its sole discretion, on counsel's efforts and contributions in the Action, provided that the allocation and distribution is consistent with the Court's order(s) regarding the Fee and Expense Award.  Google and Defense Counsel shall have no liability or other responsibility for allocation of any such awarded funds, and, in the event that any dispute arises relating to the allocation of fees or costs, Class Counsel and the Settlement Administrator agree to hold Google and Defense Counsel harmless from any and all such liabilities, costs, and expenses of such dispute.

13.3     Google shall not be liable for any additional fees or expenses of the Plaintiffs or any Settlement Class Member in connection with or related to the Action.  Class Counsel agree

22

that they will not seek any additional fees, expenses, or costs from Google in connection with or related to the Action or the settlement of the Action beyond the approved Fee and Expense Award. Google agrees that it will not seek to recover its attorneys' fees, expenses, or costs from the Plaintiffs or Class Counsel once this Amended Settlement Agreement becomes effective pursuant to the Effective Date.

13.4     The Court's Fee and Expense Award shall be separate from its determination of whether to approve the Settlement.  In the event the Court approves the Settlement but declines to award Class Counsel's Attorneys' Fees and Expenses in the amounts requested by Class Counsel, the Settlement will nevertheless be binding on the Parties.

**14.     Releases and Dismissal of Action**

14.1     As of the Effective Date, the Settlement Class Members and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns shall have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights and liabilities, that were brought, could have been brought, or arise from the same facts underlying the claims asserted in the Action, known or unknown, recognized now or hereafter, existing or preexisting, expected or unexpected, pursuant to any theory of recovery recognized or available now or hereafter (including, but not limited to, those based in contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or regulation), against the Released Parties, for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief.  As examples only, and without limitation, the Settlement Class Members expressly release any claim, contention, argument, or theory that the service fee charged

by Google on paid downloads or in-app purchases of digital content, including subscriptions, through Google Play, or in apps distributed through Google Play, are supra-competitive, inflated, or otherwise set at unlawful amounts, and any claim, contention, argument, or theory that a policy requiring apps distributed through Google Play to use Google Play's billing system for in-app purchases of digital content (including subscriptions) is unlawful, anti-competitive, or constitutes an unlawful tie.  Accordingly, the Settlement shall terminate the Action.  Notwithstanding the foregoing, the release shall not include any claims relating to the continued enforcement of the Settlement or the Stipulated Third Amended Protective Order, ECF No. 211 (May 25, 2022), or any other operative protective order in this Action.

14.2    As of the Effective Date, the Plaintiffs and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns shall have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights and liabilities, that were brought, could have been brought, or arise from the same facts underlying the claims asserted in the Action, known or unknown, recognized now or hereafter, existing or preexisting, expected or unexpected, pursuant to any theory of recovery recognized or available now or hereafter (including, but not limited to, those based in contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or regulation), against the Released Parties, for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief.  Notwithstanding the foregoing, the release shall not include any claims relating to the continued enforcement of the Settlement or the Stipulated Third Amended Protective Order, ECF No. 211 (May 25, 2022), or any other operative protective order in this Action.

14.3     After entering into this Settlement, the Settlement Class Members and/or Plaintiffs may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the claims released by this Settlement, but they intend to release fully, finally and forever any and all such claims. The Settlement Class Members and Plaintiffs expressly agree that, upon the Effective Date, they waive and forever release any and all provisions, rights, and benefits conferred by:

(a) Section 1542 of the California Civil Code, which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

(b) any law of any state, territory, or possession of the United States (or for any non-U.S. entity or person, their respective country, province, or state), or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

14.4     Upon the Effective Date, the Action shall be dismissed with prejudice.  Class Counsel shall have the responsibility for ensuring that the Action is dismissed with prejudice in accordance with the terms of this Settlement.

14.5     The Court shall retain jurisdiction over this Action to enforce the terms of this Settlement.  In the event that any applications for relief are made, such applications shall be made to the Court.  To avoid doubt, the Final Judgment applies to and is binding upon the Parties, the Settlement Class Members, and their respective heirs, successors, and assigns.

**15.     Denial of Liability; Use of Agreement in Future Proceedings**

15.1     Google has indicated that, absent this settlement, it intends to vigorously contest each and every claim in the Action, and Google denies all of the material allegations in the Action. Google enters into this Amended Settlement Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind.  Google nevertheless has decided to enter into this Settlement to avoid further expense, inconvenience, and the distraction of burdensome and costly litigation; to obtain the releases, orders, and judgment contemplated by this Amended Settlement Agreement; and to provide additional support to the Google Play developer community.

15.2     Neither this Amended Settlement Agreement, nor any of its terms or provisions, nor any of the negotiation or proceedings connected with it, shall be construed as an admission or concession by Google of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind.

15.3     To the extent permitted by law, this Amended Settlement Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding which may be instituted, prosecuted, or attempted for claims, causes of action, and/or theories of relief covered by the covenant not to sue and/or the releases in this Amended Settlement Agreement.

**16.     Modification or Termination of the Settlement**

16.1     Google may, at its sole discretion, terminate this Amended Settlement Agreement if the number of Developers who seek exclusion from the Settlement Class exceeds ten percent (10%) of the total number of Developers in the Settlement Class.

16.2     The terms and provisions of this Amended Settlement Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Approval Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Amended

Settlement Agreement and its implementing documents (including all exhibits) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Final Approval Order and Final Judgment and do not materially alter, reduce, or limit the rights of Settlement Class Members.

16.3    If any of the non-monetary terms of this Amended Settlement Agreement are affected by a change in legislation, regulation, law, court or agency order, or any material change in circumstances (e.g., a material change in business model), the Parties agree to meet and confer in good faith regarding an appropriate modification of the Amended Settlement Agreement.

16.4    In the event the terms or conditions of this Amended Settlement Agreement, other than terms pertaining to the award and distribution of Attorneys' Fees and Expenses from the Settlement Fund, are materially modified by any court, the Plaintiffs and/or Google may within thirty (30) days of such material modification, declare this Settlement null and void as provided in Section 12.6.  For purposes of this paragraph, material modifications include any modifications to the definitions of the Settlement Class, Settlement Class Members, Released Parties, the scope of the releases (as provided in Section 14), and the terms or amount of the Settlement consideration (as provided in Section 5).  In the event of any modification by any court, and in the event the Parties do not exercise their options to withdraw from this Settlement, the Parties shall meet and confer within fourteen (14) days of such modification to attempt to reach an agreement as to how best to effectuate the court-ordered modification.

16.5    If the Effective Date is not reached, this Amended Settlement Agreement is without prejudice to the rights of any party hereto, and all terms, negotiations, and proceedings connected therewith shall not be deemed or construed to be an admission by any Party or evidence of any kind in this Action or any other action or proceeding.

**17.    Notices**

17.1    All notices to Plaintiffs shall be delivered to:

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101

Eamon P. Kelly
Sperling & Slater, P.C.
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603

Melinda R. Coolidge
Hausfeld LLP
888 16th Street N.W., Suite 300
Washington, DC 20006

17.2    All notices to Google shall be delivered to:

General Counsel
Legal Department
Google LLC
1600 Amphitheatre Parkway
Mountain View, CA 94043
legal-notices@google.com

Glenn Pomerantz
Kuruvilla Olasa
Munger Tolles & Olson LLP
350 South Grand Ave., 50th Floor
Los Angeles, CA 90071-3426

Brian Rocca
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596

17.3    Notice recipients and addresses designated in Section 17 may be changed upon

written notice provided to all individuals identified in that Section.

## 18.    Miscellaneous

18.1    This Amended Settlement Agreement may not be modified in any respect except

upon the written consent of the Parties.

28

18.2    The undersigned each represent and warrant that each has authority to enter into this Amended Settlement Agreement on behalf of the Party indicated below his or her name.

18.3    If, prior to the Effective Date, Class Counsel knows, or has reason to know, of any Plaintiff who intends to exclude himself or herself from the Settlement or who intends to submit an objection to the Settlement, Class Counsel shall promptly notify Defense Counsel within three (3) days.  The Parties shall thereafter meet and confer within seven (7) days of such notification to determine whether any modifications to the Settlement, or any other actions or filings, are required.

18.4    Class Counsel and the Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action or any related action, and they further represent and warrant that they know of no such assignments or transfers on the part of any member of the Settlement Class.

18.5    The Parties, together with Class Counsel and Defense Counsel, have jointly participated in the drafting of this Amended Settlement Agreement.  No Party hereto shall be considered the drafter of this Amended Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

18.6    As used in this Amended Settlement Agreement, the masculine, feminine, or neutral gender, and the singular or plural wording, shall each be deemed to include the others whenever the context so indicates.

18.7    Unless otherwise noted, all references to "days" in this Amended Settlement Agreement shall be to calendar days.  In the event any date or deadline set forth in this Amended

Settlement Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter that is not a federal legal holiday.

18.8    Any and all disputes arising from or related to this Amended Settlement Agreement must be brought by the Parties, Class Counsel, Defense Counsel, and/or members of the Settlement Class exclusively to the Court.  The Parties, Class Counsel, Defense Counsel and members of the Settlement Class irrevocably submit to the exclusive and continuing jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Amended Settlement Agreement. All terms of this Amended Settlement Agreement and any suit, action, proceeding, or dispute arising out of or relating to this Amended Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of California without regard to choice of law or conflicts of laws principles; however, nothing in this Amended Settlement Agreement shall operate as a waiver of any Party's position regarding the applicable law governing the underlying claims at issue in the Action.

18.9    Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Amended Settlement Agreement.

18.10   Unless otherwise ordered by the Court, all motions, discovery, and other proceedings in the Action shall be stayed until the Court enters the Final Approval Order and Final Judgment, or this Amended Settlement Agreement is otherwise terminated.

18.11   Nothing in this Amended Settlement Agreement shall alter or abrogate any prior Court orders entered in the Action.

18.12   This Amended Settlement Agreement may be executed in counterparts.  Facsimile or PDF signatures shall be considered valid as of the date they bear.

18.13   The Parties, together with Class Counsel and Defense Counsel, agree to prepare and execute all documents, to seek Court approvals, to defend Court approvals, and to do all things reasonably necessary to complete the Settlement.

18.14   This Amended Settlement Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them.  The Parties represent and warrant to each other that they have read and fully understand the provisions of this Amended Settlement Agreement and have relied on the advice and representation of legal counsel of their own choosing.

18.15   This Amended Settlement Agreement may be amended or modified only by a written instrument signed by Defense Counsel and Class Counsel and approved by the Court.

31

**The Parties have agreed to the terms of this Amended Settlement Agreement.**

Dated: 10/03/22 _____          **Named Plaintiffs**

By: _____
Steve W. Berman
Hagens Berman Sobol Shapiro LLP

By: _____
Eamon P. Kelly
Sperling & Slater P.C.

By: _____
Melinda R. Coolidge
Hausfeld LLP

Dated:_____          **Google LLC**

By: _____
Name: Renny Hwang
Google LLC

Dated:_____          **Google Ireland Ltd.**

By: _____
Name: David M. Sneddon
Google Ireland Ltd.

Dated:_____          **Google Payment Corp.**

By: _____
Name: Robert E. Andreatta
Google Payment Corp.

1  **The Parties have agreed to the terms of this Amended Settlement Agreement.**

2

3  Dated:_____                    **Named Plaintiffs**

4
                                            By:   _____
5                                           Steve W. Berman
                                            Hagens Berman Sobol Shapiro LLP
6

7                                           By:   _[signature]_
                                            Eamon P. Kelly
8                                           Sperling & Slater P.C.
                                            Dated: 10/4/2022
9
                                            By:   _____
10                                          Melinda R. Coolidge
                                            Hausfeld LLP
11

12

13

14

15  Dated:_____                    **Google LLC**

16                                          By:   _____
                                            Name: Renny Hwang
17                                          Google LLC

18  Dated:_____                    **Google Ireland Ltd.**

19                                          By:   _____
                                            Name: David M. Sneddon
20                                          Google Ireland Ltd.

21

22  Dated:_____                    **Google Payment Corp.**

23                                          By:   _____
                                            Name: Robert E. Andreatta
24                                          Google Payment Corp.

25

1  | The Parties have agreed to the terms of this Amended Settlement Agreement.

2

3  | Dated: October 6, 2022                     **Named Plaintiffs**

4

5  |                                            By: _____
   |                                            Steve W. Berman
6  |                                            Hagens Berman Sobol Shapiro LLP

7  |                                            By: _____
   |                                            Eamon P. Kelly
8  |                                            Sperling & Slater P.C.

9

10 |                                            By:  _Melinda R Coolidge_
   |                                            Melinda R. Coolidge
11 |                                            Hausfeld LLP

12

13

14

15 | Dated:_____           **Google LLC**

16 |                                            By: _____
   |                                            Name: Renny Hwang
17 |                                            Google LLC

18 | Dated:_____           **Google Ireland Ltd.**

19 |                                            By: _____
20 |                                            Name: David M. Sneddon
   |                                            Google Ireland Ltd.

21

22 | Dated:_____           **Google Payment Corp.**

23 |                                            By: _____
   |                                            Name: Robert E. Andreatta
24 |                                            Google Payment Corp.

25

                                  32

1  **The Parties have agreed to the terms of this Amended Settlement Agreement.**

2

3  Dated:_____              **Named Plaintiffs**

4

5                                     By:    _____
                                       Steve W. Berman
6                                      Hagens Berman Sobol Shapiro LLP

7                                     By:    _____
                                       Eamon P. Kelly
8                                      Sperling & Slater P.C.

