UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE GOOGLE PLAY DEVELOPER ANTITRUST LITIGATION | Case No. 3:20-cv-05792-JD<br><br>**DECLARATION OF LACEY THOMAS ELLIS IN SUPPORT OF DEVELOPER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS** |
|---|---|

1.       I am the founder and Chief Executive Officer of LittleHoots, LLC, a class representative in the above-captioned matter (the "Class Action").

2.       I submit this declaration in support of the Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards. This declaration is based on my personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

3.       I previously outlined some of the work I performed as a class representative (ECF No. 218-5) and have been asked to elaborate for purposes of the present motion.

4.       At the outset, I want to emphasize that this is an important lawsuit for Android app developers like myself, and I am proud to have served as a class representative. I did not take this task on lightly. My Android app—a memory-keeping app called "LittleHoots"—is only available in the Google Play store, the largest app store for Android apps. While I strongly support the objectives of this case, I was concerned from the outset that participating in a lawsuit against Google—and being named publicly as a plaintiff—could prompt Google to remove my app or otherwise make it more difficult for me to acquire Android users. I was also concerned that being identified as a plaintiff in such a prominent case might harm my business's reputation or make it more difficult to partner with other businesses and potential funders. After extensive discussion with my partner and counsel, I concluded that the value of serving as a class representative and pursuing remedies through the lawsuit (both for my business and other Android app developers) was worth the risk. Fortunately, I do not believe Google has taken any retaliatory actions against me or my app in response to my involvement in this case.

5.       I understood that serving as a class representative required a serious commitment of time, but the demands of this case exceeded my expectations. In sum, I estimate that I have spent 80

hours working on this case from the date of my first involvement until now. I have not received, and was never promised, any compensation for the time I devoted to this case.

6. Prior to being named as a Plaintiff in the lawsuit, I had numerous coordination and fact-gathering meetings with Class Counsel. I understood that Google would be requesting documents and information relating to my app development business, and I took careful steps to make sure all potentially relevant documents and sources of information were preserved and accessible if need be.

7. Shortly after I was named as a Plaintiff in the Second Amended Coordinated Class Action Complaint, I began to gather documents and information in response to Google's First Set of Requests for Production and First Set of Interrogatories.

8. Google served 71 separate document requests in total, and these spanned 18 pages. Taken together, the requests sought virtually all documents relating to my app development business. Several requests targeted detailed financial records, including actual and projected revenue, cost, profitability, and user-acquisition data. Other requests sought strategic and business planning documents. Others sought all my communications with users and other participants in the app economy, on various broad topics.

9. I spent a substantial amount of time working with Class Counsel and a third-party vendor to collect and review materials requested by Google. Many of the financial materials Google requested were stored across multiple locations, and with other parties, and gathering it all was labor intensive. Pulling my email and hard-drive material required imaging my files, and this precluded me from accessing my computer for the bulk of a full workday. I understand that more than 1,300 documents and 5,000 pages were produced from my devices and, given the sensitive financial nature of much of the material produced, I reviewed a substantial number of documents before they were produced in the case.

10. I also carefully reviewed and responded to 31 different Interrogatories from Google. The first set concerned my app business and the second the efforts I had undertaken to preserve relevant materials. I understood that I had a duty to supplement my responses to the extent new information came to light, and working with Class Counsel, I provided two supplemental sets of Interrogatory Responses as the case progressed.

11. After producing documents, I was deposed both as an individual and as the corporate representative of LittleHoots. Prior to my deposition I received and reviewed a detailed set of 30(b)(6) topics. I prepared extensively for my deposition by reviewing documents, gathering information on the 30(b)(6) and other topics, and conferring with my counsel. I recall having at least four deposition preparation meetings with counsel spanning approximately 10 hours total. I also spent numerous hours preparing alone with documents and my own notes. At my deposition I was questioned both by counsel for Google and a representative for the Consumer Plaintiffs. The deposition lasted a full workday, starting at 9:00 am and ending at 5:30 pm. After my deposition, I spent several hours reviewing the transcript for an errata sheet identifying transcription errors.

12. Throughout the case I reviewed case filings and conferred regularly with Class Counsel. This includes reviewing the Second Amended Consolidated Class Action Complaint, which I understand was the first pleading in which I was named as a class representative. As the case progressed, I received regular updates from Class Counsel, both by email and by phone (or Zoom) as needed. All told, I received hundreds of case emails from counsel, and participated in at least 15 telephonic or zoom meetings.

13. I believe that my work on the case was a contributing factor to the proposed settlement agreement between Google and the Settlement Class (the "Settlement"). As I have previously stated (ECF No. 218-5), and reiterate here, I fully approve the Agreement.

14. In addition to the monetary relief, one valuable aspect of the Agreement is Google's commitment to maintain a service fee rate of no greater than 15% for the first $1,000,000 in U.S. developer earnings each year through May 25, 2025. This commitment represents a substantial savings for U.S. developers. LittleHoots, for example, has never earned more than $1,000,000 in annual revenues in the Google Play store. Thus, when Google launched this 15% program in 2021, it had the effect of halving LittleHoots's service fees, reducing them from 30% to 15%. U.S. developers earning more than $1,000,000 also only pay 15% on the first $1,000,000 under this program. I understand that Google acknowledges in the Agreement that this lawsuit was one factor behind the program's initial launch, and locking in the program's savings through May 25, 2025 is valuable in its own right. I am proud to have achieved this result for U.S. developers.

15. Another exciting aspect of the Agreement is Google's commitment to create an "Indie Apps Corner" on the U.S. homepage of the Google Play store, and maintain it for two years after final approval. This feature will spotlight a rotating set of apps created by independent and small startup developers. As a small, independent developer, I can attest to the value of the Indie Apps Corner. One challenge small developers face is getting their apps discovered, and that has been a challenge for LittleHoots in particular. The Indie Apps Corner will improve discoverability, and I believe the opportunity to be spotlighted in the Indie Apps Corner will encourage small and independent developers to continue to innovate quality apps. I am gratified to have contributed to this outcome.

16. From LittleHoots's perspective, another noteworthy aspect of the settlement is Google's commitment to maintain, for at least three years following final approval, features in the Android 12 OS that facilitate auto updates on apps downloaded outside the Google Play store. LittleHoots has updated its Android app on several occasions, and the ability to push auto updates to users is valuable because it ensures that users are utilizing the most recent (and typically most

functional) version of the app.  I believe that the ability to auto update apps downloaded from stores other than Google Play will make those stores more attractive distribution outlets for developers.

17. In sum, in addition to the monetary recovery, the Settlement will provide substantial benefits to LittleHoots and members of the Settlement Class.  LittleHoots fully supports the Settlement.

18. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 20th day of February, 2023, at Prairie Village, Kansas.

*DocuSigned by:*
*Lacy Ellis*
317AB73903A44BA...
Lacey Ellis