# <u>Corrected Version of ECF No. 240</u>

## Corrected Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards

1

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

2

3

4

Melinda R. Coolidge (*pro hac vice*)
mcoolidge@hausfeld.com
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200

5

Eamon P. Kelly (*pro hac vice*)
ekelly@sperling-law.com
SPERLING & SLATER LLC
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200

6

7

8

*Co-Lead Interim Class Counsel for the
Proposed Class and Attorneys for Plaintiffs
Peekya App Services, Inc. and Scaliso LLC*

9

10

*Co-Lead Settlement Class Counsel for the
Proposed Class and Attorneys for Plaintiffs Pure
Sweat Basketball, Inc. and LittleHoots LLC*

11

12

[Additional Counsel Listed on Signature Page]

13

14

UNITED STATES DISTRICT COURT

15

NORTHERN DISTRICT OF CALIFORNIA

16

SAN FRANCISCO DIVISION

17

IN RE GOOGLE PLAY DEVELOPER
ANTITRUST LITIGATION

18

19

20

21

22

23

24

25

Case No. 3:20-CV-05792-JD

**CORRECTED DEVELOPER
PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR ATTORNEYS'
FEES, REIMBURSEMENT OF
EXPENSES, AND SERVICE
AWARDS**

Date:       May 18, 2023
Time:       10:00 a.m.
Judge:      Hon. James Donato
Location:   Courtroom 11, 19th Floor

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 18, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-titled Court, in the courtroom of the Honorable James Donato located at the Phillip Burton Federal Building and United States Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Developer Plaintiffs will move and hereby do move the Court for an award of attorneys' fees, reimbursement of expenses, and service awards. This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations in support of the motion, argument by counsel at the hearing before this Court, any papers filed in reply, such oral and documentary evidence as may be presented at the hearing of this motion, and all papers and records on file in this matter.

Dated: March 1, 2023                    Respectfully submitted,

By ____ */s/ Steve W. Berman* _____

Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
Ted Wojcik (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com

Ben M. Harrington (SBN 313877)
Benjamin J. Siegel (SBN 256260)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
benh@hbsslaw.com
bens@hbsslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By *s/ Melinda R. Coolidge*
    Melinda R. Coolidge (*pro hac vice*)
Yelena W. Dewald (*pro hac vice*)
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200 (main)
Telephone: (202) 540-7144 (direct)
Facsimile:  (202) 540-7201
mcoolidge@hausfeld.com
ydewald@hausfeld.com

Kyle Geoffrey Bates (SBN 299114)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908 (main)
Facsimile:  (415) 358-4980
kbates@hausfeld.com

Katie R. Beran (*pro hac vice*)
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270 (main)
Telephone: (267) 702-3215 (direct)
Facsimile:  (215) 985-3271
kberan@hausfeld.com

By    */s/ Eamon P. Kelly*
    Eamon P. Kelly (*pro hac vice*)
Joseph M. Vanek (*pro hac vice*)
Alberto Rodriguez (*pro hac vice*)
**SPERLING & SLATER, LLC**
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile:  (312) 641-6492
jvanek@sperling-law.com
ekelly@sperling-law.com
arodriguez@sperling-law.com

*Interim Co-Lead Class Counsel and Proposed
Settlement Class Counsel*

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................ i

GLOSSARY OF TERMS ................................................................................. vii

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     THE WORK UNDERTAKEN BY CLASS COUNSEL ............................... 2

      A.      Class Counsel Conducted a Thorough Investigation to Prepare
          Detailed Pleadings. ........................................................................... 2

      B.      Class Counsel Engaged in Substantial Case Coordination to Achieve
          Efficiencies. ..................................................................................... 3

      C.      Class Counsel Obtained Substantial Discovery on Behalf of the
          Settlement Class. ............................................................................... 3

            1.      Written and Document Discovery ................................... 3

            2.      Fact and 30(b)(6) Depositions ....................................... 4

            3.      Expert Discovery .......................................................... 4

      D.      Class Counsel Settled Strategically with Google to Maximize
          Recovery for the Settlement Class. ..................................................... 5

III.    ARGUMENT ....................................................................................... 6

      A.      Class Counsel Request a Reasonable Percentage of the Fund. ............. 6

            1.      Class Counsel Achieved Exceptional Results for the Settlement
                Class, Including Benefits Beyond the Common Fund. .............. 8

            2.      This Case Posed Enormous Risks and Challenges. ........... 9

            3.      The Market Rate for Antitrust Class Actions Supports the Fee
                Request. ........................................................................ 10

            4.      The Burdens Faced By Class Counsel Support the Fee Request. .............. 11

            5.      Class Counsel's Litigation on a Contingency Basis Supports
                the Fee Request. ............................................................ 11

      B.      A Lodestar Cross-Check Confirms the Reasonableness of the
          Requested Fees. ............................................................................... 12

C.   Class Counsel's Litigation Expenses Are Reasonable and
     Reimbursable. .................................................................................................. 13

D.   Service Fees of $10,000 Are Warranted Given the Unusual Demands
     of this Case. ...................................................................................................... 14

IV.   CONCLUSION .............................................................................................................. 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*In re Animation Workers Antitrust Litig.*,
5        2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ............................................................. 13

6
*In re Anthem, Inc. Data Breach Litig.*,
7        2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .............................................................. 6

8
*In re Apple Inc. Device Perf. Litig.*,
9        2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) .............................................................. 6

10
*Bolton v. U.S. Nursing Corp.*,
        2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) ......................................................... 14, 15

11
*In re Capacitors Antitrust Litig.*,
12        2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ................................................. 6, 12, 14

13
*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
14        2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) .............................................................. 10

15
*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
        2016 WL 3648478 (N.D. Cal. July 7, 2016) ................................................................ 8

16
*In re Corel Corp., Inc. Secs. Litig.*,
17        293 F. Supp. 2d 484 (E.D. Pa. 2003) ......................................................................... 8

