# <u>Corrected Version of ECF No. 240-1</u>

**Corrected Declaration of Steve W. Berman in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, and Exhibits 4, 5 and 6 thereto**

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Eamon P. Kelly (*pro hac vice*)
ekelly@sperling-law.com
SPERLING & SLATER, LLC
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: 312-641-3200

*Co-Lead Interim Class Counsel for the
Proposed Class and Attorneys for Plaintiffs
Pure Sweat Basketball, Inc. and LittleHoots
LLC*

Melinda R. Coolidge (*pro hac vice*)
mcoolidge@hausfeld.com
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200

*Co-Lead Interim Class Counsel for the
Proposed Class and Attorneys for Plaintiffs
Peekya App Services, Inc. and Scaliso LLC*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY DEVELOPER ANTITRUST LITIGATION | Case No. 3:20-CV-05792-JD<br><br>**CORRECTED DECLARATION OF STEVE W. BERMAN IN SUPPORT OF DEVELOPER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**<br><br>Date:      May 18, 2023<br>Time:      10:00 a.m.<br>Judge:    Hon. James Donato<br>Location: Courtroom 11, 19th Floor |

1      I, STEVE W. BERMAN, declare as follows:

2          1.     I am an attorney duly licensed to practice law before this Court. I am a member of

3    the Washington Bar, and I have been admitted to this Court *pro hac vice*. I am the managing partner

4    of the law firm Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), co-lead Interim Class

5    Counsel for Developer Plaintiffs (ECF No. 79) and co-lead Class Counsel for the Settlement Class

6    (ECF No. 233). Based on personal knowledge or discussions with counsel in my firm of the matters

7    stated herein, if called upon, I could and would competently testify thereto.

8          2.     In this declaration, the term "Class Counsel" refers collectively to Hagens Berman

9    and the other co-lead Class Counsel—namely, Sperling & Slater, LLC ("Sperling & Slater") and

10   Hausfeld LLP ("Hausfeld")—as well as the Lewis Firm, which assisted on this matter. [1] Lead

11   Counsel for Sperling & Slater and Hausfeld have submitted separate declarations attaching relevant

12   billing and expense records for their firms, as has the administrator for the estate of Michael Lewis

13   (for the Lewis Firm). *See* Kelly Decl.; Coolidge Decl.; Lewis Decl. This declaration provides the

14   same information for my firm and, for the convenience of the Court, summarizes the combined

15   lodestar and expense information for all three firms serving as Class Counsel. This declaration also

16   provides an overview of (a) the action, (b) the work performed by Class Counsel, (c) the steps Class

17   Counsel took to ensure effective management of this complex litigation; and (d) the work

18   performed by the class representatives in support of this action.

19                            **I.     PROCEDURAL HISTORY**

20         3.     Class Counsel filed initial pleadings in August and September 2020 and, after

21   consolidation, *see* ECF No. 53, their first Consolidated Class Action Complaint on October 21,

22   2020. *See* ECF No. 56. Asserting claims under the Sherman Act and California's Unfair

23   Competition Law, Developer Plaintiffs alleged that Google monopolizes (or attempted to

24   monopolize) markets related to the distribution of Android OS apps and in-app products. Developer

25   Plaintiffs further alleged that Google unlawfully tied products in these two markets.

26

27         ─────────────────

28         [1] References to Class Counsel in this declaration refer to Class Counsel collectively, without distinguishing between the work performed by the three firms serving as Class Counsel.

4.      On November 10, 2020, the Court ordered that discovery in this action be coordinated with similar lawsuits brought by Epic Games (Case No. 20-cv-5671) and Consumer Plaintiffs (Case Nos. 20-cv-5761 & 20-cv-7079). *See* ECF No. 70. With discovery underway, Google moved to dismiss the First Consolidated Class Action Complaint on November 13, 2020. *See* ECF No. 71. After Developer Plaintiffs submitted joint (with Epic) and individual opposition briefs, *see* ECF Nos. 80 & 81, Developer Plaintiffs amended their Complaint, mooting the motion to dismiss. *See* ECF No. 129. Google did not renew its motion to dismiss as to the First Amended Consolidated Class Action Complaint, and instead Google filed an answer on October 11, 2021. *See* ECF No. 156.

5.      Attorneys General from 37 states also brought comparable monopolization and tying claims against Google on July 7, 2021, and their action was later coordinated with this one for pretrial purposes.

6.      Developer Plaintiffs filed the Second Amended Consolidated Class Action Complaint ("SAC")—the operative pleading—on December 3, 2021. *See* ECF Nos. 167, 179. Google again did not renew its motion to dismiss as to the Second Amended Consolidated Class Action Complaint. Google filed an answer on December 11, 2022. *See* ECF No. 189.