9                                     By:    _____
10                                     Melinda R. Coolidge
                                       Hausfeld LLP
11

12

13

14

15 Dated:_____              **Google LLC**

                                       DocuSigned by:
                                       *Renny Hwang*
16                                    By:    _____
                                             5BAA27C77BAF4C8...
                                       Name: Renny Hwang
17                                     Google LLC

18 Dated:_____              **Google Ireland Ltd.**

19
                                      By:    _____
20                                     Name: David M. Sneddon
                                       Google Ireland Ltd.
21

22 Dated:_____              **Google Payment Corp.**

23
                                      By:    _____
                                       Name: Robert E. Andreatta
24                                     Google Payment Corp.

25

**The Parties have agreed to the terms of this Amended Settlement Agreement.**

Dated:_____          **Named Plaintiffs**

By:    _____
Steve W. Berman
Hagens Berman Sobol Shapiro LLP

By:    _____
Eamon P. Kelly
Sperling & Slater P.C.

By:    _____
Melinda R. Coolidge
Hausfeld LLP

Dated:_____          **Google LLC**

By:    _____
Name: Renny Hwang
Google LLC

Dated:_____          **Google Ireland Ltd.**
    05 October 2022

By:    _____
Name: David M. Sneddon
Google Ireland Ltd.

Dated:_____          **Google Payment Corp.**

By:    _____
Name: Robert E. Andreatta
Google Payment Corp.

32

1 **The Parties have agreed to the terms of this Amended Settlement Agreement.**

2

3 Dated:_____                    **Named Plaintiffs**

4

5                                          By:    _____
                                           Steve W. Berman
6                                          Hagens Berman Sobol Shapiro LLP

7                                          By:    _____
                                           Eamon P. Kelly
8                                          Sperling & Slater P.C.

9                                          By:    _____
10                                         Melinda R. Coolidge
                                           Hausfeld LLP
11

12

13

14

15 Dated:_____                   **Google LLC**

16                                         By:    _____
                                           Name: Renny Hwang
17                                         Google LLC

18 Dated:_____                   **Google Ireland Ltd.**

19                                         By:    _____
                                           Name: David M. Sneddon
20                                         Google Ireland Ltd.

21

22 Dated:_____                   **Google Payment Corp.**

23                                         By:  *Robert E. Andreatta*
24                                         Name: Robert E. Andreatta
                                           Google Payment Corp.

25

1

2   Dated: 05 October 2022 _____

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Google Commerce Ltd.**

By: _____
Name: David M. Sneddon
Google Commerce Ltd.


**Google Asia Pacific Pte. Limited**

By: _____
Name: Lavanya Swetharanyan
Google Asia Pacific Pte. Limited

1

2      Dated:_____                    **Google Commerce Ltd.**

3                                               By:   _____
                                                Name: David M. Sneddon
4                                               Google Commerce Ltd.

5      Dated:_____                    **Google Asia Pacific Pte. Limited**

6                                               By:   _Lavanya Swetharanyan_
                                                      CDCF4847503C453...
7                                               Name: Lavanya Swetharanyan
                                                Google Asia Pacific Pte. Limited

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DONALD R. CAMERON, ET. AL.,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**APPLE INC.,**<br><br>    Defendant. | CASE NO. 19-cv-3074-YGR<br><br>**ORDER:**<br>**GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br>**GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD; AND**<br><br>**JUDGMENT**<br>Re: Dkt. Nos. 465 and 471 |

The Court previously granted plaintiffs' Motion for Preliminary Approval of the Class Action Settlement in this matter on November 16, 2021. (Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), Dkt. No 453.) As directed by the Preliminary Approval Order, on February 14, 2022, plaintiffs filed their Motion for Attorney's Fees, Costs, and Service Award. (Dkt. No. 465.) Two weeks later, on February 28, 2022, Apple filed a response to plaintiffs' motion, objecting to the amount of attorney fee's as high. (Dkt. No. 467.)

On March 25, 2022, Steven Wytyshyn, a U.S. Developer, Founder, & CEO of Cosmosent Labs, Inc., filed an objection to the settlement. (DKt. No. 469.) On April 29, 2022, plaintiffs filed their Motion for Final Settlement Approval and a response to Mr. Wytyshyn's objection. (Dkt. No. 471.) The Court held a hearing on June 7, 2022 on the pending motions.

Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the Motion for Final Approval. In general, the Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representatives and class counsel are confirmed. The Motion for Attorney's fees, Costs, and Service Award is **GRANTED IN PART AND DENIED IN PART**. The Court **ORDERS** that class counsel shall be paid $26,000,000 in attorney's fees and

$3,500,000 in litigation costs and that named plaintiffs Donald Cameron and Pure Sweat Basketball, Inc., shall each be paid a $5,000 incentive award.

## I. BACKGROUND

Plaintiffs filed their initial class action complaint on June 4, 2019, and their consolidated amended complaint on September 30, 2019, against defendant Apple, Inc. alleging that Apple willfully acquired and maintained monopoly power, or attempted to gain monopoly power, by refusing to allow iOS device users to purchase iOS apps and in-app products other than through its own App Store. Plaintiffs' amended complaint alleges the following claims against Apple: (1) violation of the Sherman Act –Monopolization/ Monopsonization (15 U.S.C. § 2); (2) violation of the Sherman Act-Attempted Monopolization/ Monopsonization (15 U.S.C. § 2); (3) unlawful business practices and violations under California Business and Professions Code, § 17200, et seq. ("UCL"); and (4) unfair competition under California Business and Professions Code, § 17200, et seq. ("UCL").

Following class and merits-based discovery, plaintiffs moved for class certification on June 1, 2021. On August 11, 2021, Apple filed its opposition to class certification. After extensive negotiations, the parties reached a settlement, and plaintiffs moved for preliminary approval of the class settlement on August 26, 2021. On November 16, 2021, the Court granted plaintiffs' Motion for Preliminary Approval of the Class Settlement.

## II. TERMS OF THE SETTLEMENT AGREEMENT

### A. Monetary and Structural Relief

The settlement provides $100,000,000 in monetary relief and structural relief in six areas of particular concern to the iOS developer community. (*See* Ex. A, Settlement Agreement). The Settlement Agreement appears to have been the product of arm's length and informed negotiations with the assistance of an experienced mediator. The relief provided for the Class appears to be adequate, taking into account:

(i) the costs and risks associated with trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

United States District Court
Northern District of California

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreements required to be identified under Rule 23(e)(3) (in this case, none).

Moreover, the Settlement Agreement appears to treat class members equitably relative to each other. The Court notes that it is particularly aware of the risks of trial in this case having tried and written a 185-page decision in *Epic Games v. Apple*, Case No. 4:20-cv-5640-YGR.

In terms of structural relief, under the Settlement, Apple has agreed to maintain the 15-percent commission tier for U.S. developers enrolled in the Small Business Program for at least three years after Final Approval. (*See* Ex. A § 5.1.1.) Next, Apple has agreed to revise its App Store Guidelines to permit developers of all app categories to communicate with consenting customers outside their app, including via email and other communication services, about purchasing methods other than in-app purchase. (*See id.* § 5.1.3.) Third, for at least three years after Final Approval, Apple will continue to "conduct robust experimentation to drive continuous improvement" in App discoverability, including in ways that will "give new and high-quality apps a chance to be found." (*See id.* § 5.1.2.) Fourth, Apple will expand its pricing tiers from 100 to 500 (by March 31, 2023),[1] and maintain those tiers for at least three years from Final Approval. (*See id.* § 5.1.4.) This enhanced pricing freedom will allow iOS developers to more carefully calibrate their prices to compete and enhance revenues. Fifth, Apple will create an appeal process, which will be available to any developer who "believes that there has been unfair treatment by Apple in the review of any of the U.S. developer's apps, or in-app products, or updates." (*See id.* 5.1.5.) Apple will be required under the Settlement to maintain this appeal process, and the website callout, for at least three years. (*See id.*) Finally, in terms of transparency, for at least three years from Final Approval, Apple will publish an annual "transparency report" that (at a minimum) will provide (a) meaningful statistics on the number of apps rejected and reasons why, (b) the number of customer and developer accounts deactivated, and (c) objective data regarding search queries and results, and the number of apps removed from the App Store. (*See id.* § 5.1.6.) The Court finds these structural benefits are valuable to the settlement class.

---

[1] *See* Dkt. No. 478, Order Granting Joint Stipulation for Extension of Time Relating to Settlement Agreement Provision 5.1.4.

B.     **Attorney's Fees and Costs**

Under the Settlement Agreement, class counsel agreed to seek attorney's fees plus reimbursement of class counsel's costs and expenses.  The parties also agreed that Apple shall pay named plaintiffs up to $5,000 each as an incentive award in exchange for a general release of all claims against Apple.

C.     **Class Member Release**

Settlement Class Members and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns shall have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights and liabilities, that were brought, could have been brought, or arise from the same facts underlying the claims asserted in the action, known or unknown, recognized now or hereafter, existing or preexisting, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or regulation), against Apple, Inc. for any type of relief that can be released as a matter of law, including. without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

D.     **Class Notice and Claims Administration**

Pursuant to the Settlement Agreement, the Court appointed Angeion Group to administer the settlement and to contact the class members in the manner set forth therein and including the attachments contained within the Preliminary Approval Order.  Class members were given until March 21, 2022, to object to or exclude themselves from the Settlement Agreement.  Only thirteen of the total class members opted out and only one member objected to the class settlement.

III.     **FINAL APPROVAL OF SETTLEMENT**

A.     **Legal Standard**

A court may approve a proposed class action settlement of a class proposed to be certified only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the

4

1  requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement,

2  a court need not address whether the settlement is ideal or the best outcome, but only whether the

3  settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.

4  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), o*verruled on other grounds by*

5  *Dukes*, 564 U.S. at 131.  The *Hanlon* court identified the following factors as relevant to assessing a

6  settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and

7  likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

8  (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

9  proceeding; (6) the experience and views of counsel; (7) the presence of a government participant;

10  and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted); *see*

11  *also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  In reviewing such

12  settlements, in addition to considering the above factors, a court also must ensure that "the

13  settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset*

14  *Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011).

15  Settlements that occur before formal class certification also "require a higher standard of

16  fairness."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such

17  settlements, in addition to considering the above factors, a court also must ensure that "the

18  settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset*

19  *Prods. Liab. Litig.*, 654 F.3d at 946–47.

20  **B.  Class Definition and Basis for Certification**

21  The Settlement Agreement, attached hereto as **Exhibit A**, defines the class as:

22  All former or current U.S. developers of any Apple IOS application
or in-app product (including subscriptions) sold for a non-zero price

23  via Apple's IOS App Store that earned, through all Associated
Developer Accounts, proceeds equal to or less than $1,000,000

24  through the App Store U.S. storefront in every calendar year in
which the U.S. developer had a developer account between June 4,

25  2015 to the date of the Agreement (August 24, 2021).  For class
definition purposes, the 2015 calendar year consist of June 4, 2015

26  through December 31, 2015.  The 2021 calendar year shall consist
of January 1, 2021 through April 26, 2021.  Additionally, excluded

27  from the Settlement Class are (a) directors, officers, and employees

28

5

United States District Court  Northern District of California

of Apple or its subsidiaries and affiliated companies, as well as Apple's legal representatives, heirs, successors, or assigns, (b) the Court, the Court staff, as well as any appellate court to which this matter is ever assigned and its staff, (c) Defense Counsel, as well as their immediate family members, legal representatives, heirs, successors, or assigns, (d) any Developers who validly request exclusion ("opt out") from the Settlement Class, and (e) any other individuals whose claims already have been adjudicated to a final judgment.

The Court finds that, for purposes of settlement, plaintiffs have satisfied the requirements of Rule 23(a) as well as the requirements for certification under one or more subsections of Rule 23(b). With respect to numerosity under Rule 23(a)(1), the settlement class includes approximately 67,000 members, making it so numerous that joinder of all members is impracticable.

Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though all questions of fact and law need not be in common. *See Hanlon*, 150 F.3d at 1026. Plaintiffs brought the following causes of action: (i) Violation of the Sherman Act – Monopolization/ Monopsonization (15 U.S.C. § 2); (ii) Violation of the Sherman Act-Attempted Monopolization/ Monopsonization (15 U.S.C. § 2); (iii) Unlawful business practices and violations under California Business and Professions Code, § 17200, et seq. ("UCL"); and (iv) Unfair competition under California Business and Professions Code, § 17200, et seq. ("UCL"). (*See* Dkt. No. 53) ("Consolidated Class Complaint"). The focus of this action—whether Apple willfully acquired and maintained monopoly power, or attempted to gain monopoly power, by refusing to allow iOS device users to purchase iOS apps and in-app products other than through its own App Store—is common to all class members. Antitrust actions are particularly appropriate for class treatment as the allegations regarding the defendant's conduct, and the evidence of the same, which typically is expert heavy, impacts the class generally.

Rule 23(a)(3) requires that the plaintiffs show that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Plaintiffs' and members of the settlement class claims all stem from the same alleged conduct, *i.e.* antitrust injury, making plaintiffs' claims typical of class members. Here, while the settlement class is narrower than that alleged in the consolidated complaint, the class representatives themselves are typical of those

6

1    members represented herein, namely the subgroup of 99% of the developers.