18
*de Mira v. Heartland Emp't Serv., LLC*,
19        2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) .............................................................. 6

20
*Epic Games, Inc. v. Apple Inc.*,
        559 F. Supp. 3d 898 (N.D. Cal. 2021) ........................................................................ 10

21
*Fischel v. Equitable Life Assur. Soc'y*,
22        307 F.3d 997 (9th Cir. 2002) ...................................................................................... 6

23
*Hamilton v. Juul Labs, Inc.*,
24        2021 WL 5331451 (N.D. Cal. Nov. 16, 2021) .............................................................. 6

25
*Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 7

26
*Hernandez v. Dutton Ranch Corp.*,
27        2021 WL 5053505 (N.D. Cal. Feb. 10, 2021) .............................................................. 6

28

*Herrera v. Wells Fargo Bank*,
    2021 WL 9374975 (C.D. Cal. Nov. 16, 2021) ............................................................... 7

*In re High-Tech Emp. Antitrust Litig.*,
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .............................................................. 12

*In re High-Tech Emp. Antitrust Litig.*,
    2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ................................................................ 8

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ...................................................................................... 13

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ............................................................... 9

*In re Lidoderm Antitrust Litig.*,
    2018 WL 11375216 (N.D. Cal. Sept. 20, 2018) ......................................................... 10

*In re Lithium Ion Batteries Antitrust Litig.*,
    2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ............................................................. 9

*Martin v. Toyota Motor Credit Corp.*,
    2022 WL 17038908 (C.D. Cal. Nov. 15, 2022) ........................................................... 7

*McDonald v. CP OpCo, LLC*,
    2019 WL 2088421 (N.D. Cal. May 13, 2019) ............................................................ 14

*Meijer, Inc. v. Abbott Labs. (Norvir)*,
    2011 WL 13392313 (N.D. Cal. Aug. 11, 2011) ......................................................... 11

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
    2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ................................................... 8, 12, 14

*Nitsch v. DreamWorks Animation SKG Inc.*,
    2017 WL 2423161 (N.D. Cal. June 5, 2017) ......................................................... 14, 15

*Norcia v. Samsung Telecomms. Am., LLC*,
    2021 WL 3053018 (N.D. Cal. July 20, 2021) .......................................................... 7, 9

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 394 (9th Cir. 2015) ............................................................................. 6, 9, 14

*Resurrection Bay Conserv. Alliance v. City of Seward*,
    640 F.3d 1087 (9th Cir. 2011) .................................................................................. 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................... 14

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ............................................................................... 12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................... 7, 9

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) ............................................................................ 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ..................................................... 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod.*
   *Liab. Litig.*,
   2013 WL 12327929 (C.D. Cal. July 24, 2013) .................................................... 7

*Vasquez v. USM Inc*,
   2016 WL 612906 (N.D. Cal. Feb. 16, 2016) ........................................................ 9

*Vizcaino v. Microsoft Corp.*,
   290 F.3d (9th Cir. 2002) ............................................................................... 9, 12

### STATUTES

Sherman Act ........................................................................................................ 5, 10

### RULES

Fed. R. Civ. P. 23 ..................................................................................................... 1

### OTHER AUTHORITIES

F. Patrick Hubbard, *Substantive Due Process Limits on Punitive Damages Awards:*
   *"Morals Without Technique?"*, 60 Fla. L. Rev. 349 (2008) ................................. 12

Davis & Kohles, *Report: Class Action Filings in Federal Court* (2021) ..................... 10

Theodore Eisenberg *et al.*, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U.
   L. Rev. 937 (2017) .............................................................................................. 10

## GLOSSARY OF TERMS

| Term | Description |
|------|-------------|
| Berman Decl. | Declaration of Steve W. Berman in Support of Developer Plaintiffs' Fees, Reimbursement of Expenses, and Service Awards, concurrently filed herewith. |
| Class Counsel | Court-appointed Co-Lead Class Counsel Hagens Berman Sobol Shapiro LLP, Sperling & Slater, LLC, and Hausfeld LLP, and all counsel working at their direction. |
| Coolidge Decl. | Declaration of Melinda R. Coolidge in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, concurrently filed herewith. |
| Czeslawski Decl. | Declaration of Richard Czeslawski in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, concurrently filed herewith. |
| Einwaechter Decl. | Declaration of Francois Einwaechter in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, concurrently filed herewith. |
| Ellis Decl. | Declaration of Lacey Thomas Ellis in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, concurrently filed herewith. |
| Kelly Decl. | Declaration of Eamon P. Kelly in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, concurrently filed herewith. |
| Lewis Decl. | Declaration of Erin F. Lewis, Administrator of the Estate of Michael Lewis, in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, concurrently filed herewith. |
| Scalise Decl. | Declaration of Daniel Scalise in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, concurrently filed herewith. |
| Williams Decl. | Declaration of Michael A. Williams, Ph.D., dated June 30, 2022, previously submitted at ECF 218-3 and resubmitted concurrently herewith. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   PRELIMINARY STATEMENT

After two years of active litigation, Developer Plaintiffs reached a settlement with Google that secures a $90 million cash fund and structural relief on behalf of a class of Google Play developers that earned less than $2 million in annual revenues. The $90 million cash fund is non-reversionary, and the Settlement Class can receive substantial direct payments, some exceeding $200,000, without submitting claims. The Settlement's structural relief, in turn, will make Android App development a more remunerative enterprise going forward. Among other reforms, during this litigation Google reduced the fees charged to Developer Plaintiffs on the first $1 million in annual developer revenues (from 30% to 15%). As part of the Settlement, Google acknowledges that Developer Plaintiffs' litigation was a driver behind that reduction and agreed to maintain the reduced fees through at least May 2025. This commitment will provide at least another $22 million in savings to the Settlement Class.