7.      On May 24, 2022, after extensive discovery detailed below, including the exchange of expert reports, Developer Plaintiffs and Google reached agreement on the principal terms of a settlement. The settlement was finalized on October 3, 2022 and preliminarily approved by this Court on December 1, 2022. *See* ECF No. 233.

## II.      THE WORK PEFORMED BY CLASS COUNSEL

8.      Class Counsel litigated this matter entirely on a contingency basis with no assurance of payment. Even for antitrust class actions, this was a factually and legally complex matter that demanded substantial attorney and staff resources. Class Counsel forwent other profitable work to ensure this matter was sufficiently staffed and vigorously prosecuted.

**A.      Class Counsel Conducted a Thorough Investigation to Prepare Detailed Pleadings.**

9.      Class Counsel's consolidated pleadings were predicated on extensive analysis of Google's conduct and applicable antitrust law. While Class Counsel filed the initial Consolidated

Complaint on October 2021, the underlying investigation dates to at least November 2018.

10.     Unlike Apple, which openly bars all competing app stores from operating on its devices, Google purports to operate an "open" Android platform on which apps can be readily obtained from stores that compete with its own Google Play store. The mechanisms through which Google has allegedly monopolized Android app and in-app product distribution are more subtle, sophisticated, and factually complex. Developing antitrust claims against Google thus required thorough investigation and analysis.

11.     The operative SAC leverages Class Counsel's investigation to walk methodically through the "thicket of contracts, incentive payments, and technological impediments" Google allegedly implemented to insulate itself from competition and secure monopolies in the markets for Android app and in-app product distribution. *See* ECF No. 179 at 19. Developer Plaintiffs' allegations are detailed, spanning nearly 100 pages, and leverage the discovery record that Class Counsel developed during the pleading stage.

12.     As a testament to its viability, Google elected to answer the SAC rather than renew a previously filed 12(b)(6) motion targeting the initial Complaint.

**B.     Class Counsel Engaged in Substantial Case Coordination to Achieve Efficiencies.**

13.     From the beginning of the case, Class Counsel sought to maximize efficiency and avoid duplication by coordinating discovery efforts with other plaintiff groups, including Epic, Consumer Plaintiffs and (later) litigating Attorneys General.[2] While the plaintiff groups shared many of the same overarching legal theories, there were points of departure and differing views on case strategy. Moving the case forward required active coordination and compromise, and Class Counsel worked diligently to broker solutions that would progress the case with minimal court intervention.

14.     To lay the groundwork for discovery, Class Counsel worked with co-plaintiffs and Google to negotiate a set of detailed protocols, including ESI Protocols (ECF NO. 69), Coordinated

---

[2] Match Group joined the action after Developer Plaintiffs and Google had reached a settlement.

Discovery Protocols (ECF No. 70), a Protective Order and amendments thereto (ECF Nos. 111, 162

177, 211), a Supplemental Protective Order and amendments thereto (ECF Nos. 117, 163, 210),

Expert Discovery Protocols (ECF No. 125), a Supplemental Protective Order Governing Source

Code and amendments thereto (ECF Nos. 199, 209), Deposition Protocols (ECF No. 176), as well

as a Privilege Log Agreement that was not filed in the case. While these protocols were generally

submitted to the Court in stipulated form, reaching stipulations often required prolonged

negotiation.

15.     Class Counsel also played an active role in submitting more than 8 joint status

submissions, while participating in at least ten case management conferences with the Court.

**C.     Class Counsel Obtained Substantial Discovery on Behalf of the Settlement Class.**

16.     Often over initial Google objections, Class Counsel succeeded in obtaining broad

discovery and devoted substantial resources to analyzing the terabytes of information produced.

**1.     Written and Document Discovery**

17.     Working collaboratively with other plaintiff groups, Class Counsel propounded

detailed discovery, including 253 document requests, interrogatories, and approximately 45 third-

party subpoenas for documents and/or testimony. This case also involved substantial written

discovery of named plaintiffs represented by Class Counsel. Specifically, Google served 71

document requests on three named plaintiffs, and 91 on another. Google also served 18 substantive

interrogatories and 13 interrogatories concerning document preservation. Class representatives

produced more than 46,000 documents in total, spanning more than 74,000 pages. All parties'

discovery requests were extensively negotiated to avoid burdening the Court with unnecessary

discovery motions.