2           With respect to Rule 23(a)(4), the Court finds the representative parties and class counsel

3    have fairly and adequately represented the interests of the class.  No conflicts of interest appear as

4    between plaintiffs and the members of the settlement class.  Class counsel are deeply versed in this

5    area of the law and have routinely demonstrated that they are qualified and have experience with

6    prosecuting class actions of this kind and therefore adequate to represent the settlement class as

7    well.  The parties engaged in extensive discovery during the almost 2.5-year course of this

8    litigation. More than 5 million documents and 20 million pages have been produced in this

9    litigation. Dkt. No. 465-1, Declaration of Steve Berman, ¶ 17. Apple has produced 13 terabytes of

10   transactional data that plaintiffs and their experts have analyzed.  *Id.*

11          The settlement class further satisfies Rule 23(b)(3) in that common issues predominate and

12   "a class action is superior to other available methods for fairly and efficiently adjudicating" the

13   claims here.

14          Based on the foregoing, the proposed settlement class is certified pursuant to Rule 23(c).

15          **C.    Adequacy of Notice**

16          A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

17   class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  "The class must

18   be notified of a proposed settlement in a manner that does not systematically leave any group

19   without notice."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

20   Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the

21   circumstances, to apprise the Class members of the proposed settlement and of their right to object

22   or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute

23   due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all

24   applicable requirements of due process and any other applicable requirements under federal law.

25   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Due process requires "notice

26   reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

27   the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover*

28   *Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

United States District Court
Northern District of California

7

The Court approved the parties' proposed notice procedures when it granted preliminary approval. Pursuant to those procedures, the class administrator provided class members with individual direct notice via both email and mail. The class administrator also utilized a targeted social media campaign, using Facebook, Instagram, and LinkedIn, and an online class settlement website to provide notice to the class and engaged in numerous actions to follow-up and find missing class members, where able. Apple also posted a message to its developer news website on April 25, 2022, directing developers to the settlement website.

Based upon the foregoing, the Court finds that the settlement class has been provided adequate notice.

### D. Settlement Agreement Appears Fair and Reasonable

As to the *Hanlon* factors, the Court finds that they indicate the settlement here is fair and reasonable. Absent the settlement, plaintiffs would have been required to show that Apple willfully acquired and maintained monopoly power, or attempted to gain monopoly power, by refusing to allow iOS device users to purchase iOS apps and in-app products other than through its own App Store. Antitrust cases such as this one are "particularly risky, challenging, and widely acknowledge[d] to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020). Further, proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals.

The Settlement Agreement appears to have been the product of arm's length and informed negotiations. The settlement occurred only after extensive litigation including: the exchange of more than 5 million documents and 20 million page, more than fifty depositions, including depositions of Apple's senior management. Following protracted negotiations, and motion practice, Apple produced a 13-terabyte transactional dataset that plaintiffs and their experts have extensively analyzed. Thus, the parties have vetted their claims and know the strengths and weaknesses of their case. Further, they settled after monitoring the trial in *Epic Games v. Apple* but before the Court issued its final decision.

In addition, the parties engaged in four mediation sessions conducted by the Honorable Layn Phillips which demonstrates that the settlement reached by the parties was a result of serious, informed, non-collusive, and arms-length negotiation. Counsel for both parties are highly experienced. Accordingly, the Court finds that the record does not indicate collusion or self-dealing. *See In re Bluetooth*, 654 F.3d at 946-47.

The relief provided for the Class appears to be adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreements required to be identified under Rule 23(e)(3). Moreover, the Settlement Agreement appears to treat Class members equitably relative to each other.

The reaction of the class was entirely positive. As noted, the Court received thirteen opt-outs and one objection after a vigorous notice plan. Given the press regarding the settlement, the Court is confident that the class had adequate notice and would have advised the Court had significant objections existed. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.,* 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### E. Objection to Settlement

With respect to the one objection from Steven Wytyshyn, a U.S. Developer, Founder, & CEO of Cosmosent Labs, Inc. (Dkt. 469), the Court notes that the objection does not argue that the settlement is necessarily unfair, unreasonable, or inadequate. Rather, Mr. Wytyshyn criticizes certain aspects of the App Store and suggests improvements that he would have liked to see addressed as part of the settlement. Specifically, the objection criticizes Apple's suppression of certain apps on the App Store, Apple's control of app ratings, and the desire to have Apple disclose per-category revenue numbers on a weekly basis.

United States District Court
Northern District of California

9

The Ninth Circuit has made clear that the fairness of a proposed settlement "is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators" explaining that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.' " *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Thus, while the Court understands Mr. Wytyshyn's concerns and desire for additional relief, the objection itself does not provide a basis to deny final approval.

**F.     Other Findings**

**Notice to Government Agencies:**  The settlement administrator provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1715(b).  (Dkt. No. 471-2 ¶ 6.)  Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

**G.     Certification is Granted and the Settlement is Approved**

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the settlement class as defined therein to be proper.  Accordingly, the Court grants class certification to the following settlement class:

> All former or current U.S. developers of any Apple IOS application or in-app product (including subscriptions) sold for a non-zero price via Apple's IOS App Store that earned, through all Associated Developer Accounts, proceeds equal to or less than $1,000,000 through the App Store U.S. storefront in every calendar year in which the U.S. developer had a developer account between June 4, 2015 to the date of the Agreement (August 24, 2021).  For class definition purposes, the 2015 calendar year consist of June 4, 2015 through December 31, 2015.  The 2021 calendar year shall consist of January 1, 2021 through April 26, 2021.  Additionally, excluded from the Settlement Class are (a) directors, officers, and employees of Apple or its subsidiaries and affiliated companies, as well as Apple's legal representatives, heirs, successors, or assigns, (b) the Court, the Court staff, as well as any appellate court to which this matter is ever assigned and its staff, (c) Defense Counsel, as well as their immediate family members, legal representatives, heirs, successors, or assigns, (d) any Developers who validly request exclusion ("opt out") from the Settlement Class, and (e) any other individuals whose claims already have been adjudicated to a final judgment.

1   **IV.    MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS**

2          **A.      Attorney's Fees**

3          Attorney's fees and costs may be awarded in a certified class action under Federal Rule of

4   Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be

5   approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To

6   "avoid abdicating its responsibility to review the agreement for the protection of the class, a

7   district court must carefully assess the reasonableness of a fee amount spelled out in a class action

8   settlement agreement."  *Id.*  "[T]he members of the class retain an interest in assuring that the fees

9   to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely

10  indicator that the class has obtained less monetary or injunctive relief than they might otherwise.

11  *Id.* at 964.

12         The Court analyzes an attorney's fee request based on either the "lodestar" method or a

13  percentage of the total settlement fund made available to the class, including costs, fees, and

14  injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth

15  Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical

16  or formulaic approach that results in an unreasonable reward."  *In re Bluetooth*, 654 F.3d at 944–

17  45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

18         Under the lodestar approach, a court multiplies the number of hours reasonably expended

19  by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court

20  calculates the lodestar figure by multiplying the number of hours reasonably expended on a case

21  by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in

22  the relevant community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit

23  "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

24  adequate explanation in the record of any 'special circumstances' justifying a departure."  *In re

25  Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

26  1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery

27  would be "either too small or too large in light of the hours devoted to the case or other relevant

28  factors."  *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery

United States District Court
Northern District of California

11

method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Ninth Circuit has made clear that in "megafund" cases, courts may "employ the lodestar method instead" of the percentage-of-recovery method if rote application of the 25% benchmark "would yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth,* 654 F.3d at 942.

Here, class counsel advocates applying the percentage-of-the-fund method. Class counsel requests $27 million which is 27 percent of the $100 million class cash fund. The attorney's fees sought reflect a multiplier of 2.47 of the actual lodestar totaling $10,923,265. Class counsel argues that the Court should award the requested fees because the requested amount is only 19.9 percent of the $135.44 million in quantifiable relief when you factor in the $35.44 million in savings to the class by way of the structural relief that is part of the settlement.

Here, the Court applies the percentage-of-the-fund method. As a starting point, the Court finds that 25% of the cash fund method is inherently reasonable. *See, e.g., In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941–42 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). However, the Court maintains its discretion to adjust upward or downward. *Haralson v. U.S. Aviation Servs. Corp.*, 2021 WL 5033832, at *7 (N.D. Cal. Feb. 3, 2021).

In applying the percentage-of-the-fund method, the Court finds that an award of $26 million is appropriate. This amount constitutes 26% of the common fund or roughly 19.2 percent of the settlement if you include the $35.44 million in value of the structural relief. A 1% increase

12

over the presumptively reasonable 25% benchmark is warranted in light of the significant value of the non-monetary relief conferred to the class by way of the structural relief. Some of the key benefits of the structural relief include: Apple's maintenance of the small business program; transparency in the form of annual transparency reports containing data on Apple's app review, search, security, and more; an appeal process that allows developers to appeal rejections of apps; Apple's expansion of price points; Apple's change in policy that will now permit U.S. developers to communicate with their customers via email and other means outside their apps about alternatives to in-app purchasing methods; and relief relating to app discoverability that will make it easier for newer and smaller apps to be found.

While the exact value of this information is difficult to quantify, plaintiffs' expert, Nicholas Economides, opined that the settlement class will save approximately $177.2 million in commissions by way of Apple maintaining its Small Business Program for three years post settlement. (Dkt. No. 459-7, Declaration of Nicholas Economides, at 8.) He also opined that other aspects of the structural relief such as allowing developers to communicate with customers outside the app store will also lead to developers paying less in commission fees. (*Id*. at 9.) While Apple disputes whether Mr. Economides' figures are accurate, Apple does not dispute the structural relief also confers substantial benefits to the settlement class. Thus, the Court finds that a slight increase is the standard benchmark is warranted here. As such, the Court awards class counsel $26 million in attorney's fees.

The Court also applies the lodestar method as a cross-check. *In re Bluetooth*, 654 F.3d at 944–45. Class counsel has submitted several declarations describing its billing rates and hours worked for this case. Having reviewed the billing rates, the Court finds them reasonable in light of the prevailing market rates in this district and that class counsel has submitted adequate documentation justifying those rates. The Court also finds that the billing records adequately reflect the amount of time reasonably spent on this litigation. Accordingly, the Court finds that class counsel's reported total lodestar of $10,923,265, which covers 20,531 hours of time worked, reasonable.

The Court's award of $26 million represents a positive multiplier of 2.38. As indicated

13

above, the Court may "adjust" the lodestar figures "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42. The Ninth Circuit in *Vizcaino* conducted a survey of attorney's fees awards in "megafund cases." *See* 290 F.3d at 1052-54. This survey involved common fund cases ranging from $50–200 million between 1996 and 2001. *See id.* In 83% of the settlements (20 of 24), the court found that the multiplier ranged from 1.0–4.0, and in 54% of the settlements (13 of 24), the multiplier ranged from 1.5–3.0 range. *Id.* at 1051 n.6.

The Court concludes that a positive multiplier of 2.38 is appropriate for class counsel and is consistent with the vast majority large settlements such as this one and would adequately reward class counsel for the work performed in this litigation. The Court recognizes that class counsel has achieved significant benefits for the class and that class counsel assumed a risk of nonpayment while litigating this case for nearly three years. In the end, class counsel achieved a significant result for the class. According to plaintiffs, the $100 million cash fund represents approximately 30 to 34 percent of the maximum potential damages for the class.

Based on the foregoing, the Court awards class counsel $26 million in attorney's fees which represents 26% of the class cash fund (approximately 19.2 percent if you include the value of the structural relief) and a 2.38 multiplier to class counsel's lodestar of $10,923,265.

### B. Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses in the amount of $3,713,173.84. However, class counsel only seeks reimbursement for $3,500,000 The Court finds an award of $3,500,000 in costs reasonable, fair, and adequate.

14

United States District Court
Northern District of California

### C.    Service Awards

The district court must evaluate named plaintiffs' requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.  "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, both class representatives are current App Store developers who took significant risks in bringing this action in their own names. Further, both class representatives devoted substantial time to litigating the action. They both sat for deposition, attended numerous meetings to prepare for the depositions, compiled documents, regularly corresponded with counsel, and neither derived a personal benefit beyond any recovery to the class. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and who work to achieve a settlement that confers substantial benefits on others.  Thus, the Court approves the requested incentive award payment for plaintiffs Donald Cameron and Pure Sweat Basketball, Inc.

### V.    CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorney's fees, costs, and service awards is **GRANTED IN PART AND DENIED IN PART** as follows: Class Counsel is awarded $26,000,000 in attorney's fees and $3,500,000 in litigation costs.  Plaintiffs Donald Cameron and Pure Sweat Basketball, Inc. are each granted an incentive award of $5,000.

1      Without affecting the finality of this order in any way, the Court retains jurisdiction of all

2  matters relating to the interpretation, administration, implementation, effectuation and enforcement

3  of this order and the Settlement.

4      **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in

5  accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class

6  Action Settlement issued on November 16, 2021, and this Order.  This document will constitute a

7  final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal

8  Rules of Civil Procedure.

9      The parties shall file a post-distribution accounting in accordance with this District's

10  Procedural Guidance for Class Action Settlements no later than **OCTOBER 28, 2022**.  The Court

11  **SETS** a compliance deadline on **OCTOBER 21, 2022** on the Court's 9:01 a.m. calendar to verify

12  timely filing of the post-distribution accounting.