This Court preliminarily approved the Settlement on December 1, 2022 and, in accordance with the Court's Order, Class Counsel now move for (a) an award of attorneys' fees in the amount of $26 million; (b) reimbursement of litigation expenses totaling $5,916,010.30; and (c) service awards of $10,000 for each of the four class representatives. These are reasonable requests that warrant approval under Rule 23 and prior decisions approving similar requests within this judicial district.

A fee award of $26 million amounts to 23.2% of the Settlement's $112 million quantifiable common fund—namely, $90 million in cash and $22 million in prospective rate savings. In addition to falling below this Circuit's 25% benchmark, the requested fees would result in a modest 1.41 lodestar multiplier. That is a fraction of multipliers regularly approved in this judicial district and substantially below the 2.38 multiplier approved last year in a comparable app developer settlement with Apple. A modest multiplier is more than justified, considering the results Class Counsel secured. The Settlement's $112 million common fund represents 45-47% of the Settlement Class's single damages. The $90 million cash fund alone (excluding the savings from Google's reduced fees) represents 36-38% of single damages. This is an exceptional recovery in antitrust class litigation, far above the mean, without saying anything about the additional structural reforms the Settlement provides.

As for expenses, Class Counsel seek reimbursement only for expenditures reasonably incurred to prosecute the action. Most expenses were for experts who developed the economic foundation for Plaintiffs' case and, in doing so, positioned Plaintiffs to secure a favorable Settlement. Class Counsel's request for reimbursement is supported by detailed invoices substantiating the expenses and their reasonableness.

Class Counsel's request for $10,000 service awards is likewise reasonable. Hundreds of class members will receive payments exceeding the requested service awards, and some individual payments will be twenty times larger. Accordingly, this is not a case where the class representatives stand to recover an outsized portion of the settlement fund. This is also a unique case in which the class representatives are all businesses actively working with Google. Each class representatives had to overcome fear of retaliation to be named in this lawsuit against one of the most powerful companies in the world, a risk many developers were unwilling to take. The class representatives also shouldered discovery burdens beyond what is normally required of named plaintiffs in class litigation.

For these reasons, Plaintiffs respectfully request that their motion be granted in full.

## II.    THE WORK UNDERTAKEN BY CLASS COUNSEL

### A.    Class Counsel Conducted a Thorough Investigation to Prepare Detailed Pleadings.

Class Counsel's initial Consolidated Complaint was predicated on extensive analysis of Google's conduct and applicable antitrust law. Berman Decl. ¶ 9. While Class Counsel filed the Consolidated Amended Complaint on July 21, 2021, the underlying investigation dates to at least November 2018. *Id.* The byproduct of Class Counsel's extended investigation is an unusually detailed pleading describing the mechanisms, both subtle and overt, through which Google has allegedly monopolized the market for distribution of Android apps. *See* ECF No. 62.

After Google moved to dismiss the Consolidated Complaint, Class Counsel prepared joint (ECF No. 80) and individual (ECF No. 81) opposition briefs. With the motion to dismiss pending, Class Counsel's investigation continued and, before the motion was adjudicated, Class Counsel filed an Amended Consolidated Complaint incorporating additional facts, including from the developing discovery record (ECF No. 129). Facing a sophisticated and fully sourced pleading spanning nearly

1    100 pages, and having previewed Class Counsel's opposition to Google's prior motion to dismiss,

2    Google elected to answer the Amended Consolidated Complaint (ECF No. 156). Class Counsel

3    amended the complaint a second time on January 21, 2022, with additional facts and class

4    representatives (ECF No. 179). Google again elected to answer (ECF No. 189).

5    **B.    Class Counsel Engaged in Substantial Case Coordination to Achieve Efficiencies.**

6           This action involved atypical procedural complexity, in part due to the number of plaintiff

7    groups litigating within the consolidated proceedings. From the outset, Class Counsel sought to

8    maximize efficiency and avoid duplication by coordinating with Consumer Plaintiffs, Epic and

9    (later) litigating Attorneys General. While all plaintiffs shared common overarching objectives,

10   litigation strategies did not always align and progressing the case on the Court's timetable required

11   active collaboration and compromise. *See* Berman Decl. ¶ 13.

12          To lay the groundwork for discovery, Developer Plaintiffs negotiated a set of detailed

13   protocols with minimal Court intervention, including ESI Protocols (ECF No. 69), Coordinated

14   Discovery Protocols (ECF No. 70), a Protective Order and amendments thereto (ECF Nos. 111, 162

15   177, 211), a Supplemental Protective Order and amendments thereto (ECF Nos. 117, 163, 210),

16   Expert Discovery Protocols (ECF No. 125), a Supplemental Protective Order Governing Source

17   Code and amendment thereto (ECF Nos. 199, 209), Deposition Protocols (ECF No. 176), as well as

18   a Privilege Log Agreement. *See id.* ¶ 14. To encourage effective case management, Class Counsel

19   also submitted more than 8 joint status submissions and participated in more than 10 case

20   management conferences. *See* Berman Decl. ¶ 15.

21   **C.    Class Counsel Obtained Substantial Discovery on Behalf of the Settlement Class.**

22          Often over Google's objections, Class Counsel succeeded in obtaining broad discovery and

23   devoted substantial resources to analyzing the terabytes of information produced.

24                          **1.    Written and Document Discovery**

25          Working with other plaintiff groups, Class Counsel propounded detailed written discovery,

26   including 253 document requests (in six sets), interrogatories, and approximately 45 third-party

27   subpoenas. *Id.* ¶ 17. Class Counsel also responded to extensive discovery propounded by Google.