18.     Data discovery was also critical to this antitrust matter. Working with consultants,

Class Counsel extensively negotiated the parameters of Google's transactional and revenue data

productions.

19.     Class Counsel engaged in substantial efforts to review Google's privilege logs

regarding documents withheld from the productions, and ultimately challenged large swaths of

privilege log entries, including numerous entries that were later revised by Google or for which the

1    documents were later produced.

2        20.     All told, the parties' extensive written discovery requests yielded a massive

3    discovery record, even for a case of this size and complexity. At the filing of Developer Plaintiffs'

4    preliminary approval motion, more than 5.7 million documents and 28 million pages had been

5    produced. Google's transactional and revenue datasets, essential for expert analyses, encompassed

6    nearly 11 terabytes. Class Counsel devoted thousands of attorney hours to reviewing and analyzing

7    this body of written discovery. In order to accomplish such a massive review on an expedited

8    timeline, Class Counsel managed a large document review team and led regular meetings to ensure

9    reviewers received adequate guidance and critical issues were promptly identified and elevated to

10    appropriate team members.

11        **2.**       **Fact and 30(b)(6) Depositions.**

12        21.     At the time of Developer Plaintiffs' motion for preliminary approval, the parties had

13    taken 45 depositions, with Class Counsel taking or defending 26 of these. The deponents included

14    high-level Google officials with responsibilities for the Google Play store. Three of the four

15    Developer Plaintiff class representatives were deposed, both in an individual capacity and as

16    30(b)(6) representatives for their respective companies. Class Counsel defended these depositions

17    and spent substantial time preparing the witnesses. Working collaboratively with other plaintiff

18    groups, Class Counsel also served a 30(b)(6) notice on Google with 35 detailed topics. Google

19    spread these topics over several witnesses, who Class Counsel deposed both in individual and in a

20    30(b)(6) capacity.

21        **3.**       **Expert Discovery**

22        22.     Over the course of this litigation, Developer Plaintiffs' experts provided critical

23    support. Developer Plaintiffs' testifying experts included two distinguished economists (David S.

24    Sibley, Professor of Economics at the University of Texas, and Dr. Michael A. Williams, Managing

25    Director at Berkeley Research Group), one accounting expert (Kevin Kreitzman), and one

26    technology expert (Douglas C. Schmidt, Professor of Engineering and Computer Science at

27    Vanderbilt University).

28        23.     These experts' work culminated in comprehensive opening and rebuttal reports

served in connection with class certification. The reports totaled 723 pages, exclusive of backups. Professor Sibley addressed liability issues, including the relevant antitrust market and common evidence of Google's market power and monopolization conduct. Dr. Williams addressed antitrust impact and constructed two classwide damages models. Mr. Kreitzman analyzed Google's financial records to estimate Google Play's economic profits, a building block of Dr. Williams's work. Finally, Professor Schmidt analyzed the technological aspects of Google's alleged monopolization conduct and proffered defenses. After reports were submitted, three of Developer Plaintiffs' experts were deposed by seasoned antitrust counsel. Class Counsel defended those depositions and conducted numerous preparation sessions in advance.

24. Over the course of the litigation, Developer Plaintiffs' experts provided insights into the cutting-edge technology markets at issue, informing Plaintiffs' legal analyses and the discovery (written and via deposition) taken.

### III. HAGENS BERMAN'S LODESTAR AND EXPENSES

25. Hagens Berman's total lodestar for professional and attorney time billed to this case from November 26, 2018 to December 30, 2022, measured at current rates, is $5,260,068.50. During this period, professionals at Hagens Berman devoted 10,916.6 hours in total to this litigation. Class Counsel are not seeking attorneys' fees for any time billed in connection with drafting this motion.

26. In accordance with this Court's December 11, 2020 Order, my colleagues Rob Lopez and Ben Harrington reviewed monthly time invoices of billing professionals to ensure that Hagens Berman's entries complied with this Court's guidance. Entries for potentially duplicative, less efficient, or non-compensable time were removed and are not included in the lodestar figure set forth immediately above, or in Hagens Berman's contemporaneous billing records submitted in connection with this application.

27. Hagens Berman's hourly rates are based on regular and ongoing monitoring of prevailing market rates in the San Francisco Bay Area for attorneys of comparable skill, experience, and qualifications. Hagens Berman's hourly rates and rate structure have been approved by numerous courts, including in the Northern District of California. On February 21, 2017, Judge

1   Wilken held, in approving of the rates of Hagens Berman, that the firm's "rates are well within the

2   range of $200 to $1,080 charged by attorneys in California in 2015." *In re Nat'l Collegiate Athletic*

3   *Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at

4   *8-*9 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019); *see also In re Animation*

5   *Workers Antitrust Litig.*, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (hourly rates for firms

6   including Hagens Berman that ranged from $275 to $1,200 were "fair, reasonable, and market-

7   based, particularly for the 'relevant community' in which counsel work").