13      This terminates Docket Nos. 465 and 471.

14      **IS SO ORDERED.**

15  Dated: June 10, 2022

16                     **YVONNE GONZALEZ ROGERS**
                          **UNITED STATES DISTRICT COURT JUDGE**

*United States District Court*
*Northern District of California*

# EXHIBIT A

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| Donald R. Cameron, et al., | Case No. 4:19-cv-03074-YGR |
| Plaintiffs, | The Honorable Yvonne Gonzalez Rogers |
| v. | |
| Apple Inc., | **STIPULATION OF SETTLEMENT** |
| Defendant. | |

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

The Parties, by and through their respective counsel, in consideration for and subject to the promises, terms, and conditions contained in this Settlement Agreement, hereby warrant, represent, acknowledge, covenant, stipulate and agree, subject to Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure, as follows:

1. **DEFINITIONS**

As used herein the following terms have the meanings set for below:

1.1    "Action" shall mean the litigation styled Donald R. Cameron, Pure Sweat Basketball, Inc., and Barry Sermons, on behalf of themselves and all others similarly situated v. Apple Inc., Case No. 4:19-cv-03074-YGR, filed in the United States District Court for the Northern District of California (the "Court").

1.2    "Apple" means Apple Inc.

1.3    "Approved Claims" means those Claims which are approved by the Settlement Administrator for payment.

1.4    "Associated Developer Accounts" means any U.S. Apple Developer Program account that an individual or legal entity owns or controls, or any U.S. Apple Developer Program account that owns or controls a given individual's or legal entity's account.

1.5    "Attorneys' Fees" means any award of attorneys' fees, costs, and expenses of any kind or description incurred by Class Counsel or other attorneys, experts, consultants, or agents of the Named Plaintiffs or the Settlement Class.

1.6    "Claim Form" means the proof of claim and release form(s) in a form mutually agreeable to the parties, to be attached as an exhibit to the Motion for Preliminary Approval.

1.7    "Claim" means any claim submitted by a Settlement Class Member.

1.8    "Claims Period" means the period between the Notice Date until the deadline set forth in paragraph 7.4.

1.9    "Class Counsel" means the law firm of Hagens Berman Sobol Shapiro LLP, who has any and all authority and capacity necessary to execute this Settlement Agreement and bind all of the Named Plaintiffs who have not personally signed this Settlement Agreement, as if each of those individuals had personally executed this Settlement Agreement.

1.10    "Class Notice" means the Notice of Pendency and Proposed Settlement of Class Action in a form mutually agreeable to the parties, to be attached as an exhibit to the Motion for Preliminary Approval.

1.11    "Court" means the United States District Court for the Northern District of California.

1.12    "Defense Counsel" means the law firm of Gibson, Dunn & Crutcher LLP.

2

1.13    "Developer" means a person or entity who has registered for a Developer Program Account with Apple, and shall include all Associated Developer Accounts.  A "U.S. Developer" means a Developer who self-identified as U.S.-based when registering for the Developer Program.

1.14    "Effective Date" shall mean the first day after which all of the following events and conditions of this Settlement Agreement have been met or occurred:

> (a) Apple, Class Counsel, and Defense Counsel have executed this Settlement Agreement;
>
> (b) The Court has conditionally certified the Settlement Class, preliminarily approved the Settlement, and approved notice to the Settlement Class;
>
> (c) The time period for members of the Settlement Class to exclude themselves has expired;
>
> (d) The Settlement Administrator has delivered the spreadsheet(s) and information to Defense Counsel and Class Counsel as specified in Section 7.9 and 7.10;
>
> (e) All disputed Claims have been resolved;
>
> (f) The Court has entered the Final Approval Order and Final Judgment;
>
> (g) The time for appeal or writ of the Final Approval Order and Final Judgment has expired or, if an appeal and/or petition for review is taken and the Settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired;
>
> (h) The time for appeal or writ of any order regarding Attorneys' Fees and Expenses and/or Named Plaintiff Service Awards has expired or, if an appeal and/or petition for review is taken and the order is affirmed, the

time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired;

(i)   The Action is dismissed with prejudice and a final judgment is entered; and

(j)   The time for appeal or writ of the final judgment in the Action has expired or, if an appeal and/or petition for review is taken and the dismissal is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.

1.15    "Final Approval Order and Final Judgment" means the final approval order and judgment dismissing and closing the Action.

1.16    "Final Hearing" means the hearing(s) held by the Court to consider and determine whether the requirements for certification of the Settlement Class have been met and whether the Settlement should be approved as fair, reasonable, and adequate; whether Class Counsel's Attorneys' Fees should be approved; and whether the Final Approval Order and Final Judgment should be entered.  The Final Hearing may, from time to time and without further notice to the Settlement Class (except those who have filed timely and valid objections and requested to speak at the Final Hearing), be continued or adjourned by order of the Court.

1.17    "Named Plaintiffs" means Donald R. Cameron and Pure Sweat Basketball, Inc.

1.18    "Net Small Developer Assistance Fund" means the Small Developer Assistance Fund, reduced by the sum of the following amounts:  (1) the costs of notice and the costs of administering the Settlement, as set forth in Sections 7.1 and 7.2 below; (2) any Attorneys' Fees (which may include separate awards for fees and expenses) to Class Counsel, as set forth in

4

Sections 9.1 and 9.2 below; and (3) any Service Awards provided to Named Plaintiffs with the authorization of the Court.

1.19    "Notice Date" means the date set forth in the Preliminary Approval Order for commencing the transmission of the Email Notice.

1.20    "Parties" means Apple and the Named Plaintiffs.

1.21    "Proceeds" means a Developer's net revenues on the U.S. App Store storefront, after subtracting out any commission paid to Apple.

1.22    "Preliminary Approval Order" means an order preliminarily approving the Settlement, providing for notice to the Settlement Class, and preliminarily approving a proposed disposition of the Small Developer Assistance Fund.

1.23    "Released Parties" means (a) Apple and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Apple; and (b) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, consultants, administrators, representatives, fiduciaries, insurers, predecessors, successors, and assigns of the entities in part (a) of this paragraph.

1.24    "Service Award" means a payment from the Small Developer Assistance Fund to either or both of the two Named Plaintiffs, in an amount not to exceed $5,000.00, in recognition of their service in prosecuting this action as developer businesses, exclusive of any other payments to which they might be entitled under this Agreement, if approved by the Court.

1.25    "Settlement" and "Settlement Agreement" mean the settlement described in this Stipulation of Settlement.

5

1.26    "Settlement Administrator" means Angeion Group, which shall provide settlement notice and administration services pursuant to the terms of this Settlement Agreement.

1.27    "Settlement Class" means all former or current U.S. Developers of any Apple iOS application or in-app product (including subscriptions) sold for a non-zero price via Apple's iOS App Store that earned, through all Associated Developer Accounts, Proceeds equal to or less than $1,000,000.00 through the App Store U.S. storefront in every calendar year in which the U.S. Developer had a Developer Account between June 4, 2015 to the date of this Agreement.  For class definition purposes, the 2015 calendar year shall consist of June 4, 2015 through December 31, 2015.  The 2021 calendar year shall consist of January 1, 2021 through April 26, 2021, the last date in 2021 for which there are available developer transactional data as produced in this Action. Additionally, excluded from the Settlement Class are (a) directors, officers, and employees of Apple or its subsidiaries and affiliated companies, as well as Apple's legal representatives, heirs, successors, or assigns, (b) the Court, the Court staff, as well as any appellate court to which this matter is ever assigned and its staff, (c) Defense Counsel, as well as their immediate family members, legal representatives, heirs, successors, or assigns, (d) any Developers who validly request exclusion ("opt out") from the Settlement Class, and (e) any other individuals whose claims already have been adjudicated to a final judgment.

1.28    "Settlement Class Member" means and includes every member of the Settlement Class who does not validly and timely request exclusion ("opt out") from the Settlement Class.

1.29    "Small Developer Assistance Fund" means a non-reversionary cash fund total of $100,000,000.00 to be paid by Apple and administered by the Settlement Administrator in accordance with the terms of this Settlement Agreement.

1.30    "Settlement Website" means an Internet website that the Settlement Administrator shall establish to inform the Settlement Class of the terms of this Settlement, their rights, dates, deadlines, and related information.

1.31    "Summary Notice" means the Summary Notice of Settlement in a form mutually agreeable to the parties, to be attached as an exhibit to the Motion for Preliminary Approval.

## 2. RECITALS

This Agreement is made for the following purposes and with reference to the following facts:

2.1    On June 4, 2019, plaintiffs Donald Cameron and Pure Sweat Basketball, Inc. filed the first complaint in the Action in the United State District Court for the Northern District of California.  On September 30, 2019, Named Plaintiffs filed a Consolidated Amended Complaint.  The Consolidated Amended Complaint alleged that Apple had monopolized an alleged iOS app and in-app-product distribution services market in violation of Section 2 of the Sherman Act; that Apple had attempted to monopolize an alleged iOS app and in-app-product distribution services market in violation of Section 2 of the Sherman Act; and that Apple's conduct violated Section 17200 of the California Business and Professions Code.

2.2    The Parties engaged in extensive discovery in the Action, which was consolidated with *Epic v. Apple Inc.*, Case No. 4:20-CV-05640-YGR, and *In re Apple iPhone Antitrust Litigation*, Case No. 4:11-cv-06714-YGR, for purposes of discovery.  Apple produced more than 20 million pages of documents and the Parties deposed almost 50 individuals.

2.3    On January 1, 2021, Apple introduced the App Store Small Business Program ("SBP").  The structure and timing of the SBP was driven by Apple's desire to accelerate innovation and help propel small businesses forward with the next generation of groundbreaking

apps on the App Store, in light of the Coronavirus pandemic. Apple also acknowledges that the pendency of this lawsuit was a factor in its decision to adopt the SBP. Under the Small Business Program:

- Existing developers who made up to $1,000,000.00 in proceeds in 2020 for all their apps, as well as developers new to the App Store, can qualify for the program and a reduced commission rate of fifteen percent (15%) on paid apps and in-app purchases.

- If a participating developer surpasses the $1,000,000.00 threshold, Apple's standard commission rate will apply to future sales.

- If a developer's proceeds fall below the $1,000,000.00 threshold in a future calendar year, they can requalify for the fifteen percent (15%) commission the year after.

- Developers must identify any Associated Developer Accounts to determine proceeds eligibility.

2.4     On June 1, 2021, Named Plaintiffs filed a motion for class certification in the Action, seeking certification of a class of all U.S. developers of any Apple iOS application or in-app product (including subscriptions) sold for a non-zero price via Apple's iOS App Store at any time on or after June 4, 2015. On August 10, 2021, Apple filed its opposition to Plaintiffs' motion for class certification, along with a motion to exclude Plaintiffs' experts and a motion to compel a trial plan.

2.5     The Parties engaged in extensive, arm's-length negotiations over the course of the Action, with the assistance of the Hon. Layn R. Phillips (Ret.) of Phillips ADR, a former United States District Court Judge and one of the most experienced mediators in the United States. As a

result of these arm's-length negotiations, the Parties reached the Settlement set forth in this Settlement Agreement, which memorializes the Parties' agreement. The Parties intend that this Settlement completely resolve any and all claims that were, or could have been, asserted in the Action on behalf of the Settlement Class.

2.6    Apple vigorously disputes the claims alleged in the Action and is entering into this Settlement to avoid burdensome and costly litigation. The Settlement is not an admission of wrongdoing, fault, liability, or damage of any kind. Among other things, Apple disputes that Named Plaintiffs' claims have merit, that Named Plaintiffs will be able to certify any class in this Action for litigation purposes, and that Named Plaintiffs and the putative class would be entitled to any relief. Without admitting any of the allegations made in the Action or any liability whatsoever, Apple is willing to enter into this Settlement solely in order to eliminate the burdens, distractions, expense and uncertainty of protracted litigation and in order to obtain the releases and final judgment contemplated by this Settlement, and to provide additional assistance to the small developer community that is an integral part of the iOS ecosystem.

2.7    Class Counsel and the Named Plaintiffs believe that the claims asserted in the Action have merit and have examined and considered the benefits to be obtained under this Settlement, the risks associated with the continued prosecution of this complex and potentially time-consuming litigation, and the likelihood of ultimate success on the merits, and have concluded that the Settlement is fair, adequate, reasonable and in the best interests of the Settlement Class.

2.8    The Parties desire to settle the Action in its entirety with respect to all potential claims arising out of the same facts alleged in the complaints filed in the Action. The Parties

intend this Settlement Agreement to bind Apple, the Named Plaintiffs, and all other Settlement Class Members.

**3.   CONFIDENTIALITY**

3.1    The Parties must comply with all portions of the Stipulated Protective Order (Dkt. 252) (as well as all Supplemental Protective Orders entered in the Action), including but not limited to Section 14 of the Stipulated Protective Order, which requires the return, destruction, or deletion of Protected Material (as defined in the Protective Order) within sixty (60) days of the final disposition of the Action.

3.2    This Settlement Agreement and its terms, including the fact of the proposed Settlement, shall remain completely confidential until all documents are executed and the Motion for Preliminary Approval is filed with the Court. Pending the filing of that Motion, Class Counsel may disclose this Settlement Agreement and its terms to their respective clients and experts as necessary for the implementation of this Settlement Agreement, who will also maintain the complete confidentiality of this Settlement Agreement and its terms, including the fact of the proposed Settlement.