28   Unlike some class cases where plaintiff-side discovery receives limited attention, the class

representatives here are all app developers operating in the antitrust market alleged. Google's discovery requests were thus far more extensive and consequential. Google served 71 document requests on three named plaintiffs, 91 on another, and a total of 31 interrogatories. *Id.*

The parties' broad discovery requests generated a massive discovery record that Class Counsel analyzed to develop their claims. At the filing of Developer Plaintiffs' preliminary approval motion, more than 5.7 million documents and 28 million pages had been produced. *Id.* ¶ 20. Google's datasets, essential for expert analyses, encompassed nearly 11 terabytes. Class Counsel invested thousands of attorney hours to probe and curate this body of evidence. *Id.*

### 2.      Fact and 30(b)(6) Depositions

Class Counsel also pursued and conducted depositions of relevant high-level Google representatives, including senior management with responsibilities for the Google Play store. At the time of Developer Plaintiffs' preliminary approval motion, the parties had taken 45 depositions, with Class Counsel taking or defending 26 of these. This includes depositions of three of the four class representatives. Developer Plaintiffs also served a 30(b)(6) notice with 35 topics and deposed Google's corporate designees both in individual and 30(b)(6) capacities. *See id.* ¶ 21.

### 3.      Expert Discovery

As with many antitrust actions, Plaintiffs' affirmative case required extensive expert analysis of the market and economic effects of the challenged conduct. Over the course of the litigation, Class Counsel worked closely with a team of consulting and testifying experts, including two distinguished economists (Prof. David S. Sibley and Dr. Michael A. Williams), one accounting expert (Kevin Kreitzman), and one technology expert (Prof. Douglas C. Schmidt). *See id.* ¶ 23.

These experts' work culminated in comprehensive opening and rebuttal reports served in connection with class certification. The reports totaled 723 pages, exclusive of backups. Professor Sibley addressed liability issues, including the relevant antitrust market and common evidence of Google's market power and monopolization conduct. Dr. Williams addressed antitrust impact and constructed two classwide damages models. Mr. Kreitzman analyzed Google's financial records to estimate Google Play's economic profits, a building block of Dr. Williams's work. Finally, Professor Schmidt analyzed the technological aspects of Google's alleged monopolization conduct and

proffered defenses. After reports were submitted, three of Developer Plaintiffs' experts were

deposed by seasoned antitrust counsel. *See id.* ¶ 23.

**D.     Class Counsel Settled Strategically with Google to Maximize Recovery for the
         Settlement Class.**

When the parties reconvened for a second mediation in May 2022, discovery (both fact and

expert) had developed to the point where Class Counsel fully understood the strengths and

challenges of the case. Class Counsel had also witnessed the 2021 trial of Epic's comparable claims

against Apple, where Epic did not prevail on its Sherman Act theories. With cross-appeals pending

in the Apple matter, Class Counsel settled with Google to secure substantial and immediate relief for

the small and medium-sized developers falling within the Settlement Class definition (*i.e.*,

developers with up to $2 million in annual sales).

By virtue of the Settlement, these developers will receive direct payments from a $90 million

settlement fund, recovering an exceptionally high percentage of their single damages, as further

addressed below. Class Counsel also negotiated a set of injunctive relief terms to help members of

the Settlement Class better monetize their apps going forward. Specifically, under the Settlement's

injunctive relief provisions, Google has agreed to reforms in five areas:

- **Rate Relief**: Google acknowledged that this litigation was a factor in its program (first launched in 2021) reducing service fees from 30 to 15 percent on developers' first $1 million in annual revenues, and agreed to maintain this rate reduction for U.S. developers until at least May 25, 2025;

- **Improved App Discoverability**: Google agreed to develop an "Indie Apps Corner" in the Google Play store highlighting apps from small and startup developers, valuable publicity that will help the Settlement Class get quality apps discovered;

- **Steering**: Google amended its Developer Distribution Agreement ("DDA") in ways that clarify developers' ability to communicate with app users, including to steer them to cost-effective alternatives to Google Play's billing service;

- **Rival Stores**: Google agreed to maintain changes to Android 12 that make distribution through rival app stores more viable, specifically by permitting auto-updates after download, while acknowledging that this lawsuit was a factor behind this feature; and

- **Transparency**: Google agreed to publish an annual transparency report providing developers with meaningful data regarding the operation of the Google Play store.

*See* ECF No. 229 at 6-8.

## III.     ARGUMENT

In the Ninth Circuit, district courts may use either the "percentage-of-the-fund" or "lodestar" method to calculate reasonable attorneys fees. *See Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). Where, as here, the settlement provides a cash recovery or common fund, the percentage-of-the-fund methodology is "preferred." *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) ("*Capacitors*"). The benefits of the percentage-of-the-fund method are threefold. First, it ensures that "Class Counsel are incentivized to achieve the best possible result." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018). Second, it is consistent "with contingency fee calculations in the private market." *In re Apple Inc. Device Perf. Litig.*, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021). Third, it "reduc[es] the burden on the courts that a complex lodestar calculation requires." *Id.*

While the percentage-of-the-fund method is appropriate in this case, Class Counsel's fee request is equally reasonable using the lodestar approach, as shown below.

### A.     Class Counsel Request a Reasonable Percentage of the Fund.

The Ninth Circuit has established a 25 percent benchmark for common fund cases, but this is just the "starting point." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 394, 955 (9th Cir. 2015).[1] The percentage can "be adjusted upward or downward depending on the circumstances of the case." *de Mira v. Heartland Emp't Serv., LLC*, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014). "[I]n most common fund cases, the award exceeds the benchmark." *Id.*; *accord Hernandez v. Dutton Ranch Corp.*, 2021 WL 5053505, at *5 (N.D. Cal. Feb. 10, 2021).

The first step is to determine the size of the common fund. A common fund should encompass both the cash value of the settlement and the value of injunctive relief that can be "'accurately ascertained.'" *Hamilton v. Juul Labs, Inc.*, 2021 WL 5331451, at *8 (N.D. Cal. Nov. 16, 2021) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 973-74 (9th Cir. 2003)); *Martin v. Toyota Motor Credit Corp.*, 2022 WL 17038908, at *11 (C.D. Cal. Nov. 15, 2022) (including ascertainable value of injunctive relief in common fund).[2] Moreover, unquantifiable injunctive relief is still "a relevant

---

[1] Internal quotation marks omitted here and throughout, unless otherwise noted.