8   28.   A summary of the Hagens Berman timekeepers who worked on this litigation

9   between November 26, 2018 to December 30, 2022, the number of hours dedicated to particular

10   tasks in this litigation, their total hours, and their total lodestar based on current and historical

11   billing rates, is attached as **Exhibit 1**.

12   29.   Detailed and contemporaneously prepared time records from November 26, 2018 to

13   December 30, 2022 supporting this summary are attached as **Exhibit 2** to this declaration. The time

14   records included in Exhibit 2 are arranged chronologically, with all time entries postdating the

15   Court's December 11, 2020 Order included as monthly invoices in accordance with the Court's

16   instructions. Time entries predating the Court's December 11, 2020 Order were also audited to

17   eliminate any duplicative, inefficient or non-compensable time, and are included in Exhibit 2

18   chronologically.

19   30.   A summary of the costs and expenses that Hagens Berman has paid to date in this

20   litigation is attached as **Exhibit 3**. Apart from contributions to the Litigation Fund, Hagens

21   Berman's separate expenses total $31,577.22. The expenses reflected in **Exhibit 3** are prepared

22   from expense vouchers, receipts, and bank records, and thus represent an accurate recordation of

23   the expenses incurred. Hagens Berman can produce a copy of these expense vouchers, receipts, and

24   bank records upon request of the Court.

25   31.   I have reviewed the time and expenses reported by Hagens Berman in this case that

26   are included in this declaration and its exhibits, and I affirm that they are true and accurate.

27   32.   In addition to the separate expenses of Hagens Berman for which we seek

28   reimbursement, Hagens Berman also contributed $1,886,000.00 to a Litigation Fund maintained in

this case. *See* **Exhibit 3**. The expenses paid from this Litigation Fund for which Class Counsel seek

reimbursement are described *infra*, in Section V.A.1.

## IV.   CLASS COUNSEL'S COMBINED LODESTAR

33.    Class Counsel collectively invested 34,430.9 hours in this matter for a combined

lodestar of $18,469,866.75. *See* **Exhibit 4**.

34.    These combined totals are based on the hours and hourly rates identified in this

Declaration (for Hagens Berman), the Kelly Declaration (for Sperling & Slater), the Coolidge

Declaration (for Hausfeld), and the Lewis Declaration (for the Lewis Firm). Class Counsel's

combined lodestar for attorney and professional time billed to this case is calculated based on the

current hourly rates of each firm.

## V.   SUMMARY OF CLASS COUNSEL'S COMBINED EXPENSES

**A.    Summary of Expenses.**

35.    In the accompanying motion, Class Counsel respectfully request reimbursement of

litigation costs and expenses they incurred on behalf of Developer Plaintiffs in the amount of

$5,916,010.30. Class Counsel's unreimbursed expenses were reasonably incurred, necessary for the

litigation of the case, and Class Counsel advanced these expenses interest free with no assurance

that they would ever be reimbursed.

36.    Throughout the litigation, Class Counsel has prosecuted this case on a contingent

basis, funding the case out-of-pocket, without the use of outside litigation funders.

37.    The total amount of expenses requested are based on amounts (a) paid from the

Litigation Fund and (b) paid directly by Class Counsel. These categories are addressed below.

**1.    Expense Paid from The Litigation Fund.**

38.    The Litigation Fund was 100% financed by the law firms prosecuting this case

(Class Counsel) and was maintained by Hagens Berman.

39.    As reflected in **Exhibit 5**, the litigation costs and expenses paid from the Litigation

Fund total $5,672,463.89.

40.    Because the Litigation Fund constitutes a large portion of the total expenses for

which Class Counsel seek reimbursement, and in the interests of transparency, Class Counsel has

provided invoices for all categories of expenses in the Litigation Fund. These are compiled

chronologically in **Exhibit 6** (expert invoices) and **Exhibit 7** (all other Litigation Fund invoices).

41.     The largest expense category in the Litigation Fund was testifying and consulting

experts, including economists at the Berkeley Research Group, who provided essential assistance

throughout the litigation, prepared extensive reports supporting class certification, and testified at

deposition. As addressed above in Section II.C.3, the work of Developer Plaintiffs' experts was

instrumental in progressing this case and positioning Developer Plaintiffs to secure a substantial

settlement. In total, Class Counsel paid $5,316,743.07 in expert fees from the Litigation Fund.