**4.   CERTIFICATION OF THE SETTLEMENT CLASS**

4.1    The Parties stipulate and agree that, subject to Court approval, the Settlement Class should be conditionally certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure solely for purposes of the Settlement embodied in this Settlement Agreement. If, for any reason, this Settlement Agreement is not approved by the Court, the stipulation for certification and all of the agreements contained herein shall be considered null and void as provided in Section 8.5.

4.2    Apple does not consent to certification of the Settlement Class (or to the propriety of class treatment) for any purpose other than to effectuate this Settlement. For the avoidance of

doubt, Apple does not agree that this (or any) class of Developers could be certified for litigation purposes or that a trial of these claims would be manageable. Apple's agreement to provisional certification for purposes of settlement does not constitute an admission of wrongdoing, fault, liability, or damage of any kind, or that any class certification would be appropriate for litigation or any other purpose other than to effectuate this Settlement.

4.3     If for any reason the Effective Date does not occur or this Settlement Agreement is terminated, disapproved by any court (including any appellate court), or not consummated for any reason, the order certifying the Settlement Class for purposes of effectuating the Settlement (and all preliminary and final findings regarding that class certification order) shall be automatically vacated upon notice of the same to the Court. The Action shall then proceed as though the Settlement Class had never been certified pursuant to this Settlement Agreement and such findings had never been made, and the Action shall return to their procedural postures on the date this Settlement Agreement was signed. Additionally, the Parties and their counsel shall not contend that certification (or agreement to certification) of the Settlement Class supports certification of any litigation class if this Settlement Agreement is not consummated and the Action is later litigated and certification is contested by Apple under Rule 23 or any equivalent statute or rule.

## 5.   SETTLEMENT CONSIDERATION

5.1     **Structural Relief**.  In consideration of the releases and dismissals set forth in this Settlement Agreement, subject to Court approval, and subject to the other terms and conditions of this Settlement Agreement, Apple agrees that for a period of at least three (3) years following the Final Approval Order, Apple shall:

5.1.1   Maintain a commission rate of no greater than fifteen percent (15%) for U.S. Developers who are enrolled participants in the Small Business Program,

pursuant to the terms and conditions of the Small Business Program and subject to program participation requirements.

5.1.2   Continue to drive App Store search results primarily by objective characteristics, including but not limited to downloads, star ratings, text relevance, and user behavior signals.  Apple may also continue to include apps based on other characteristics, such as similar goals or developer association, as well as to give new and high-quality apps a chance to be found.  Apple will also continue to conduct robust experimentation to drive continuous improvement.

5.1.3   Permit all U.S. Developers to communicate with their customers via email and other communication services outside their app about purchasing methods other than in-app purchase, provided that the customer consents to the communication and has the right to opt out.  In-app communications, including via Apple Push Notification service, are outside the scope of this provision. Apple will revise its App Store Guidelines to permit the foregoing for all app categories, including by deleting from Guideline 3.1.3 the following language: "Developers cannot use information obtained within the app to target individual users outside of the app to use purchasing methods other than in-app purchase (such as sending an individual user an email about other purchasing methods after that individual signs up for an account within the app)."

5.1.4   Expand the choice of price points for subscriptions, in-app purchases, and paid apps from fewer than 100 to more than 500 (by December 31, 2022).

12

5.1.5      Maintain the option for U.S. Developers to appeal the rejection of an app based on unfair treatment and add online content to the app review portion of Apple's developer website (https://developer.apple.com/app-store/review/) to explicitly note that a developer can appeal the rejection of an app when the developer believes that there has been unfair treatment by Apple in the review of any of the U.S. Developer's apps, in-app products, or updates.

5.1.6      Publish an annual transparency report that, at a minimum, will convey meaningful statistics such as the number of apps rejected for different reasons, the number of customer and developer accounts deactivated, objective data regarding search queries and results, and the number of apps removed from the App Store.

5.2      **Covenant Not to Sue.** The members of the Settlement Class expressly agree to the appropriateness of Apple's commission structure, including but not limited to the Small Business Program, as it applies to the Settlement Class. In light of the structural and monetary relief afforded by Apple pursuant to this Settlement Agreement, the members of the Settlement Class covenant not to sue Apple on any claim that was or could have been asserted in the Action.

5.3      **Small Developer Assistance Fund.** In light of the contributions made by Settlement Class Members to the app economy, particularly as the economy continues to suffer the effects of the Coronavirus pandemic, and in further consideration of the releases and dismissals set forth in this Settlement Agreement, subject to Court approval, and subject to the other terms and conditions of this Settlement Agreement, Apple shall establish a Small Developer Assistance Fund ("Small Developer Assistance Fund").

13

5.3.1   Within thirty (30) days after an Order granting Preliminary Approval, Apple shall transfer $2,000,000.00 into an account established by the Settlement Administrator for payment of the costs of settlement administration. Within thirty (30) days after the Effective Date, Apple shall transfer $98,000,000.00 into an account established by the Settlement Administrator for the Small Developer Assistance Fund. Apple's total financial commitment under this Settlement Agreement shall be $100,000,000.00.

5.3.2   The Settlement Administrator shall agree to hold the Small Developer Assistance Fund in an interest-bearing account and administer the Small Developer Assistance Fund, subject to the continuing jurisdiction of the Court and from the earliest possible date, as a qualified settlement fund as defined in Treasury Regulation § 1.468B-1 et seq. Any taxes owed by the Small Developer Assistance Fund shall be paid by the Settlement Administrator out of the Small Developer Assistance Fund. The interest earned in the aforementioned account shall be added to the Small Developer Assistance Fund.

## 6. DISPOSITION OF THE SMALL DEVELOPER ASSISTANCE FUND

6.1  The Small Developer Assistance Fund shall be applied as follows:

6.1.1   to pay the costs of notice and the costs of administering the Settlement, as set forth in Section 7 below;

6.1.2   to pay any approved Attorneys' Fees to Class Counsel as set forth in Section 9 below;

6.1.3   to pay any Court-approved Service Awards to Named Plaintiffs; and

14

6.1.4   to distribute the Net Small Developer Assistance Fund to Settlement Class Members as set forth in Section 6.2 and 6.3 below.

6.2   The Small Developer Assistance Fund will be distributed to all Settlement Class Members who have Approved Claims, with each such U.S. Developer entitled to a minimum payment of $250.00 from the Net Small Developer Assistance Fund.  U.S. Developers may qualify for a higher payment based on their historic participation in the App Store ecosystem.  For all Approved Claims, the following amounts will be calculated based on Settlement Class Members' Proceeds from June 4, 2015 to December 31, 2020:

6.2.1   A Settlement Class Member who earned Proceeds of no more than $100.00 from all of their Associated Developer Accounts will receive a minimum payment of $250.00.

6.2.2   A Settlement Class Member who earned Proceeds of between $100.01 and $1,000.00 from all of their Associated Developer Accounts will receive a minimum payment of $500.00.

6.2.3   A Settlement Class Member who earned Proceeds of between $1,000.01 and $5,000.00 from all of their Associated Developer Accounts will receive a minimum payment of $1,000.00.

6.2.4   A Settlement Class Member who earned Proceeds of between $5,000.01 and $10,000.00 from all of their Associated Developer Accounts will receive a minimum payment of $1,500.00.

6.2.5    A Settlement Class Member who earned Proceeds of between $10,000.01 and $50,000.00 from all of their Associated Developer Accounts will receive a minimum payment of $2,000.00.

6.2.6    A Settlement Class Member who earned Proceeds of between $50,000.01 and $100,000 from all of their Associated Developer Accounts will receive a minimum payment of $3,500.00.

6.2.7    A Settlement Class Member who earned Proceeds of between $100,000.01 and $250,000.00 from all of their Associated Developer Accounts will receive a minimum payment of $5,000.00.

6.2.8    A Settlement Class Member who earned Proceeds of between $250,000.01 and $500,000.00 from all of their Associated Developer Accounts will receive a minimum payment of $10,000.00.

6.2.9    A Settlement Class Member who earned Proceeds of between $500,000.01 and $1,000,000.00 from all of their Associated Developer Accounts will receive a minimum payment of $20,000.00.

6.2.10   A Settlement Class Member who earned Proceeds of over $1,000,000.01 from all of their Associated Developer Accounts will receive a minimum payment of $30,000.00.

6.3   The minimum payment amounts set forth in Section 6.2 above assume that one hundred percent (100%) of Settlement Class Members have an Approved Claim.  If not all Settlement Class Members have an Approved Claim, then the minimum payment amounts to Settlement Class Members with Approved Claims shall increase

16

proportionally in correspondence with the same categories of Developer Proceeds as contained in Section 6.2.

6.4 The minimum payment amounts set forth in Section 6.2 above assume that the Net Small Developer Assistance Fund is approximately $68 million. The actual amount could be greater or less depending on the costs of administration, any Service Awards, and the amounts awarded by the Court for attorneys' fees and expenses pursuant to Section 9.1.

6.5 Within sixty (60) days after receiving the Small Developer Assistance Funds pursuant to Section 5.3, the Settlement Administrator shall have substantially completed the issuance of the initial payments to the Settlement Class Members with Approved Claims, which shall be sent to Settlement Class Members through electronic distribution, or in the form of physical checks mailed to the Settlement Class Member's mailing address as contained in Apple's company records or set forth on the Claim Form for those Settlement Class Members for whom electronic distribution is not available. To the extent economically and practically feasible, the Settlement Administrator shall follow up and communicate with Settlement Class Members who have not cashed their checks within sixty (60) days of distribution. Unused checks shall expire not later than the first anniversary of the initial date of distribution.

6.6 Following distribution of the Small Developer Assistance Fund as set forth in Sections 6.1-6.3, if approved by the Court, any remaining funds (including any funds from uncashed checks) will be used as a *cy pres* distribution to Girls Who Code, a nonprofit organization working to close the gender gap in technology and to change the image of what a programmer looks like and does, or another similar charitable organization

17

as approved by the Court.  Under no circumstances will Small Developer Assistance Funds revert to Apple.

7.  **NOTICE AND SETTLEMENT ADMINISTRATION**.

7.1  **Neutral Settlement Administrator.**  Subject to Court approval, the Settlement Administrator shall provide settlement notice and administration services, in accordance with the terms of this Settlement Agreement and as ordered by the Court in the Preliminary Approval Order. As provided in Section 6.1.1, the reasonable costs of notice and the costs of administering the Settlement shall be paid out of the Small Developer Assistance Fund.

7.2  **Notice Procedures.**  The Parties agree to the following forms and methods of notice to the Settlement Class:

7.2.1  A copy of the Class Notice, together with the Claim Form, the Settlement, the motions for Final Approval Order and Final Judgment, and Attorneys' Fees, and Court orders pertaining to the Settlement, shall be posted and available for download on the Settlement Website maintained by the Settlement Administrator.

7.2.2  The Settlement Administrator shall send a copy of the Summary Notice to the email and physical addresses for Associated Developer Accounts of developers who are or reasonably may be members of the Settlement Class.  The electronic version of the Summary Notice shall contain a direct link to the Settlement Website and the instructions for the Claim Form.  To facilitate the distribution of the Summary Notice, within thirty (30) days of the date of execution of the Settlement Agreement, Apple shall provide the Settlement Administrator with the email and physical addresses for Associated Developer Accounts of

18

developers who are or reasonably may be members of the Settlement Class, along with transactional data produced in this Action sufficient to calculate Proceeds for purposes of implementing this Agreement.

7.2.3   The names, email addresses, physical mailing addresses, and Proceeds of Associated Developer Accounts are personal information about the potential members of the Settlement Class and shall be provided to the Settlement Administrator solely for the purposes of providing notice, processing requests for exclusion, and administering payment.  The Settlement Administrator shall execute the Stipulated Protective Order (Dkt. 252), treat all such information as "Highly Confidential – Attorneys' Eyes Only," and take all reasonable steps to ensure that all such information is used solely for the purpose of administering this Settlement.

7.2.4   The Settlement Administrator shall commence the notice by the Notice Date. If, despite using best efforts, the Settlement Administrator is unable to commence the notice by the Notice Date, the Settlement Administrator shall inform the Parties of the status of the notice, and notify the Parties when the notice has been commenced.

7.2.5   In addition to the notice required by the Court, the Parties may jointly agree to provide additional notice to the members of the Settlement Class, although Class Counsel and Apple must both approve any additional notice.

7.2.6   If this notice plan is not approved, or is modified in a material way by the Court, the Parties shall have the right to terminate the Settlement.

7.3     **Claim Form.**  Settlement Class Members who wish to receive a cash payment will be required to submit a Claim Form.  The Claim Form shall, among other things, require the Settlement Class Member to certify, under penalty of perjury, that (a) they have only one Associated Developer Account, or (b) if they have more than one Associated Developer Account, that they have identified all Associated Developer Accounts in a manner to be specified in the Claim Form.  The Claim Forms shall be submitted to the Settlement Administrator via U.S. mail or electronically through the Settlement Website.

7.4     **Claims Period.**  To be valid, Claim Forms, requests to opt out, and objections must be received by the Settlement Administrator within one hundred and twenty (120) days from the Notice Date.