[2] *See also Herrera v. Wells Fargo Bank*, 2021 WL 9374975, at *12 (C.D. Cal. Nov. 16, 2021) (same); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab.*

circumstance to consider in determining what percentage of the fund is reasonable as fee." *Staton,* 327 F.3d at 946; *accord Norcia v. Samsung Telecomms. Am., LLC*, 2021 WL 3053018, at *5 (N.D. Cal. July 20, 2021) (Donato, J.).

The Settlement here provides for a range of structural reforms but not all can be valued with the precision needed to be included in the common fund. One exception is Google's commitment to maintain a lower 15 percent service fee on developers' first $1 million in annual revenues. The value of this prospective relief is ascertainable and Plaintiffs' damages expert, Dr. Michael Williams, has done the calculation. As Dr. Williams shows, Google's 15 percent program and commitment to maintain it through May 25, 2025 will save the Settlement Class $109.8 million in fees. *See* Williams Decl. ¶¶ 4, 17. Google acknowledges that this litigation was a factor in its adoption of the 15 percent program and thus the savings it provides. *See* ECF No. 229-1, Ex. B at ¶ 2.6. The only other factor Google has identified is an interest in helping developers reinvest in their apps. *See id.* Ex. A. While Plaintiffs could take more credit, Plaintiffs conservatively assume that this litigation was at least 20 percent responsible for the $109.8 million in savings, meaning it delivered at least an additional $22 million in value to the Settlement Class. Combining that $22 million savings with the $90 cash fund yields a total common fund of $112 million.

Class Counsel's request for $26 million in fees amounts to 23.2 percent of this $112 million ascertainable common fund. But even if the value of Google's 15 percent program were excluded from the fund, the requested fees would amount to 28.9 percent of the $90 million cash fund, a modest increase above the benchmark. However the common fund is calculated, the fee request here is reasonable under all applicable considerations identified by the Ninth Circuit: "[1] [T]he extent to which class counsel achieved exceptional results for the class, [2] whether the case was risky for class counsel, [3] whether counsel's performance generated benefits beyond the cash settlement fund, [4] the market rate for the particular field of law (in some circumstances), [5] the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and [6] whether the case was handled on a contingency basis." *Online DVD*, 779 F.3d at 954–55.

*Litig.*, 2013 WL 12327929, at *29 & n.7 (C.D. Cal. July 24, 2013) (same); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (holding that plaintiffs' experts appropriately included non-monetary benefits in calculating total value of common fund).

1

2

**1.    Class Counsel Achieved Exceptional Results for the Settlement Class, Including Benefits Beyond the Common Fund.**

3

If the Settlement Class were to obtain class certification, survive summary judgment, and

4

prevail on all claims at trial, its members would stand to recover between $236 million and $248

5

million in single damages. *See* Williams Decl. Table 1. The $112 common fund represents between

6

45 and 47 percent of those single damages. The $90 million cash portion of the fund alone (exclusive

7

of prospective rate relief) represents between 36 and 38 percent of single damages.

8

This is an outstanding recovery. A 2015 study of 71 antitrust settlements shows a weighted

9

mean recovery of 19 percent of single damages. *In re Cathode Ray Tube (CRT) Antitrust Litigation*,

10

2016 WL 3648478, at *7 & n.19 (N.D. Cal. July 7, 2016). The recovery here more than doubles that

11

mean. Courts in this district "routinely approve" settlements with recoveries below 15 percent of

12

single damages. *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2,

13

2015). Even in megafund cases, "[f]ar lesser results (with 20% recovery of damages or less) have

14

justified upward departures from the 25 percent benchmark." *See In re NCAA Grant-in-Aid Cap*

15

*Antitrust Litig.*, 2017 WL 6040065, at *3 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir.

16

2019) (citing cases). In fact, courts have awarded fees of 30 percent and more for settlements

17

recovering less than 20 percent of class damages.[3]

18

In addition, however the common fund is calculated, the Settlement secures structural relief

19

beyond its nominal value. That is, the $112 common fund calculation that Class Counsel proposes

20

does not include the value of further injunctive relief secured by the Settlement, including reforms

21

relating to app discoverability, steering, rival stores, and transparency. *See supra* , Section II.D.

22

These are meaningful commitments that will allow Settlement Class Members to better monetize

23

their apps. *See* Czeslawski Decl. ¶ 12; Ellis Decl. ¶¶ 15-16; Scalise Decl. ¶¶ 14-15; Einwaechter

24

Decl. ¶¶ 15-16. Judge Gonzalez Rogers found that similar non-monetary relief in the Apple

25

settlement had "significant value." *See Cameron v. Apple Inc.*, 19-cv-3074, ECF No. 491 at 13 (N.D.

26

27

28

---

[3] *See* Order Granting Award of Attys.' Fees, Reimb. of Expenses & Incentive Payments, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819-CW (N.D. Cal. Oct. 14, 2011), ECF No. 1407 (33 percent awarded to IPP counsel); *Id.* at ECF No. 1375 (showing that 33 percent awarded, $41.322 million, was 15 percent of possible damages estimated by IPPs' expert in *SRAM*); *In re Corel Corp., Inc. Secs. Litig.*, 293 F. Supp. 2d 484, 489-90, 498 (E.D. Pa. 2003) (1/3 fee awarded from settlement fund that comprised about 15 percent of damages).

Cal. 2022) ("*Cameron*"). Although not part of the estimated common fund, this non-monetary relief is relevant in determining "what percentage of the common fund class counsel should receive." *Staton*, 327 F.3d at 974; *Online DVD*, 779 F.3d at 954-55.