42.     Another large category of expenses paid from the Litigation Fund was document and

data hosting services. After comparing pricing and services across vendors, Class Counsel selected

Everlaw as its document vendor for this matter. Class Counsel also utilized Berkeley Research

Group's services to store certain data produced in this matter in the most cost-effective manner. In

total, Class Counsel has paid $355,720.82 in document and data storage services from the Litigation

Fund.

### 2.      Expenses Paid Directly by Class Counsel.

43.     Of the total expenses incurred, $243,546.41 of those expenses were paid directly by

individual Class Counsel firms to vendors, as shown in **Exhibit 8**, which breaks down the expenses

sought by Class Counsel by the individual firm that paid the expense. These are separate from the

funds each firm contributed to the Litigation Fund.

44.     Each firm has also provided a separate summary of the expenses it incurred and paid

individually. *See* Exhibit 3 to this declaration (for Hagens Berman); Kelly Declaration Exhibit C

(for Sperling & Slater) and Coolidge Declaration Exhibit D (for Hausfeld). These summaries were

created from receipts, invoices and other records that can be provided to the Court on request.

### VI.      CLASS REPRESENTATIVE SERVICE AWARDS

45.     The four Class Representatives in this litigation—Pure Sweat Basketball,

LittleHoots LLC, Peekya App Services, and Scalisco, LLC—have remained actively involved

throughout the litigation of this case.

46.     Plaintiffs request service awards for these class representatives in the amount of

$10,000 each ($40,000 in total).

47.    In this case, the $10,000 service awards are well-deserved. The class representatives are current Android app developers who took a significant risk by bringing an action in their names against one of the largest corporations in the world. As the operator of the largest Android app store, Google wields enormous power over Android app developers. Standing up to serve as a class representative in this matter took courage. The settlement, and the benefits it secures for the larger Settlement Class, could not have been achieved without the efforts of the class representatives.

48.    Each class representative devoted substantial time to this case. Google served 71 document requests on three of the representatives, and 91 on another. Because the class representatives operate businesses, and given the extent of Google's requests, the representatives' document productions were unusually large, spanning more than 74,000 pages collectively. Three of the four class representatives were deposed, both in an individual and 30(b)(6) capacity, and spent substantial time with Class Counsel preparing for their depositions. The class representatives also provided valuable input throughout the case, including by reviewing pleadings.

49.    Given that this settlement will deliver relatively large payments to individual class members, service fees of $10,000 would not result in the class representatives receiving an outsized portion of the entire settlement fund. In combination with the distributions they are entitled to receive under the settlement's pro rata distribution scheme, the class representatives would receive (with $10,000 service fees) total awards ranging from $10,250 to approximately $11,000. By contrast, some class members stand to receive payments exceeding $200,000 from the settlement fund. Hundreds will receive payments above $20,000. These large awards, and the benefits of the settlement as a whole, were brought about through the service of the class representatives.

## VII.    EXPERTISE AND EXPERIENCE OF CORE HAGENS BERMAN TEAM MEMBERS WORKING ON THIS LITIGATION

50.    The expertise and experience of lead counsel is another important factor in setting a fair fee. As demonstrated by our firm résumé, attached hereto as **Exhibit 9**, Hagens Berman is among the most experienced and skilled practitioners in the complex litigation field, and has a long and successful track record in such cases. Hagens Berman is a nationally recognized law firm, with

offices in Berkeley, Seattle, Boston, Chicago, Los Angeles, Washington D.C., and Phoenix. We have been consistently rated by the National Law Journal in the top ten of plaintiffs' firms in the country. The firm has extensive experience litigating complex class actions asserting claims of securities, investment fraud, product liability, tort, antitrust, consumer fraud, employment, environmental, and ERISA cases. Moreover, the fact that Hagens Berman has demonstrated a willingness and ability to prosecute complex cases such as this was undoubtedly a factor that encouraged Google to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the Class. My team paid attention to ensuring that each Hagens Berman attorney on the file had specific areas of focus; that there was not duplication of efforts, especially among higher billers; and that projects were assigned to experienced lawyers with depth in the field who could effectively and efficiently execute the amount of work this case demanded.

51. Among other complex antitrust matters, Hagens Berman served as lead counsel in *Cameron v. Apple Inc.*, 19-cv-3074 (N.D. Cal.), which involved comparable app developer claims against Apple. The *Cameron* matter resulted in a $100 million settlement coupled with injunctive relief for a class of iOS app developers. Hagens Berman's work on the *Cameron* matter was honored with the American Antitrust Institute's 2022 award for Outstanding Antitrust Litigation Achievement in Private Law Practice.