7.5     **Process for Opting Out of Settlement.**  The Class Notice shall provide a procedure whereby members of the Settlement Class may exclude themselves from the Settlement. The members of the Settlement Class shall have no less than sixty (60) days following the Notice Date to exclude themselves.  Any member of the Settlement Class who does not timely and validly request exclusion shall be a Settlement Class Member and shall be bound by the terms of this Settlement.  As soon as practicable after the opt-out deadline, the Settlement Administrator shall provide the Court and the Parties with a list of Settlement Class Members who timely and validly requested exclusion from the Settlement.

7.6     **Process for Objections.**  The Class Notice shall provide a procedure whereby Settlement Class Members may object to the Settlement.  All objections shall be filed with the Court ~~and served on Class Counsel and Defense Counsel~~ within ~~sixty (60)~~ *sixty-six (66)* days from the Notice Date.  Any objection shall, at a minimum, require the individual to provide:  (a) a detailed statement of such Settlement Class Member's specific objections to any matters before the Court;

*HG 11-5-21*
*SB 11-5-21*

(b) the grounds for such objections and the reason such Settlement Class Member desires to appear and to be heard; and (c) proof of membership in the Settlement Class, as well as all other materials the Settlement Class Member wants the Court to consider.

7.7 **Review of Claims Submitted.** The Settlement Administrator shall determine whether a submitted Claim Form meets the requirements set forth in this Settlement Agreement. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, who shall determine whether each Claim shall be allowed. The Settlement Administrator shall use best practices and all reasonable efforts and means to identify and reject duplicate and/or fraudulent claims.

7.8 **Rejection of Claims Forms.** Claim Forms that do not meet the requirements set forth in this Settlement and/or in the Claim Form instructions shall be rejected by the Settlement Administrator. The Settlement Administrator shall have thirty (30) days from the end of the Claims Period to exercise the right of rejection. The Settlement Administrator shall notify the claimant using the contact information provided in the Claim Form of the rejection. Class Counsel and Defense Counsel shall be provided with copies of all such notifications of rejection, provided that the copies do not contain the name, email address, mailing address, or other personal identifying information of the claimant. If any claimant whose Claim Form has been rejected, in whole or in part, desires to contest such rejection, the claimant must, within ten (10) days from receipt of the rejection, transmit to the Settlement Administrator by email or U.S. mail a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting further review by the Settlement Administrator, in consultation with Class Counsel and Defense Counsel, of the denial of the Claim. If Class Counsel and Defense Counsel cannot agree on a resolution of the claimant's notice contesting the rejection,

the disputed Claim shall be presented to the Court or a referee appointed by the Court for summary and non-appealable resolution.  No person shall have any claim against Apple, Defense Counsel, the Named Plaintiffs, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.  This provision does not affect or limit in any way the right of review by the Court or referee of any disputed Claim Forms as provided in this Settlement.

       7.9    **Information Regarding Claims Submitted, Approved, and Rejected.**  Within forty-five (45) days from the end of the Claims Period, the Settlement Administrator shall provide a spreadsheet to Class Counsel and Defense Counsel that contains information sufficient to determine:  (a) the number of Settlement Class Members that submitted a claim; (b) the number of submitted Claim Forms that are valid and timely and the number that were not valid and/or timely; (c) the number of submitted Claim Forms the Settlement Administrator intends to treat as Approved Claims; and (d) the number of submitted Claim Forms the Settlement Administrator has denied and the reason(s) for the denials.  The Settlement Administrator shall provide supplemental spreadsheets with respect to the resolution of any rejected claims or any Claim Forms submitted after the expiration of the deadline, within a reasonable time after such resolution or receiving such Claim Forms.  The materials that the Settlement Administrator provides to Class Counsel pursuant to this paragraph shall not contain the names, email addresses, mailing addresses, or other personal identifying information of the Settlement Class Members.  The Settlement Administrator shall retain the originals of all Claim Forms (including envelopes with postmarks, as applicable), and shall make copies available to Class Counsel or Defense Counsel (with redactions to remove the names, email addresses, mailing addresses, or other personal identifying information of the Settlement Class Members) upon request.  All such spreadsheets and related materials (including

Claim Forms) shall be designated as "Highly Confidential – Attorneys' Eyes Only" as provided in Section 7.2.3. Should Class Counsel believe they require the name, email address, mailing address, or other personal identifying information of any particular Settlement Class Member, the Parties shall meet-and-confer, on a case-by-case basis, to determine whether the release of such personal identifying information is necessary. Any disputes regarding whether such information may be released to Class Counsel shall be presented to the Court or a referee appointed by the Court for summary and non-appealable resolution. The Settlement Administrator shall only release personal identifying information upon authorization of Apple and/or the authorization of the Court or referee.

7.10 **Opportunity for Review.** Defense Counsel and Class Counsel shall have fourteen (14) days after receiving the spreadsheet(s) and information specified in Section 7.9 to contest the Settlement Administrator's determination with respect to any of the submitted Claims. Defense Counsel and Class Counsel shall meet and confer in good faith within ten (10) days to reach resolution of any such disputed Claim(s). If Class Counsel and Defense Counsel cannot agree on a resolution of any such disputed Claim(s), the disputed Claim(s) shall be presented to the Court or a referee appointed by the Court for summary and non-appealable resolution.

## 8. <u>COURT APPROVAL</u>

8.1 The Parties agree to recommend approval of the Settlement to the Court as fair and reasonable and to undertake their best efforts to obtain such approval. "Best efforts" includes that the Parties may not oppose any application for appellate review by one of the Parties in the event the Court denies preliminary or final approval. The Parties therefore agree that, at 5:00 PM Pacific time on August 26, 2021, the Named Plaintiffs shall submit this Settlement Agreement to the Court and shall apply for entry of the Preliminary Approval Order.

23

8.2    Class Counsel shall draft the Motion for Preliminary Approval requesting issuance of the Preliminary Approval Order as soon as practicable after execution of this Settlement Agreement, and shall provide that draft to Defense Counsel on or before August 24, 2021.  The Motion for Preliminary Approval shall be written in a neutral manner that does not contain inflammatory language about the Parties or their perceived conduct in the Action.  The Parties shall agree on the form of all exhibits attached to the Motion for Preliminary Approval, including but not limited to the Notice, the Summary Notice, and the Claims Form.

8.3    Upon filing of the Motion for Preliminary Approval, Apple shall provide timely notice of the Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*.

8.4    In accordance with the schedule set in the Preliminary Approval Order, Class Counsel shall draft the motion for Final Approval Order and Final Judgment and shall provide that draft to Defense Counsel at least seven (7) days before filing such motion with the Court.

8.5    In the event that the Settlement is not approved (following the exhaustion of any appellate review), then (a) this Settlement Agreement shall be null and void and of no force or effect, (b) any payments made to the Settlement Administrator, including any and all interest earned thereon less monies expended toward settlement administration and/or Small Developer Assistance Fund, shall be returned to Apple within ten (10) days from the date the Settlement Agreement becomes null and void, (c) any release shall be of no force or effect, and (d) neither the Settlement Agreement nor any facts concerning its negotiation, discussion, terms or documentation shall be referred to or used as evidence or for any other purpose whatsoever in the Action or in any other action or proceeding.  In such event, the Action will proceed as if no settlement has been attempted, and the Parties shall be returned to their respective procedural postures existing on the date the Settlement is executed, so that the Parties may take such litigation steps that they otherwise

would have been able to take absent the pendency of this Settlement. However, any reversal, vacatur, or modification on appeal of (a) any amount of the Attorneys' Fees and Expenses awarded by the Court to Class Counsel, or (b) any determination by the Court to award less than the amounts requested in Attorneys' Fees and Expenses or Named Plaintiff Service Awards shall not give rise to any right of termination or otherwise serve as a basis for termination of this Settlement.

## 9. ATTORNEYS' FEES

9.1     Class Counsel may submit an application or applications to the Court  for distribution to them from the Small Developer Assistance Fund of an award of attorneys' fees and expenses incurred in connection with prosecuting the Action and as may be awarded by the Court (the "Fee and Expense Award"). Apple reserves the right to object to or oppose a request for attorneys' fees and expenses.

9.2     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Small Developer Assistance Fund to an account designated by Class Counsel within forty-five (45) days after the Effective Date.

9.3     Class Counsel has the authority and responsibility to allocate and distribute the awarded funds to other counsel based, in its sole discretion, on counsel's efforts and contributions in the Action, provided that the allocation and distribution is consistent with the Court's order(s) regarding the Fee and Expense Award. Apple and Defense Counsel shall have no liability or other responsibility for allocation of any such awarded funds, and, in the event that any dispute arises relating to the allocation of fees or costs, Class Counsel and the Settlement Administrator agree to hold Apple and Defense Counsel harmless from any and all such liabilities, costs, and expenses of such dispute.

9.4     Apple shall not be liable for any additional fees or expenses of the Named Plaintiffs or any Settlement Class Member in connection with the Action. Class Counsel agree that they will not seek any additional fees, expenses, or costs from Apple in connection with the Action or the settlement of the Action beyond the approved Fee and Expense Award. Apple expressly agrees that it will not seek to recover its attorneys' fees, expenses, or costs from the Named Plaintiffs or Class Counsel once this Settlement Agreement becomes effective pursuant to the Effective Date.

9.5     The Court's Fee and Expense Award shall be separate from its determination of whether to approve the Settlement. In the event the Court approves the Settlement, but declines to award Class Counsel's attorneys' fees or expenses in the amounts requested by Class Counsel, the Settlement will nevertheless be binding on the Parties.

## 10. RELEASES AND DISMISSAL OF ACTION

10.1     As of the Effective Date, the Settlement Class Members and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns shall have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights and liabilities, that were brought, could have been brought, or ~~are related to~~ arise from the same facts underlying the claims asserted in the Action, known or unknown, recognized now or hereafter, existing or preexisting, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or regulation), against the Released Parties, for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief. By example only,

HG 11-5-21
SB 11-5-21

26

and without limitation, the Settlement Class Members expressly release any claim, contention, argument, or theory that the commissions charged by Apple on paid downloads or in-app purchases of digital content (including subscriptions) through the App Store are supracompetitive, inflated, or otherwise set at unlawful amounts. Accordingly, the Settlement shall terminate the Action. Notwithstanding the foregoing, the release shall not include any claims relating to the continued enforcement of the Settlement or the Protective Orders.

10.2    As of the Effective Date, the Named Plaintiffs and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns shall have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights and liabilities, that were brought, could have been brought, or ~~are related to~~ *arise from* the same facts underlying the claims asserted in the Action regarding the App Store, known or unknown, recognized now or hereafter, existing or preexisting, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or regulation), against the Released Parties, for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief. Notwithstanding the foregoing, the release shall not include any claims relating to the continued enforcement of the Settlement or the Protective Orders.

HG 11-5-21

SG 11-5-21

10.3    After entering into this Settlement, the Settlement Class Members and/or Named Plaintiffs may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the claims released by this Settlement, but they intend to release

27

fully, finally and forever any and all such claims. The Settlement Class Members and Named Plaintiffs expressly agree that, upon the Effective Date, they waive and forever release any and all provisions, rights, and benefits conferred by:

(a) Section 1542 of the California Civil Code, which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

and

(b) any law of any state, territory, or possession of the United States (or for the non-U.S. Named Plaintiffs, their respective country, province, or state), or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

10.4    Upon the Effective Date, the Action shall be dismissed with prejudice. Class Counsel shall have the responsibility for ensuring that the Action is dismissed with prejudice in accordance with the terms of this Settlement.

10.5    The Court shall retain jurisdiction over this Action to enforce the terms of this Settlement. In the event that any applications for relief are made, such applications shall be made to the Court. To avoid doubt, the Final Judgment applies to and is binding upon the Parties, the Settlement Class Members, and their respective heirs, successors, and assigns.

## 11. DEFENDANT'S DENIAL OF LIABILITY; AGREEMENT AS DEFENSE IN FUTURE PROCEEDINGS

11.1    Apple has indicated its intent to vigorously contest each and every claim in the Action, and denies all of the material allegations in the Action. Apple enters into this Settlement

Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind. Apple nonetheless has concluded that it is in its best interests that the Action be settled on the terms and conditions set forth herein in light of the expense that would be necessary to defend the Action, the benefits of disposing of protracted and complex litigation, and the desire of Apple to conduct its business and provide additional assistance to the small developer community unhampered by the distractions of continued litigation.

11.2    Neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiation or proceedings connected with it, shall be construed as an admission or concession by Apple of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind.

11.3    To the extent permitted by law, this Settlement Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding which may be instituted, prosecuted, or attempted for claims, causes of action, and/or theories of relief covered by the covenant not to sue and/or the releases in this Settlement Agreement.

## 12. <u>MODIFICATION OR TERMINATION OF THE SETTLEMENT</u>

12.1    Apple may, at its sole discretion, terminate this Settlement Agreement if the number of Developers who seek exclusion from the Settlement Class exceeds 10% of the total number of Developers in the Settlement Class.

12.2    The terms and provisions of this Settlement Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Approval Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement Agreement

and its implementing documents (including all exhibits) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Final Approval Order and Final Judgment and do not materially alter, reduce, or limit the rights of Settlement Class Members.

12.3    If any of the non-monetary terms of this Agreement are affected by a change in legislation, regulation, law, court or agency order, or any material change in circumstances, the Parties agree to meet and confer in good faith regarding an appropriate modification of the Agreement.