A similar rationale applies if this Court were to limit the common fund to the Settlement's $90 million cash component, excluding the value of Google's 15 percent fee program. In that event, the value of the 15 percent program would not be part of the common fund, but it would remain an important factor supporting the fee request. Non-monetary relief of similar (and arguably lesser) value has been deemed sufficient to award fees up to, and above, 30 percent. *See, e.g., Norcia, LLC*, 2021 WL 3053018, at *5 (Donato, J.) (awarding 30 percent in fees where unquantifiable injunctive relief provided benefits "beyond the cash settlement fund"); *Vasquez v. USM Inc*, 2016 WL 612906, at *3 (N.D. Cal. Feb. 16, 2016) (Donato, J.) (citing injunctive relief as factor supporting fee award that "represents more than 50% of the total cash settlement").[4]

### 2.    This Case Posed Enormous Risks and Challenges.

"Antitrust cases are particularly risky, challenging, and widely acknowledge[d] to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020). "The 'best' case can be lost and the 'worst' case can be won, and juries may find liability but no damages. None of these risks should be underestimated." *Id.* The risks were particularly weighty here.

*First*, Plaintiffs' liability theories challenge a profit center of one of the world's most powerful companies, presenting novel economic and antitrust issues as to which prominent experts have staked out conflicting views. To recover at trial, Plaintiffs would need to overcome numerous material defenses Google was positioned to mount, including on issues of market definition, procompetitive justifications, and damages. While Class Counsel believe their antitrust theories are sound, nothing is certain in litigation, particularly in cases involving this degree of nuance. Adverse findings on any number of issues could have led to zero recovery for the Settlement Class.

---

[4] *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d at 1049 (9th Cir. 2002) (awarding counsel 28 percent of cash fund and explaining: "During the litigation, Microsoft agreed to hire roughly 3000 class members as regular employees and to change its personnel classification practices"); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (awarding counsel 28 percent and discussing value of equitable relief).

1    *Second*, and relatedly, Epic previously tried comparable claims against Apple, and the court

2    ruled that Epic could not establish any violation of the Sherman Act. *See Epic Games, Inc. v. Apple*

3    *Inc.*, 559 F. Supp. 3d 898, 1068 (N.D. Cal. 2021). While Epic obtained more limited injunctive relief

4    under the UCL, that remedy was stayed by the Ninth Circuit and cross-appeals are pending. Epic's

5    shortcomings illustrate vividly the risk of proceeding to trial.

6        Class Counsel's ability to secure a large settlement fund and structural relief in the face of

7    these risks supports the requested fees.

8            **3.      The Market Rate for Antitrust Class Actions Supports the Fee Request.**

9        An analysis for the 2020 Antitrust Annual Report[5] found that among antitrust class action

10   settlements between 2009 and 2020, the median fee awarded for funds in the $100-$249 million

11   range was 30 percent—and only in the $250-$499 million range (and higher) did the median fee

12   percentages drop to 25 percent. A prior 2017 study of 19 antitrust settlements with a mean recovery

13   of $501 million and a median recovery of $37 million likewise found that the mean and median fee

14   awards were 27 percent and 30 percent, respectively. *See* Theodore Eisenberg *et al.*, *Attorneys' Fees*

15   *in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2017). These studies comport with

16   decisions in this district, where above-benchmark fees are often awarded in antitrust class actions.[6]

17       Class Counsel's fee request is also comparable to the fees awarded in the recent Apple

18   developer settlement. *See Cameron*, ECF No. 491. There, the Court awarded $26 million in fees,

19   which constituted 26 percent of the cash fund and 19.2 percent of all quantifiable relief. While Class

20   Counsel request a slightly higher percentage of the common fund here, this is justified by several

21   factors. ***First***, this Settlement Class is recovering a higher percentage of its damages in cash and

22   overall. The $100 million cash settlement fund in the Apple case represented 30-34 percent of single

23

24

---

25   [5] Davis & Kohles, *2020 Antitrust Annual Report: Class Action Filings in Federal Court* (2021), available at: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3898782.

26   [6] *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2018 WL 11375216, at *3 (N.D. Cal. Sept. 20, 2018) (27 percent); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (27.5 percent); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (28.6 percent); Order Granting Award of Attys.' Fees, Reimb. of Expenses & Incentive Payments, *supra* note 28 (33 percent); *Meijer, Inc. v. Abbott Labs. (Norvir)*, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (33 percent).

damages, below the 36-38 percent ratio secured here. *See id.* at 14.[7] **Second**, the complexities of this case required a far more substantial outlay of attorney time. As addressed below, an award of $26 million in fees would result in a modest 1.41 multiplier, far below the 2.38 multiplier in the Apple case. **Third**, the risk of non-recovery was more daunting in this action given the higher out-of-pocket litigation costs. *Compare Cameron*, ECF No. 491 (plaintiffs documented expenses of approximately $3.7 million), *with* Berman Decl. ¶¶ 35-44 (documenting expenses of more than $5.9 million). **Fourth**, with this Court's guidance, Class Counsel also improved this Settlement's distribution scheme vis-à-vis the Apple settlement by (1) using a pure *pro rata* formula for payments (rather than stepped tiers) and (2) pushing payments directly to developers without any requirement for claims. These adjustments required extensive negotiation with Google and, together, they will help ensure equitable and widespread participation in the settlement. *See* Newberg § 15:87 (noting "ease with which class members are able to receive compensation" as a factor supporting higher multipliers).

### 4. The Burdens Faced By Class Counsel Support the Fee Request.

This litigation has been pending for more than two years. As just noted, Class Counsel has advanced millions of dollars out-of-pocket, devoted substantial time to this litigation (34,430.9 hours), and forewent other profitable work to prosecute this action. Berman Decl. ¶ 9. These are substantial burdens even for established class action firms.