52. In addition to biographies included in the attached firm résumé, below is a summary of the experience of the core team members:

53. *Steve Berman*, one of the founding partners of Hagens Berman, is widely regarded as one of the most effective class action attorneys in the country. In *In re NCAA Grant-in-Aid Cap Antitrust Litigation*, Mr. Berman led Hagens Berman's trial team in a 10-day trial in September 2019 before former Chief Judge Claudia Wilken of the Northern District of California, successfully obtaining an injunction against the NCAA relating to caps on compensation available to college student-athletes. Mr. Berman questioned numerous witnesses and gave the closing argument at trial. The decision and injunction was upheld, unanimously, by the Supreme Court. *See NCAA v. Alston*, 141 U.S. 1241 (2021). Prior to trial, Mr. Berman recovered a $208 million settlement for the class,

but continued to litigate on behalf of the class for the injunction affirmed by the Supreme Court. He served as lead counsel for 13 states in the tobacco litigation, leading to a settlement of $206 billion – the largest in history. He, along with Marc Seltzer, was appointed *sua sponte* by Judge James V. Selna of the Central District of California to serve as co-lead counsel in *In re Toyota Motor Corp. Unintended Acceleration*. The $1.6 billion settlement was then the largest auto settlement, both in terms of class members and recovery, in U.S. history. Mr. Berman was sole lead class counsel in *In re: Stericycle, Inc., Steri-Safe Contract Litigation*, Case No. 13 C 5795, MDL No. 2455 (D. N.D. Ill.) where the class obtained $295 million in settlements and injunctive relief. Judge Shadur stated in his preliminary approval order that the settlement demonstrated the "type of high quality work product that this Court anticipated when it designated Hagens Berman and its lead partner Steve Berman as class counsel." Memorandum and Order, *In re: Stericycle, Inc.*, MDL No. 2455 (October 26, 2017), ECF No. 310 at 3. He has served as lead or co-lead counsel in antitrust, securities, consumer, and products liability litigation, as well as other complex litigation, including MDL actions, throughout the country. In addition, Mr. Berman was appointed to the plaintiffs' steering committee by Judge Breyer in the *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liability Litig.*, No. 15-md-02672-CRB (N.D. Cal.) and lead counsel for the franchise VW dealers who settled for $1.2 billion. Mr. Berman has received countless awards and recognition for his work, including the National Law Journal's 2021 recognition of him as a Sports & Entertainment Law Trailblazer, the American Antitrust Institute recognizing him in 2021, 2019, and 2018 as an Honoree for Outstanding Antitrust Litigation Achievement, and being named as a Class Action MVP of the Year for 2016 through 2020 by Law360. Mr. Berman was also recently named to the Lawdragon Hall of Fame for his career achievements. Mr. Berman graduated from the University of Chicago Law School in 1980.

54.     *Robert Lopez* is a partner with Hagens Berman. He has almost three decades of experience in complex commercial and consumer litigation. With a keen interest in matters involving technology, Mr. Lopez has been a key team member in the firm's *Carrier iQ* MDL,[3]

---

[3] Hagens Berman was Co-Lead Class Counsel in this very complicated matter, wherein MDL proceedings followed from the filing of 70+ cases in districts around the country against numerous

Google AdSense ex-publisher,[4] and Tesla Autopilot matters,[5] all of which settled on nationwide classwide bases, to name a recent few. Mr. Lopez also played a leading role in *Cameron v. Apple Inc.*, 19-cv-3074 (N.D. Cal.), which involved comparable app developer claims against Apple and resulted in a $100 million settlement coupled with injunctive relief. All of these matters involved the production of highly sensitive and complex material, which Mr. Lopez took the lead in discovering and analyzing. Also, the former two matters also entailed intensive legal and factual analysis more broadly, together with commensurately complicated briefing and hearings.

55.    *Ben Harrington* is a partner with Hagens Berman specializing in antitrust and class action matters. Mr. Harrington has experience representing both plaintiffs and defendants in all stages of litigation, including in *Cameron v. Apple Inc.*, 19-cv-3074, (N.D. Cal.), *In Re Rail Freight Fuel Surcharge Antitrust Litigation*, 07-mc-00489 (D.D.C.), *Mackmin v. Visa Inc.*, 11-cv-01831 (D.D.C) and *Laumann v. National Hockey League et al.*, 12-cv-2065 (S.D.N.Y.). Mr. Harrington was named a 2020 "Rising Star" by Super Lawyers. After graduating summa cum laude from Hastings College of the Law, Mr. Harrington completed clerkships with the Honorable Harris Hartz (Tenth Circuit) and the Honorable Nina Gershon (Eastern District of New York).