12.4    In the event the terms or conditions of this Settlement Agreement, other than terms pertaining to the Attorneys' Fees, are materially modified by any court, the Parties may within thirty (30) days of such material modification, declare this Settlement null and void as provided in Section 8.5.  For purposes of this paragraph, material modifications include any modifications to the definitions of the Settlement Class, Settlement Class Members, Released Parties, or the scope of the releases (as provided in Sections 10.1 and 10.2), any modifications to the terms of the Settlement consideration (as provided in Sections 5.1 - 5.3).  In the event of any modification by any court, and in the event Apple does not exercise its unilateral option to withdraw from this Settlement, the Parties shall meet and confer within fourteen (14) days of such modification to attempt to reach an agreement as to how best to effectuate the court-ordered modification.

12.5    If the Effective Date is not reached, this Settlement Agreement is without prejudice to the rights of any party hereto, and all terms, negotiations, and proceedings connected therewith shall not be deemed or construed to be an admission by any Party or evidence of any kind in this Action or any other action or proceeding.

**13. <u>NOTICES</u>**

13.1    All notices to Named Plaintiffs shall be delivered to:

   Steve W. Berman
   Robert F. Lopez
   Hagens Berman Sobol Shapiro LLP
   1301 Second Ave., Suite 2000
   Seattle, WA 98101

13.2    All notices to Apple shall be delivered to:

   Heather Grenier
   Senior Director, Commercial Litigation
   Apple Inc.
   One Apple Park Way, MS 60-1AL
   Cupertino, CA 95014

   With a copy to:

   Mark A. Perry
   Gibson, Dunn & Crutcher LLP
   1050 Connecticut Ave., NW
   Washington, D.C. 20036

13.3    The notice recipients and addresses designated in paragraphs 13.1 and 13.2 may be changed upon written notice provided to all individuals identified in those paragraphs.

**14. <u>MISCELLANEOUS</u>**

14.1    This Settlement Agreement may not be modified in any respect except upon the written consent of the Parties.

14.2    The undersigned each represent and warrant that each has authority to enter into this Settlement Agreement on behalf of the Party indicated below his or her name.

14.3    If, prior to the Effective Date, Class Counsel knows, or has reason to know, of any Named Plaintiff who intends to exclude himself or herself from the Settlement or who intends to submit an objection to the Settlement, Class Counsel shall promptly notify Defense Counsel within three (3) days.   The Parties shall thereafter meet and confer within seven (7) days of such

notification to determine whether any modifications to the Settlement, or any other actions or filings, are required.

14.4    Class Counsel and the Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action or any related action, and they further represent and warrant that they know of no such assignments or transfers on the part of any member of the Settlement Class.

14.5    The Parties, together with Class Counsel and Defense Counsel, have jointly participated in the drafting of this Settlement Agreement.  No Party hereto shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

14.6    As used in this Settlement Agreement, the masculine, feminine, or neutral gender, and the singular or plural wording, shall each be deemed to include the others whenever the context so indicates.

14.7    Unless otherwise noted, all references to "days" in this Settlement Agreement shall be to calendar days.  In the event any date or deadline set forth in this Settlement Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

14.8    Any and all disputes arising from or related to this Settlement Agreement must be brought by the Parties, Class Counsel, Defense Counsel, and/or members of the Settlement Class exclusively to the Court.  The Parties, Class Counsel, Defense Counsel and members of the Settlement Class irrevocably submit to the exclusive and continuing jurisdiction of the Court for

32

any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement.  All terms of this Settlement Agreement and any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of California without regard to choice of law or conflicts of laws principles; however, nothing in this Settlement Agreement shall operate as a waiver of any Party's position regarding the applicable law governing the underlying claims at issue in the Action.

14.9    Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Settlement Agreement.

14.10   Unless otherwise ordered by the Court, all motions, discovery, and other proceedings in the Action shall be stayed until the Court enters the Final Approval Order and Final Judgment, or this Settlement Agreement is otherwise terminated.

14.11   Nothing in this Settlement Agreement shall alter or abrogate any prior Court orders entered in the Action.

14.12   This Settlement Agreement may be executed in counterparts.  Facsimile or PDF signatures shall be considered valid as of the date they bear.

14.13   The Parties, together with Class Counsel and Defense Counsel, agree to prepare and execute all documents, to seek Court approvals, to defend Court approvals, and to do all things reasonably necessary to complete the Settlement.

14.14   This Settlement Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them.  The Parties represent and warrant to each other that they have read and fully understand the provisions of this Settlement Agreement and have relied on the advice and representation of legal counsel of their own choosing.

33

14.15   This Settlement Agreement may be amended or modified only by a written instrument signed by Defense Counsel and Class Counsel and approved by the Court.

///

///

///

///

///

///

///

34

The Parties have agreed to the terms of this Settlement Agreement and have signed below.

For the Named Plaintiffs:

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101

Dated: August 24, 2021

For Apple:

Heather Grenier
Senior Director, Commercial Litigation
Apple Inc.
One Apple Park Way, MS 60-1AL
Cupertino, CA 95014

Dated: August 24, 2021

# EXHIBIT D

 **(//code.org)**

Create ▼          Sign in
(//studio.code.org/users/sign_in)

Learn (//studio.code.org/courses)     Teach (//studio.code.org/courses?view=teacher)

Projects (//studio.code.org/projects/public)     Stats (//code.org/promote)

Help Us (//code.org/help)     About (//code.org/about)

# About Us



Code.org® is an education innovation nonprofit dedicated to the vision that every student in every school has the opportunity to learn computer science as part of their core K-12 education. We expand access to computer science in schools, with a focus on increasing participation by young women and students from other underrepresented groups. The leading provider of K-12 computer science curriculum in the largest school districts in the United States, Code.org also organizes the annual **Hour of Code (http://hourofcode.com/)** campaign, which has engaged more than 15% of all students in the world. Code.org is supported by generous donors including Microsoft, Amazon, Google and **many others (/about/supporters)**.

# Over 70 million students and 2 million teachers on Code.org



Female or Gender-Expansive



Underrepresented
racial/ethnic groups



## Students qualifying for free or reduced-price lunch

Code.org participation from the 2020-2021 school year. **See disaggregated data. (/promote/diversitydata)**

Code.org increases diversity in computer science by reaching students of all backgrounds where they are — at their skill-level, in their schools, and in ways that inspire them to keep learning. The vast majority of the students on Code.org are from student groups historically underrepresented in computer science. Increasing diversity in computer science is foundational to our work, and **we encourage you to read more about our efforts (/diversity)**.

## Code.org in the News

See all past **news and announcements (/about/news)**.


Nasdaq interviews Code.org founder Hadi Partovi


Code.org's work covered by CBS This Morning

## Our goals and metrics

For a closer look at our goals in closing gaps and increasing opportunity, you can review the ambitious **2025 goals (/files/2025goals.pdf)** we've detailed and how we determined those goals. We've also identified a number of large-scale, multiyear projects that would enable Code.org to reach an even greater scale in making CS a standard in education globally. Read about them in our **Big Bets in Computer Science Education (/files/bigbets.pdf)** summary.

| Code.org Goal | Accomplishment |
|---|---|
| Improve diversity in CS (*US students*) | 45% of Code.org students are young women, 50% are students from marginalized racial and ethnic groups, and 45% of US students are in high needs schools. Read more about **our approach to diversity (/diversity)**. |
| Inspire students | Tens of millions have tried the **Hour of Code (/learn)**. (1,483,857,478 served. 49% female) |
| Reach classrooms | 2,267,913 teachers have signed up to teach our intro courses on **Code Studio (http://studio.code.org)** and 72,992,623 students are enrolled. |
| Prep new CS teachers | We've prepared more than 106,000 new teachers to teach CS across grades K-12. Learn about our **professional learning programs (/educate)**. |

| Code.org Goal | Accomplishment |
|---|---|
| Change school district curriculum | We've partnered with **180+ of the largest school districts (/educate/partner-districts)** and 60 regional partners to **add CS to school curriculum (/educate/curriculum)**. Learn about **becoming a regional partner (/educate/districts)**. |
| Set up policies to support CS | **Policies changed in 50 U.S. states (https://advocacy.code.org)** to establish CS education standards, make CS courses count towards high school graduation, etc. (**details (/advocacy/landscape.pdf)**) |
| Go global | Our courses are available in over 67 languages, used in 180+ countries. |

Source: Code Studio Activity and **surveys of participating educators**

**(https://docs.google.com/document/d/1gySkItxiJn_vwb8HllKNXqen184mRtzDX12cux0ZgZk/pub)**



"Every single day yielded the same results— 100% engagement." - Nina Nichols Peery,

Teacher



"I knew this was a **once-in-a-lifetime** chance." - Mariana Alzate, 5th grader



"I have **never, ever** seen my students so excited about learning." - Frank Martinez, Teacher

# More information, history, and philosophy

In 2013, Code.org was launched by twin brothers **Hadi (/about/leadership/hadi_partovi)** and **Ali Partovi (https://www.crunchbase.com/person/ali-partovi#/entity)** with a **video (https://www.youtube.com/watch?v=nKIu9yen5nc)** promoting computer science. This video became #1 on YouTube for a day, and 15,000 schools reached out to us for help. Since then, we've expanded from a bootstrapped staff of volunteers to build a full organization supporting a worldwide movement. We believe that a quality computer science education should be available to every child, not just a lucky few.

To support our goal, we do work across the education spectrum: designing our own courses or partnering with others, training teachers, partnering with large school districts, helping change government policies, expanding internationally via partnerships, and marketing to break stereotypes.

Our work builds upon **decades of effort, by countless organizations and individuals (https://docs.google.com/document/d/1rdEUqAkYtKPMD4UeEmpZCAau4_AdIOGbZDqLkePAQrY/pub)** who have helped establish, fund, and spread computer science education. We're thankful to benefit from

the tireless help of the broader computer science education community, and **we thank all the partners and individuals who have supported our impact over the years (https://medium.com/@codeorg/dedicating-our-5-year-anniversary-to-our-partners-b57368a92924)**.

- **Code.org 2021 Annual Report (/about/2021)** (Past reports: **2020 (/about/2020)**, **2019 (/about/2019)**, **2018 (/about/2018)**, **2017 (/about/2017)**, **2016 (/about/2016)**, **2015 (/about/2015)**, **2014 (/about/2014)**)
- **Our core values and messaging guidelines (/about/values)**
- **Our curriculum and pedagogy philosophy (/educate/curriculum/values)**
- **TEDx talk by our founder Hadi Partovi about why computer science is for all (VIDEO) (https://www.youtube.com/watch?v=m-U9wzC9xLk)**

## A unifying approach in a divided world

Code.org's global role in the K-12 computer science movement is only possible because we use a unifying approach across diverse and often divided stakeholders. At a time of increasing polarization, the idea of increasing opportunity for students unites people from across the political spectrum. Code.org's team members, students, teachers, and supporters have diverse and diverging viewpoints, and they are all welcome in our mission. **Read more (/about/unifying)**.

## Our commitment to accessibility

Code.org believes computer science is foundational for all students and we are committed to equity, access, and opportunity in our organizational **values (/about/values)**. To achieve this goal, we work to identify and eliminate barriers that prevent the inclusion and full participation of students and educators with disabilities. To learn more about our efforts, see our **accessibility statement (/accessibility)**.

## Our commitment to free curriculum and open source technology

All curriculum resources and tutorials we author will forever be free to use and openly licensed under a **Creative Commons (http://creativecommons.org/licenses/by-nc-sa/4.0/)** license, allowing others to make derivative education resources for non-commercial purposes. If you are interested in licensing our materials for commercial purposes, **contact us (/contact)**. Our courses are translated for worldwide use or by speakers of different languages. Our technology is developed as an **open source project (https://github.com/code-dot-org/code-dot-org)**.

# Code.org Advocacy Coalition

The **Code.org Advocacy Coalition (/advocacy)** is a bipartisan coalition of corporations and nonprofits that work together to help establish federal and state policies to expand and sustain access to K-12 computer science and to broaden participation and diversity in the field. We bring together **Republican and Democratic political leaders (https://youtu.be/W5QGo_Yb_Pc? list=PLzdnOPI1iJNfygSF8gKBUq7fT4Y61_h2I)** in common cause supporting expanding access to and participation in K-12 computer science.

## K-12 Computer Science Framework

Code.org is a member of the steering committee that helped establish the **K-12 Computer Science Framework (http://k12cs.org)** - a high-level guide for states, districts, and organizations implementing computer science education. The Framework has won the support of hundreds of academics, K-12 educators, software companies, nonprofits, and states.

## Code.org Donors

Code.org® is a registered public 501c3 nonprofit, with support from the general public. We are grateful for the generous support we've received from **individuals and organizations (/about/donors)** who support our vision.

Code's accomplishments (above) demonstrate our ability to leverage those dollars into strong outcomes. But given our nonprofit ambition that every child in every school should have access to computer science — to become literate citizens in today's digital world and to test their interests in exploring CS further as a career — we have a long way to go to meet a fundraising goal that will support that vision.

Make a donation **(/donate)** or **see our list of donors (/about/donors)**

Please **contact us (/contact)** if you, your company, or your foundation is interested in talking with our leadership team further to better understand our program and to explore options for investing in our work.