### 5. Class Counsel's Litigation on a Contingency Basis Supports the Fee Request.

A fair fee award should consider the contingent nature of the representation. *See Vizcaino*, 290 F.3d at 1050. As courts recognize, "contingent fees are good for clients and the public alike" and there should be "a significant upside fee for successful contingent representations." *NCAA*, 2017 WL 6040065, at *4. This matter was litigated purely on a contingent basis, with no upfront retainer or allowance for expenses. *See* Berman Decl. ¶ 8. While this incentivized efficiency and prioritized results, Class Counsel was faced with a real risk of receiving no reimbursement at all. It is because of these inherent risks that the market rate for contingency representation is generally 33 percent of

---

[7] The Apple settlement represented 41-47 percent of all reasonably quantifiable relief, again a notch below the 45-47 percent range here.

1    recovery,[8] far above Class Counsel's request here.

2    **B.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees.**

3           Class Counsel have a combined lodestar of $18,469,866.75 in this matter. The $26 million

4    fee request represents a 1.41 multiplier of this lodestar amount, which is well within the range of

5    multipliers approved in this judicial district. As this Court has observed, "[i]n the Ninth Circuit, a

6    lodestar multiplier of around 4 times has frequently been awarded in common fund cases such as

7    this." *Capacitors*, 2018 WL 4790575, at *6.[9] In the Apple settlement, where the class recovered a

8    lesser percentage of its single damages, the Court awarded a 2.38 multiplier, deeming it "consistent

9    with the vast majority of large settlements." *Cameron*, ECF No. 491 at 14. Courts using a lodestar

10   method to determine recoverable fees (instead of percentage-of-the-fund) have likewise found

11   multipliers exceeding 2.0 to be "in line with the vast majority of megafund settlements." *In re High-*

12   *Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *11 (N.D. Cal. Sept. 2, 2015) (applying lodestar

13   method and awarding multiplier of 2.2 and fees exceeding $40 million).

14          Class Counsel's lodestar calculation here is also conservative. It does not include time spent

15   on this fee motion, and the lodestar will increase through final approval, distribution of the

16   settlement funds, and any appeals. The lodestar also reflects Class Counsel's sustained efforts to

17   manage attorney time and eliminate unnecessary work. As required by this Court's Order appointing

18   lead counsel, Class Counsel maintained contemporaneous billing records throughout this litigation

19   and audited hours monthly, deleting any duplicative and non-compensable time. *See* Berman Decl. ¶

20   2; Kelly Decl. ¶ 6; Coolidge Decl. ¶ 4. And finally, Class Counsel's billing rates do not exceed

21   prevailing rates in this market. *See In re Animation Workers Antitrust Litig.*, 2016 WL 6663005, at

22   *6 (N.D. Cal. Nov. 11, 2016) (holding *as of 2016* that hourly rates ranging from $275 to $1,200 were

23   "fair, reasonable, and market-based").

24   _____

25   [8] F. Patrick Hubbard, *Substantive Due Process Limits on Punitive Damages Awards: "Morals
     Without Technique?"*, 60 Fla. L. Rev. 349, 383 (2008) (discussing "'the usual 33-40 percent
26   contingent fee'" (quoting *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003)));
     *see also Vizcaino*, 290 F.3d at 1049 (explaining that fees requested were at or below "the standard
27   contingency fee for similar cases," supporting the reasonableness of the request).

     [9] *See* Berman Decl. Ex. 4. Class Counsel's lodestar is properly based on current rather than historical
28   hourly rates. *See Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016); *Stanger v. China Elec.
     Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016).

1
2
3
4
5
6
7
8
9

A multiplier of 1.41 is further supported by the *Kerr* "reasonableness" factors courts often evaluate in this context.[10] This action involved novel issues arising from the application of antitrust law to burgeoning technological markets (Factor 2), demanding substantial attorney time (Factor 1) as well as specialized legal and economic acumen (Factor 3). *See* Berman Decl. ¶¶ 9-24. Class Counsel are among the most respected class action law firms in the country (Factor 9) and, given the demands of this case, reallocated resources that would otherwise be devoted to other matters (Factor 4). *See id.* ¶¶ 50-62. Class Counsel's fee request is consistent with awards in comparable cases (Factors 5 and 12) and the Class's recovery—the most critical consideration—materially exceeds the benchmark for antitrust class actions (Factor 8). *See supra* at Section III.A.1.[11]

10
11

With all applicable *Kerr* factors supporting a multiplier of at least 1.41, a fee award in the amount requested will not overcompensate Class Counsel for their labors.

12

**C.    Class Counsel's Litigation Expenses Are Reasonable and Reimbursable.**

13
14
15
16

In common fund cases, "counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement." *Capacitors*, 2018 WL 4790575, at *6. As the Ninth Circuit has recognized, "litigation expenses make the entire action possible." *Online DVD*, 779 F.3d at 953.

17
18
19
20
21
22
23
24

Here, Class Counsel's unreimbursed expenses of $5,916,010.30 were reasonably incurred and necessary for the litigation of the case. Berman Decl. ¶¶ 35-44. Class Counsel advanced these expenses interest free and with no assurance of reimbursement. *Id*. Expert witnesses constitute the largest expenditures, $5,316,743.07, or 90 percent of all expenses incurred. *Id.* Exs. 5, 8. Expert analysis was critical to prosecuting this action and the comprehensive class certification reports prepared by Plaintiffs' four experts—spanning more than 700 pages—were a driver of the Settlement. Other notable expenses include the creation and maintenance of an electronic document

25
26
27
28

[10] These factors derive from the Ninth Circuit's decision in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975).