56.    *Christopher O'Hara* is a partner with Hagens Berman with a long history in working on antitrust class actions and settlements. Mr. O'Hara plays a key role in working with and overseeing notice and claims administrators on the firm's class settlements and class notice programs, including antitrust actions such as *Cameron v. Apple Inc.*, 19-cv-3074 (N.D. Cal. 2022); *In re Electronic Books Antitrust Litig.*, No. 11-mc-02293 (S.D.N.Y.); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143 RS (N.D. Cal.); and *In re Animation Workers Antitrust Litig.*, No. 14-CV-04062-LHK (N.D. Cal.). An active member of the firm's Microsoft defense team, Mr.

---

big-tech companies including HTC, Samsung, Motorola, and LG. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.*, Case No. 14-md-02330 (N.D. Cal.), ECF Nos. 99 and 100 (appointing Hagens Berman co-lead counsel in multidistrict litigation).

[4] *See, e.g.*, *Free Range Content, Inc. v. Google LLC*, Case No. 14-cv-02329 (N.D. Cal.), ECF No. 286 (Order Granting Plaintiffs' Motion for Final Approval of Settlement).

[5] *See, e.g.*, *Sheikh v. Tesla, Inc.*, Case No. 17-cv-02193 (N.D. Cal.), ECF No. 71 (Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement).

1   O'Hara has spent the past 17 years working for and advising Microsoft in 20 state antitrust class

2   action lawsuits and settlements around the country. Mr. O'Hara began his career with the firm as a

3   Special Assistant Attorney General for 13 states, working on consumer protection and antitrust

4   claims in the landmark State Tobacco Litigation, which resulted in the $206 billion Tobacco Master

5   Settlement Agreement, the largest settlement in world history. Named a Rising Star in 2003, Mr.

6   O'Hara graduated from Seattle University School of Law, *cum laude*, in 1993.

7           57.     *Ronnie Spiegel* was a partner with Hagens Berman with extensive expertise in

8   antitrust class actions and foreign language discovery. Ms. Spiegel worked as a key member of the

9   litigation and trial teams in a number of successful cases in the Northern District of California,

10  including *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-01486-PHJ

11  (N.D. Cal.); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819-CW

12  (N.D. Cal.); *In re TFT Flat Panel (LCD) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.); and *In*

13  *re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-SC (N.D. Cal.). She has particular

14  expertise in managing large-scale foreign discovery and foreign language review teams, as well as

15  in managing document translation and the translation objection process. Ms. Spiegel is also a key

16  member of the litigation team for *In re Automotive Parts Antitrust Litigation*, which is comprised of

17  over 40 separate antitrust actions and has generated nearly $1billion in collective settlements for the

18  end-payor plaintiff classes to date. Ms. Spiegel graduated from Temple University's Beasley

19  School of Law in 1994, where she was a member of the Temple Law Review, and Temple Law

20  Review editorial board.

21          58.     *Benjamin Siegel* is Of Counsel in Hagens Berman's Berkeley office with significant

22  experience in antitrust class actions. He is a 2007 graduate of The University of Texas School of

23  Law, where he was an Articles Editor of the Texas Law Review, and the University of Texas

24  Lyndon B. Johnson School of Public Affairs, graduating first in his class. After law school, Mr.

25  Siegel was a judicial law clerk to the Honorable Thomas M. Reavley of the United States Court of

26  Appeals for the Fifth Circuit. He was admitted to the State Bar of California in 2008 and has been

27  admitted to practice before the courts of the State of California, the Northern District of California,

28  the Eastern District of California, and the Ninth Circuit Court of Appeals. Since joining the firm,

Mr. Siegel has had a practice focused on antitrust class actions and is a member of the Hagens Berman teams in *Cameron v. Apple Inc.*, 19-cv-3074 (N.D. Cal.); *In re Resistors Antitrust Litigation*, No. 15-cv-03820 (N.D. Cal.); *In re Optical Disk Drive Antitrust Litigation,* No. 10-md-02143 (N.D. Cal.); *Mackmin v. Visa Inc.*, No. 11-cv-1831 (D.D.C.); *In re College Athlete NIL Litigation*, No. 20-cv-03919 (N.D. Cal.); and *In re NCAA Grant-In-Aid Cap Antitrust Litig*ation, No. 14-md-02541 (N.D. Cal.). In the latter case, Mr. Siegel was part of the team that successfully defended its trial win before the Supreme Court and received the American Law Institute's award for Outstanding Antitrust Litigation Achievement in Private Law Practice. In 2018, he was named one of Super Lawyers' "Rising Stars."