Code.org IRS form 990 for **2014 (/files/irs-form.pdf)**, **2015 (/files/irs-form-2015.pdf)**, **2016 (/files/irs-form-2016.pdf)**, and **2017 (/files/irs-form-2017.pdf)**. **Donation Policy (/about/donation-policy)**.

# Follow us

**Sign up to receive status updates (/about/hear-from-us)** about progress in the K-12 computer science movement and about the work of Code.org. Or follow Code.org on social media:

**f** **(https://www.facebook.com/Code.org)**    🐦 **(https://twitter.com/codeorg)**    📷 **(https://www.instagram.com/codeorg)**



**(https://www.guidestar.org/profile/46-0858543)**



**(http://studentprivacypledge.org)**

**About Us**

Values (/about/values)

Leadership (/about/leadership)

Supporters (/about/supporters)

Partners (/about/partners)

Full Team (/about/team)

Diversity Council (/about/diversity-council)

Newsroom (/about/news)

Evaluation (/about/evaluation)

Careers (/about/careers)

Contact Us (/contact)

FAQs (/faq)

Privacy Policy (/privacy)   |   About (/about)   |   Partners (/partners)   |   Blog (https://medium.com/@co

|   Donate (/donate)   |   Store (/shop)   |   Support (http://support.code.org/)   |   Terms (/tos)

© Code.org, 2022. Code.org®, the CODE logo and Hour of Code® are trademarks of Code.org.

Built on GitHub from Microsoft

**(https://aws.amazon.com/what-is-cloud-computing)**

Privacy Policy (/privacy)   |   About (/about)   |   Partners (/partners)   |   Blog (https://medium.com/@codeorg)

|   Donate (/donate)   |   Store (/shop)   |   Support (https://support.code.org/)   |   Terms (/tos)

English

**(https://www.facebook.com/Code.org)** 🐦 **(https://twitter.com/codeorg)** **(https://www.instagram.com/codeorg)** **(https://medium.com/@codeorg)**

© Code.org, 2022. Code.org®, the CODE logo and Hour of Code® are trademarks of Code.org.

Built on GitHub from Microsoft

# EXHIBIT E

< Computer Science Principles ('21-'22)

# Unit 3 - Intro to App Design ('21-'22)

This unit is an introduction to programming and app design with a heavy focus on important skills like debugging, pair programming, and user testing. Learn how to design user interfaces and write event-driven programs in App Lab and then design a project that teaches your classmates about a topic of your choosing.

| Try Now | Get Help |
|---|---|



---

▼ Unit 3: Intro to App Design  ⓘ

## Description

## Unit Philosophy and Pedagogy

- **New Topics, Same Classroom Culture:** This unit is students' first experience with programming. It is designed to maintain the collaborative and inclusive classroom environment developed in the previous two units. The collaborative project, fun, unplugged activities, and the focus on experimenting should help keep your whole class working together and trying out ideas.

- **Emphasizing Skills:** Since this is the first of many programming units, it emphasizes attitudes and skills that will serve your students well for the remainder of the year. The project that runs through this unit emphasizes that programming is a creative and collaborative endeavor that students can use to help others. Key practices like pair programming and debugging help normalize working with a partner, asking for help, and making mistakes. While students have a lot to learn about programming and App Lab, there is just as much emphasis on establishing these positive habits and mindsets.

- **Empowering "Creators":** This unit empowers students to be creators with a major emphasis on making personally meaningful apps. Students have a lot to learn about programming. Still, the goal is for students to come away from this unit, seeing programming as a powerful form of personal expression that allows them to draw on their innate talents and interests to help solve problems in their community.

## Major Assessment and Projects

The unit project asks students to collaborate with a classmate to design an app that can teach others about a topic of shared interest. Students practice interviewing classmates to identify the project's goals, mockup designs, collaboratively program the app and run simple user tests. The app itself must include at least three screens and demonstrate what students have learned about user interface design and event-driven programming. Students submit their app, project guide, and written responses to reflection questions about how the app is designed and the development process used to make it. Students will also complete an end-of-unit assessment aligned with CS Principles framework objectives covered in this unit.

## AP Connections

This unit and unit project helps build towards the enduring understandings listed below. For a detailed mapping of units to Learning Objectives and EKs, please see the "Standards" page for this unit.

- CRD-2: incorporating multiple perspectives through collaboration improves computing innovations as they are developed.
- CRD-2: developers create and innovate using an iterative design process that is user-focused, that incorporates implementation/feedback cycles, and that leaves ample room for experimentation and risk-taking.
- AAP-2: The way statements are sequenced and combined in a program determines the computed result. Programs incorporate iteration and selection constructs to represent repetition and make decisions to handle varied input values.
- AAP-3: Programmers break down problems into smaller and more manageable pieces. By creating procedures and leveraging parameters, programmers generalize processes that can be reused. Procedures allow programmers to draw upon existing code that has already been tested, allowing them to write programs more quickly and with more confidence.

This unit includes content from the following topics from the AP CS Principles Framework. For more detailed information on topic coverage in the course review **Code.org CSP Topic Coverage**.

- 1.1 Collaboration
- 1.2 Program Function and Purpose
- 1.3 Program Design and Development

The College Board has supplied formative Create PT questions to help prepare students to complete the Create Task. We recommend that students complete the following prompts with the unit project. More information can be found in Code.org CS Principles Topic Coverage.

- 3.a.i.
- 3.a.ii.
- 3.a.iii



▶ **Lesson 1: Introduction to Apps**                    📄 Lesson Resources

▶ **Lesson 2: Introduction to Design Mode**              📄 Lesson Resources

▶ **Lesson 3: Project Designing an App Part 1**          📄 Lesson Resources

▶ **Lesson 4: Project Designing an App Part 2**          📄 Lesson Resources

▶ **Lesson 5: The Need for Programming Languages**       📄 Lesson Resources

▶ **Lesson 6: Intro to Programming**                     📄 Lesson Resources

▶ **Lesson 7: Debugging**

📄 Lesson Resources

▶ **Lesson 8: Project Designing an App Part 3**

📄 Lesson Resources

▶ **Lesson 9: Project Designing an App Part 4**

📄 Lesson Resources

▶ **Lesson 10: Project Designing an App Part 5**

📄 Lesson Resources

▶ Lesson 11: Assessment Day

📄 Lesson Resources

# EXHIBIT F

 (//code.org)

Create ▼

Sign in (//studio.code.org/users/sign_in)

Learn (//studio.code.org/courses)     Teach (//studio.code.org/courses?view=teacher)

Projects (//studio.code.org/projects/public)     Stats (//code.org/promote)     Help Us (//code.org/help)

About (//code.org/about)



# App Lab

App Lab is a programming environment where you can make simple apps. Design an app, code in JavaScript with either blocks or text, then share your app in seconds.

Ages 13+, all modern browsers, English only

Try it out     **(//studio.code.org/projects/applab/new)**



**(//studio.code.org/s/applab-intro/reset)**

### Intro to App Lab (Ages 13+)

Create your own app in JavaScript using block based programming. Or take your skills to the next level with text-based programming. (English Only)

Go   **(//studio.code.org/s/applab-intro/reset)**     **View teacher guide (https://curriculum.code.org/hoc/plugged/7/)**



### App Lab in the classroom

This launch video introduces five reasons App Lab could be a great tool for students learning programming.

## Starter Projects

Start with a blank project, explore the sample apps and take the challenge to make them even better, or check out projects that other students have built.

Start a blank project

Remix the project

Remix the project

Remix the project

Remix the project

Remix the project

Remix the project

View project gallery

## Demos for creating apps with App Lab











## For teachers

Want to do more with App Lab? Our introductory course, **Computer Science Discoveries (/csd)**, and our **Computer Science Principles (/csp)** course both use this tool to help teach students computer science concepts.



### Professional Learning Program
Course specific professional learning provides hands on experience with the curriculum.

Learn more **(/educate/professional-learning)**

## Computer Science Principles (/csp) units that use App Lab

| Link | Unit description |
| --- | --- |

| | |
|---|---|
| **Unit 3**<br>**(//studio.code.org/s/csp3-2021)** | **Intro to App Design**<br>Students design their first app while learning both fundamental programming concepts and collaborative software development processes. Students work with partners to develop a simple app that teaches classmates about a topic of personal interest. Throughout the unit, they learn how to use Code.org's programming environment, App Lab, to design user interfaces and write simple event-driven programs. Along the way, students learn practices like debugging, pair programming, and collecting and responding to feedback, which they will be able to use throughout the course as they build ever more complex projects. The unit concludes with students sharing the apps they develop with their classmates. |
| **Unit 4**<br>**(//studio.code.org/s/csp4-2021)** | **Variables, Conditions, and Functions**<br>Students expand the types of apps they can create as they learn how to store information (variables), make decisions (conditionals), and better organize code (functions). Each programming topic is covered in a specific sequence of lessons that ask students to 'Explore' ideas through hands-on activities, 'Investigate' these ideas through guided code reading, 'Practice' with sample problems, and apply their understanding as they 'Make' a one-day scoped project. The entire unit concludes with a three-day open-ended project in which students must build an app that makes a recommendation about any topic they wish. |
| **Unit 5**<br>**(//studio.code.org/s/csp5-2021)** | **Lists, Loops, and Traversals**<br>Students learn to build apps that use and process lists of information. Like the previous unit, students learn the core concepts of lists, loops, and traversals through a series of EIPM lesson sequences. Later in the unit, students are introduced to tools that allow them to import tables of real-world data to help further power the types of apps they can make. At the conclusion of the unit, students complete a week-long project in which they must design an app around a goal of their choosing that uses one of these data sets. |
| **Unit 7**<br>**(//studio.code.org/s/csp7-2021)** | **Parameters, Return, and Libraries**<br>Students learn how to design clean and reusable code that can be shared with a single classmate or the entire world. In the beginning of the unit, students are introduced to the concepts of parameters and return, which allow for students to design functions that implement an algorithm. In the second half of the unit, students learn how to design libraries of functions that can be packaged up and shared with others. The unit concludes with students designing their own small library of functions that can be used by a classmate. |

| | |
|---|---|
|  **Unit 9**<br><br>**(//studio.code.org/s/csp9-2021)** | **Data**<br>Students explore and visualize datasets from a wide variety of topics as they hunt for patterns and try to learn more about the world around them from the data. Once again, students work with datasets in App Lab, but are now asked to make use of a data visualizer tool that assists students in finding data patterns. They learn how different types of visualizations can be used to better understand the patterns contained in datasets and how to use visualizations when investigating hypotheses. At the conclusion of the unit, students learn about the impacts of data analysis on the world around them and complete a final project in which they must uncover and present a data investigation they've completed independently. |

## Computer Science Discoveries (/csd) units that use App Lab

| Link | Unit description |
|---|---|
|  **Unit 4**<br><br>**(//studio.code.org/s/csd4-2021)** | **The Design Process**<br>In this unit, students are asked to consider and understand the needs of others while developing a solution to a problem through a series of design challenges. The second half of the unit consists of an iterative team project, during which students have the opportunity to identify a need that they care about, prototype solutions both on paper and in App Lab, and test their solutions with real users to get feedback and drive further iteration |
|  **Unit 6**<br><br>**(//studio.code.org/s/csd6)** | **Physical Computing**<br>In this unit, students develop their programming skills in App Lab while exploring the role of hardware platforms in computing. Students look towards current and "smart" devices to understand the ways in which different sensors can provide more effective input and output than the traditional keyboard, mouse, and monitor. Note: This unit requires access to **Adafruit's Circuit Playground (https://code.org/circuitplayground)** board. |

# Video library

Watch these videos to learn how to create apps in App Lab and learn new programming concepts with the tool.

## Procedural abstraction and top-down design





Program a turtle to move around the screen and draw anything from

Learn how to define and call functions so you can easily reuse

basic shapes to complex designs.          code more efficiently.

## Documentation and simple loops



Create functions with parameters to make functions that are more flexible and can be used to solve different kinds of problems.



Learn how to use loops to repeat code and simplify your app.

## Event-driven programming and apps



Start using design mode to create a user interface for your app where users can click buttons, select from dropdowns, and even use a slider.

## Variables and strings



An introduction to variables that can be used throughout your code.



Learn how to use different kinds of variables to make your apps more complex.

## Conditionals and boolean logic



Use boolean expressions to make decisions in your app logic.



Create conditions with if/else statements to make your app more unique.



Add more complex logic like AND and OR to give users more choices in your apps.

## Loops and arrays



Organize your information by using a list in your app.

## Processing arrays of data



Create charts with your data by processing a list.



Privacy Policy (/privacy)   |   About (/about)   |   Partners (/partners)   |   Blog (https://medium.com/@codeorg)   |   Donate (/donate)   Store (/shop)   Support (http://support.code.org/)   |   Terms (/tos)

© Code.org, 2022. Code.org®, the CODE logo and Hour of Code® are trademarks of Code.org.

Built on GitHub from Microsoft

(https://aws.amazon.com/what-is-cloud-computing)

English

Privacy Policy (/privacy)   |   About (/about)   |   Partners (/partners)   |   Blog (https://medium.com/@codeorg)   |   Donate (/donate)   |   Store (/shop)   |   Support (https://support.code.org/)   |   Terms (/tos)

English

(https://www.facebook.com/Code.org)   (https://twitter.com/codeorg)   (https://www.instagram.com/codeorg)   (https://medium.com/@codeorg)

© Code.org, 2022. Code.org®, the CODE logo and Hour of Code® are trademarks of Code.org.