[11] *Kerr* Factors 6 and 10—the contingent nature of the fee and "desirability" of the case—have been questioned by the Supreme Court. *See Resurrection Bay Conserv. Alliance v. City of Seward*, 640 F.3d 1087, 1095 n.5 (9th Cir. 2011). Plaintiffs' foregoing summary accordingly omits these factors, as well as Factors 7 and 11—"time limitations imposed by the client or the circumstances" and "the nature and length of the professional relationship with the client"—which do not readily apply here.

database, which hosted the voluminous discovery record, and deposition costs. *Id.* ¶ 42.[12] This action could not have been litigated, much less to successful resolution, without these critical expenditures. *See id.* Class Counsel respectfully request that they be reimbursed in full.

**D.      Service Fees of $10,000 Are Warranted Given the Unusual Demands of this Case.**

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They serve to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. While service fees of $10,000 or more are often awarded in this judicial district,[13] Class Counsel are mindful that this Court generally awards lesser amounts. Class Counsel respectfully submit that several factors warrant an upward departure in this case.

*First*, with good reason, this Court has been skeptical of service fees that dwarf payments to rank-and-file class members, but that is not the situation here. Quite the opposite, some class members will receive payments exceeding $200,000, and hundreds will receive amounts greater than $20,000. *See* Berman Decl. ¶¶ 45-49. These sums substantially exceed what each class representative would recover *even if* $10,000 service fees are awarded. *See id.* The requested awards thus do not raise concerns of favoritism that can militate for reduced amounts. *See Bolton*, 2013 WL 5700403, at *4 (holding that because settlement involved "many relatively large awards, the $10,000 incentive award requested [did] not misalign the settlement interests").

*Second*, the class representatives here are not one-off consumers but rather app developers in an ongoing business relationship with Google. It is no small matter to sue a business partner, particularly when that partner is one of the world's most powerful corporations. Each class representative monetizes its apps through the Google Play store, and each had to overcome a fear of

---

[12] Invoices for these primary expense categories are appended to the Berman Declaration at Exhibits 6 and 7, and receipts for all expenses are available on request.

[13] *See, e.g., Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *15 (N.D. Cal. June 5, 2017) ($100,000 awards); *Grant-in-Aid Cap*, 2017 WL 6040065, at *11, *aff'd,* 768 F. App'x 651 (9th Cir. 2019*)* ($20,000 award); *McDonald v. CP OpCo, LLC*, 2019 WL 2088421, at *8 (N.D. Cal. May 13, 2019) ($10,000 award); *Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) ($10,000 award). Service awards of $5,000 were authorized in the Apple developer settlement, but the notice there set a $5,000 cap and class counsel was thus unable to request additional amounts that would have been justified based on the considerations below.

retaliation to pursue this litigation. *See* Czeslawski Decl. ¶ 10; Ellis Decl. ¶ 4; Scalise Decl. ¶ 5; Einwaechter Decl. ¶ 6. More than 47,000 developers stand to benefit from the Settlement—some in amounts exceeding $200,000—but only because the class representatives were willing to take perceived risks that others did not undertake. *See Nitsch*, 2017 WL 2423161, at *15 (holding that each class representatives' willingness to stand up "for the benefit of all absent class members," despite fear of retaliation, supported service fees of $100,000).[14]

*Third*, because the class representatives are businesses operating in the antitrust market alleged, the discovery burdens in this action were atypically onerous. As noted, Google served *71* document requests on three class representatives and *91* on another. Each class representative responded to *31* interrogatories (except Rescue Pets, which responded to 18). All told, class representative compiled and produced more than 46,000 documents spanning more than 74,000 pages. *See* Berman Decl. ¶ 17. Depositions were likewise unusually consequential and required extensive preparation sessions for the three representatives deposed. *See* Czeslawski Decl. ¶¶ 8-9; Ellis Decl. ¶¶ 10-11; Scalise Decl. ¶¶ 8-9. These demands were atop the ordinary class representative duties of conferring regularly with counsel to remain abreast of the litigation. In sum, the class representatives devoted more than 200 hours to this litigation, or 50 on average. *See* Czeslawski Decl. ¶ 9; Ellis Decl. ¶ 5; Scalise Decl. ¶ 10; Einwaechter Decl. ¶ 10. In consumer litigation, class representative discovery can be challenging, but rarely is it as burdensome and invasive as it was here.

In these unusual circumstances, and given the exceptional recovery this Settlement delivers, Class Counsel respectfully submit that service fees in the amount of $10,000 are appropriate.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order awarding $26 million in attorneys' fees, $5,916,010.30 in costs and expenses, and $10,000 service awards.

---

[14] Class Counsel do not suggest that Google would in fact retaliate against class representatives, but only that this was a concern held by the class representatives.

DATED:  March 1, 2023

HAGENS BERMAN SOBOL SHAPIRO LLP


By      */s/ Steve W. Berman*
   Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
Ted Wojcik (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com


Ben M. Harrington (SBN 313877)
Benjamin J. Siegel (SBN 256260)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
benh@hbsslaw.com
bens@hbsslaw.com


By *s/ Melinda R. Coolidge*
   Melinda R. Coolidge (*pro hac vice*)
Yelena W. Dewald (*pro hac vice*)
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200 (main)
Telephone: (202) 540-7144 (direct)
Facsimile:  (202) 540-7201
mcoolidge@hausfeld.com
ydewald@hausfeld.com


Kyle Geoffrey Bates (SBN 299114)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908 (main)
Facsimile:  (415) 358-4980
kbates@hausfeld.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Katie R. Beran (*pro hac vice*)
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270 (main)
Telephone: (267) 702-3215 (direct)
Facsimile:  (215) 985-3271
kberan@hausfeld.com

By  ___*/s/ Eamon P. Kelly*_____
        Eamon P. Kelly (*pro hac vice*)
Joseph M. Vanek (*pro hac vice*)
Alberto Rodriguez (*pro hac vice*)
**SPERLING & SLATER, LLC**
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile:  (312) 641-6492
jvanek@sperling-law.com
ekelly@sperling-law.com
arodriguez@sperling-law.com

*Interim Co-Lead Class Counsel and Proposed
Settlement Class Counsel*