59.     *Ted Wojcik* is an associate at Hagens Berman who has worked on a number of antitrust and complex class action matters, including *Cameron v. Apple Inc.*, 19-cv-3074 (N.D. Cal.) and *Snow v. Align Tech.*, No. 21-cv-3269 (N.D. Cal.). Mr. Wojcik is a 2015 graduate of Yale Law School. He clerked for Judge Marjorie Allard of the Alaska Court of Appeals and the Honorable Mark H. Cohen of the Northern District of Georgia.

60.     *Stephanie Verdoia* is an associate at Hagens Berman who specializes in class actions and sports litigation. Ms. Verdoia is a member of the Hagens Berman team litigating *In re College Athlete NIL Litigation*, No. 20-cv-03919 (N.D. Cal.) and *In re Insulin Pricing Litigation*, No. 17-cv-00699 (D.N.J.). Ms. Verdoia is a 2021 graduate of the University of Washington School of Law, where she was a member of The Order of the Barristers.

61.     *Brian Miller* has been a paralegal in Hagens Berman's Berkeley office since 2009, managing complex antitrust class actions in this district including *Pecover v. Electronic Arts, Inc.*, No. 08-cv-02820 CW (N.D. Cal.); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS (N.D. Cal.); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-2541-CW (N.D. Cal.); *In re Animation Workers Antitrust Litig.*, No. 14-cv-4062-LHK (N.D. Cal.); *Edwards v. National Milk Producers Federation*, No. 11-cv-4766-JSW (N.D. Cal.); *In re Resistors Antitrust Litig.*, No. 15-cv-3820-JD (N.D. Cal.); *In re Lithium-Ion Batteries Antitrust Litig.*, No. 13-md-02420 (N.D. Cal.); *In re College Athlete NIL Litigation*, No. 20-cv-03919 (N.D. Cal.); as well as *In re Electronic Books Antitrust Litig.*, No. 11-mc-02293 (S.D.N.Y.). Prior to

joining Hagens Berman, he was a case manager at an intellectual property litigation firm for twelve years, specializing in complex patent litigation and amassed extensive trial experience in districts across the country and the International Trade Commission.

62.     *Chan (Chanyarak) Lovell* has been a Paralegal Assistant at Hagens Berman since 2012. Her duties include gathering documents and preparing deposition files, and organizing key document charts, folders, and data entries for antitrust class actions including *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-md-1917-SC (N.D. Cal.); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143 RS (N.D. Cal.); *In re Resistors Antitrust Litig.*, No. 15-cv-3820-JD (N.D. Cal.); and *In re Automotive Parts Antitrust Litig.* No. 12-md-02311 (E.D. Mich.). She also assists in searching for, gathering, organizing, indexing document sets and collections for use by attorneys, and formatting documents for use as exhibits which includes Excel originals and foreign language documents. Prior to joining Hagens Berman, she was an Instructional Technician at Edmonds Community College for three years and IT/AT/Database Coordinator at Disability Resource Connection for three and a half years. She graduated in B.B.A, Business Computer Administration at the University of Bangkok, Thailand.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 1st day of March, 2023, at Seattle, Washington.

                                    *s/ Steve W. Berman*
                                    STEVE W. BERMAN

# <u>CORRECTED EXHIBIT 4</u>

**to Declaration of Steve W. Berman in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards**

**EXHIBIT 4 [Corrected]**

**Lodestar Summary – All Firms**

| Firm | Hours | Lodestar |
|---|---|---|
| Hagens Berman Sobol Shapiro LLP | 10,916.60 | $5,260,068.50 |
| Sperling & Slater, LLC | 11,272.40 | $5,160,438.25 |
| Hausfeld LLP | 11,796.90 | $7,688,910.00 |
| Lewis Law Firm | 445.00 | $360,450.00 |
| **Total** | **34,430.90** | **$18,469,866.75** |

# <u>CORRECTED EXHIBIT 5</u>

**to Declaration of Steve W. Berman in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards**

EXHIBIT 5 [Corrected]

Litigation Fund Expenses – Summary

| Expense | Amount |
|---|---|
| Expert Fees | $5,316,743.07 |
| Document Hosting Fees (Everlaw) | $355,720.82 |
| Total | **$5,672,463.89** |

# <u>CORRECTED EXHIBIT 6</u>

**To Declaration of Steve W. Berman in Support of Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards**

**[submitted for *in camera* review]**