1
2
3
4
5
6
7
8



**FILED**

MAY 09 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

9  Grace Tang
   PO Box 691543
10  Stockton, CA 95269

11  Class Member
12  *Pro Per*

13              UNITED STATES DISTRICT COURT
14            NORTHERN DISTRICT OF CALIFORNIA
15               SAN FRANCISCO DIVISION

16

17  IN RE GOOGLE PLAY DEVELOPER          Case No. 3:20-cv-05792-JD
18  ANTITRUST LITIGATION

19

20                                       **MEMORANDUM OF LAW**
21                                       **OBJECTION TO THE**
                                         **SETTLEMENT**
22  *Related Actions:*
    *Epic Games, Inc. v. Google LLC,*
23  *No. 3:20-cv-5671-JD*
24  *In re Google Play Consumer Antitrust*
25  *Litigation,* No. 3:20-cv-5761-JD
    *In re* Google LLC Antitrust Litigation*
26  *Litigation,* No. 3:21-md-02981-JD
27
28

1

**INTRODUCTION**

2        Plaintiffs on their own behalf and that of all similarly situated U.S. Android OS

3  application developers ("Class"), files this class-action complaint against Google LLC, Google

4  Ireland Limited, Google Commerce Limited, Google Asia Pacific PTE. Ltd. and Google Payment

5  Corp. ("Defendants") for violations of the Sherman and Clayton Act, Cartwright Act, and Unfair

6  Competition Law. A preliminary settlement has been reached. The Amended Settlement

7  Agreement and Release was filed on October 12th, 2022 ("Settlement Agreement").

8        Class Member Grace Tang ("Tang") is a member of the Class, submits this

9  memorandum of law in support of her Objection to the Settlement. Tang alleges the following (a)

10  upon personal knowledge with respect to the matters pertaining to Plaintiff; (b); upon professional

11  knowledge with respect to the matters pertaining to the Class; (c) upon information and belief

12  with respect to all other matters, based upon, among other things, the investigations undertaken by

13  Class's counsel; (d) and upon the attached Declaration of Grace Tang.

14

**STATEMENT OF FACTS**

15

**Google unfairly suspended six of Tang's Android applications without justification**

16        Tang is the developer of TryOnApps and CojoMedia's Android applications. Tang have

17  developed more than 15 Android applications and published them via Google Play Store between

18  2011 and 2023. Google Play Store suspended and removed six of her Android applications via

19  Google Play Store without justification.

20

**Google's unfair and predatory business practices**

21        Tang has filed patent applications and received patents for the unique outfit methods

22  she created and used in her Android applications.

23        Google abruptly and unfairly suspended her Android applications in the Google Play

24  Store to clear the market and eliminate any potential competition from TryOnApps for its

25  Augmented Reality framework (ARCore).

26

**Google unfairly blocked TryOnApps trademark in App Search via Google Play**

27

**Store**

28

1   Google used its monopoly power in App Search via Google Play Store, blocked Tang's

2   Android applications from being discovered or downloaded by app users. When users type in

3   the word TryOnApps in the search box of Google Play on their Android phones and tablets, the

4   search results do not display any of TryOnApps' Android applications.

5       When users type in keywords such as virtual outfit or virtual decoration in the

6   search box of Google Play Store on their Android phones and tablets, the search results do not

7   display any of TryOnApps' Android virtual outfit applications.

8       Google uses it monopoly power in App Search via Google Play Store, blocked

9   TryOnApps' Android applications from being discovered by app users, essentially blocked

10   TryOnApps' Android applications from being found or downloaded by app users.

11   **Google unfairly filtered TryOnApps' emails via GMAIL**

12       Google uses its monopoly power in Gmail to automatically filter emails from

13   tryonapps.com as spam emails. Google blocked TryOnApps' emails from being delivered to

14   the Gmail recipients' inboxes, cut off the email communicate of TryOnApps to its business

15   associations and app users who use Gmail.

16   **Google unfairly blacklisted TryOnApps.com domain name**

17       Google uses its monopoly power in domain name validation service to blacklist

18   TryOnApps.com domain name, blocking TryOnApps from being access by the people via the

19   internet.

20   **Google unfairly used Google Analytics to collect data from TryOnApps' website**

21       Google unfairly used Google Analytics to collect data from TryOnApps' website.

22   TryOnApps.com website was targeted and went through series of cyber attacks, some of the

23   attacks were found originated from Google's servers.

24   **Google's Unfair and Predatory Business Practices**

25       Google uses monopoly power in app distribution, app search via Google Play Store,

26   email services, website analytic service, domain name validation service and more, to destroy

27   any potential competition from TryOnApps.

28       Pursuant to CAL. BUS. & PROF. CODE §§ 17040 ET SEQ, it is unlawful for any

1   person engaged in the production, manufacture, distribution or sale of any article or product of

2   general use or consumption, with intent to destroy the competition of any regular established

3   dealer in such article or product, or to prevent the competition of any person who in good faith,

4   intends and attempts to become such dealer, to create locality discriminations.

5         Tang has suffered damages arising from Google's unfair and unlawful practices.

6   Because of Google's unlawful practices, all fifteen Android applications that her published via

7   Google Play Store between 2011 and 2023 are blocked from app users via Google Play. Six of

8   the Android applications were suspended and removed via Google Play without justification.

9   **Google unfairly uses Google Analytics to collect data from websites**

10        Google aggressively promote Google Analytics to web developers, making

11  fraudulent representation that it will help improving the website's performance, making the

12  website search engine optimization friendly. Google unfairly uses Google Analytics to collect

13  data from websites and gain deep insights of the businesses and organizations. Google use

14  these insights to maintain its monopoly power.

15        Whenever a user visits a website that is using Google Analytics and Google tools,

16  Google automatically collects the data from that user, including the user's IP address, web

17  browser type, the links the user clicks on the website and other user information.

18        It is very easy to find out whether a website uses Google Analytics using the

19  following steps:

20      1. Open a web browser and enter the website url.

21      2. Right click on the web browser (Firefox, Google Chrome, Opera).

22      3. Select "Inspect".

23      4. Click the "Network" tab.

24      5. Refresh the webpage.

25

26

27

28

1    Enclosed are a some of the websites that are found using Google Analytics using

2    this method.

3

4

5

6

7

8

9

10

11

12

13

14



15

16    https://home.treasury.gov

17

18

19

20

21

22

23

24

25

26

27



28    https://www.sec.gov/

1

2

3

4

5

6

7

8

9

10

11



https://www.tradingview.com

12

13

14



15

16

17

18

19

https://www.fidelity.com/

20

21

22

23

24

25

26

27

28

# Google unlawfully forced Android app developers to defer the signing of their Android apps to Google Play

Google requires that, after August 2021, all new Android apps can only be published with the Android App Bundle on Google Play, developers have to defer the APK generation and signing to Google Play. [1]

If an Android app developer refuses to defer the signing to Google Play, he/she can not publish any new Android applications via Google Play Store.

Google Play is the only major Android app distributor in US, many developers were forced to defer the signing to Google Play to publish their apps.

For Android applications published before August 2021, developers may choose to publish with the Android App Bundle or with the APK file.

Android Developers  >  Docs  >  Guides                                                   Was this helpful?  👍  👎

# About Android App Bundles  🗅 ˅

⭐ **Important:** From August 2021, new apps are required to publish with the Android App Bundle on Google Play. New apps larger than 150 MB are now supported by either Play Feature Delivery or Play Asset Delivery.

An *Android App Bundle* is a publishing format that includes all your app's compiled code and resources, and  APK generation and signing to Google Play.

1.  https://developer.android.com/guide/app-bundle/

1    **ARGUMENT IN SUPPORT OF THE OBJECTION TO THE SETTLEMENT**

2    Each Android App Bundle has multiple components, including the resource files

3    (App logo, images, and multi-media files), library files, app source code, and other

4    components. The APK generation process combines the components, packaging and compress

5    them into one .apk file. The signing of the APK file encrypts the file using a keyset, making the

6    app ready for app distribution and installation.

7    By forcing Android app developers defer the APK generation and signing to Google

8    Play, Google Play gained full control of the software packaging and distribution process of the

9    Android applications.

10    This means that the Android applications could be changed and tampered with

11    during the packaging and distribution process without the app developers' acknowledgement.

12    For example, the app source code component in the Android App Bundle could be

13    replaced by a different source code component, but use the same App logo and image files in

14    the resource files, compressed and packaged into an APK file, signed by Google Play,

15    distributed to its app users for installation under the same App name and developer name.

16

17

18

19    

20

21

22

23    **Android App Bundle**

24    This creates serious security concerns. People who have access to Google Play

25    Store's servers can replace component(s) in the app bundles, change the behave of the apps,

26    generate and sign the APK files, and distribute them via the Google Play Store to the app users

27    for installation, without the app developer's acknowledgement or authorization. Essentially, it

28    opens a doorway to hijack the Android apps and their user base.

# Google's statement in Section 2.7 is fraudulent and intentional

# misrepresentation

In the Amended Settlement Agreement filed on October 12, 2022, Section 2.7 reads as follows:

> 2.7 On October 4, 2021, Google released Android 12, an updated version of the Android operating system. Google had previously announced, in September 2020, that Android 12 would include certain changes Google believes make it even easier for people to use other app stores on their mobile devices while being careful not to compromise the safety measures Android has in place. More specifically, Android 12 introduced a new method to allow installer apps to perform app updates without requiring the user to confirm the action.

Section 2.7 is fraudulent and intentional misrepresentation under California's Civil Code section 1710.

Google announced Android 12 in May 2021, stating that it allows installer apps to perform app updates without requiring permissions from the users [2].

**techradar** THE SOURCE FOR TECH BUYING ADVICE

Home > News > Mobile Phones

### Android 12 will make it easier to use Google Play Store alternatives

By Rhys Wood published May 20, 2021

Android 12 opens the floodgates

Google has announced Android 12 will be more accommodating of third party installers and app stores. The update, currently being tested in the Android 12 beta, allows third party app stores to install apps and updates without requiring permission from the user.

Reported by XDA-Developers, it appears that Google is aiming to make Android 12 a friendlier operating system for third party Google Play alternatives, allowing them to manage apps and updates without direct intervention from the user, much like the Play Store itself is able to perform with automatic updates.

### A better Android experience?

On the surface, it might be easy to read this as a bit of a security concern for Android 12, especially when it comes to the thought of third party app stores installing updates without the user's knowledge or permission. However, Google has stressed that third party alternatives will have to follow strict guidelines to allow for this functionality.

2.  https://www.techradar.com/news/android-12-will-make-it-easier-to-use-google-play-store-alternatives

1        This means that a tampered APK file (malware) can be directly installed onto

2  app users' Android devices without the users' acknowledgement and permission. Since the

3  tampered app may use the same app name, logo, image files and user interface components,

4  and it is distributed under the same developer name, it would be almost impossible for its app

5  users to tell that the updated Android application was tampered with malware.

6        Furthermore, after the tampered Android app (malware) completed the tasks on

7  users' devices, the app installer may install the original untampered APK file onto app users'

8  devices without notifying the users, essentially erase the trace of the malware.



1     Google's requirement of deferring APK (.apk file) generation and signing to Google
2   Play gives Google the full control of software packaging and publishing process of the Android
3   applications. Because Android applications are written in Java, Android App Bundles and
4   APKs can be decompiled into source code, Google may decompile and modify the applications
5   at its own discretion. Before August 2021, developers use their own private keys to sign the
6   APK files before uploading the APK files to Google Play for publishing. This ensures that the
7   Android applications maintain the original functionality, making sure that the software are not
8   tampered with malware or unauthorized code. This safety measure was removed after Google
9   forcing app developers deferring the signing of the APK files to Google Play.

10     Google's requirement of deferring APK (.apk file) generation and signing to Google
11   Play create a sever security issue for applications that require high security standards, including
12   Android applications of banks, wallets, stock trading platforms, and exchanges.

13     This creates a serious security issue for the businesses that use their Android
14   applications to operate of their businesses. Businesses provides the applications to their
15   customers, and have to cover the liability if their customers are financially damaged by the
16   their Android applications.

17     This is also a serious issue for third party app stores, because they could be blamed
18   for the damages caused by the contaminated Android apps.

19     To understand the situation, it is like a post office asking its customers to leave their
20   envelopes open when mailing their letters, deferring the sealing and signing of their letters to
21   the post office. This is an illegal, unfair and predatory business practice.

22     In comparison, to publish iOS applications in Apple's App Store, developers
23   compress and sign their apps using their private keys, upload the compressed the signed app
24   files (builds) to Apple Store for app review and distribution. If the developers need to change
25   the code afterwards, the developers will have to update the code, retest the software, rebuild
26   the apps, compress and sign the app files, and submit the new builds to App Store for app
27   review and distribution. This process protect the integrity of the software, and the safety of its
28   end users.

The Android applications that are published or updated after August 2021 have high risk of being tampered with malware.





**App Reviews**

"It keeps trying to update, but never does."

"The latest update restarts when it reaches 100% and I can't access my account."

"Won't open stuck in update loop."

https://play.google.com/store/

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



https://play.google.com/store/

**"After the recent update, this app has been a significant disappointment."**

First Republic Bank is taken over by FDIC and sold to JPMorgan in third major bank failure of the year

It's the largest lender to collapse since the 2008 financial crisis – bigger than Silicon Valley Bank, which went under in March.

FIRST REPUBLIC SOLD

https://www.nytimes.com/2023/05/01/business/first-republic-stock-deposits-sale.html

abc NEWS VIDEO LIVE SHOWS CLIMATE

## A timeline of the Silicon Valley Bank collapse

Silicon Valley Bank attracted deposits from startup firms in the tech industry.

By Max Zahn
March 14, 2023, 8:40 AM

Silicon Valley Bank's downfall: a timeline
Silicon Valley Bank's collapse is the largest since the 2008 financial crisis.

Silicon Valley Bank, a regional lender with $210 billion in assets, served the tech industry for 40 years. It collapsed in two days, marking the largest bank failure since the 2008 financial crisis.

https://abcnews.go.com/Business/timeline-silicon-valley-bank-collapse/story?id=97846565

Forbes

FORBES > BUSINESS

BREAKING

## What Happened To Signature Bank? The Latest Bank Failure Marks Third Largest In History

**Brian Bushard** Forbes Staff
*I cover breaking news for Forbes*

Follow

Mar 13, 2023, 01:52pm EDT

Listen to article 5 minutes

Updated Mar 15, 2023, 11:58am EDT

TOPLINE Signature Bank, a New York-based regional bank that became a leader in cryptocurrency lending, shuttered suddenly on Sunday, marking the third-biggest bank failure in U.S. history just two days after the country's second biggest failure, Silicon Valley Bank, rocked the stock market and reignited fears of "challenging and turbulent" economic times.

https://www.forbes.com/sites/brianbushard/2023/03/13/what-happened-to-signature-bank-the-latest-bank-failure-marks-third-largest-in-history/

1    **Google's release terms in Section 14.1 is misleading and fraudulent**
2    **misrepresentation.**

3          Google Play is a publisher of Android applications, Google Play does not own the
4    Android applications developed by third party developers.

5          Google requires Android developers to defer the APK generating and signing to
6    Google Play, maintains full control of the software packaging and distribution process. By doing
7    this, Google could cause massive manipulation and malware contamination of many important
8    Android applications. Google knows the risk and damage that could be caused by its illegal
9    actions, but intentionally mislead the Class and the Court with its fraudulent statements. Google
10   intends to release itself from the liabilities caused by its illegal actions using the release terms in
11   the Settlement Agreement.

12         In the Amended Settlement Agreement filed on October 12, 2022, Section 14.1 reads
13   as follows:

14

15         14.1 As of the Effective Date, the Settlement Class Members and
           their respective heirs, executors, administrators, representatives,
16         agents, partners, successors, and assigns shall have fully, finally, and
           forever released, relinquished, and discharged any and all past,
17         present, and future claims, actions, demands, causes of action, suits,
           debts, obligations, damages, rights and liabilities, that were brought,
18         could have been brought, or arise from the same facts underlying the
19         claims asserted in the Action, known or **unknown**, recognized now
           **or hereafter**, existing or preexisting, expected or **unexpected**,
20         pursuant to any theory of recovery recognized or available now **or**
21         **hereafter** (including, but not limited to, those based in contract or
           tort, common law or equity, federal, state, territorial, or local law,
22         statute, ordinance, or regulation), against the Released Parties, for
           any type of relief that can be released as a matter of law, including,
23         **without limitation**, claims for monetary relief, damages (whether
24         compensatory, consequential, punitive, exemplary, liquidated, and/or
           statutory), costs, penalties, interest, attorneys' fees, litigation costs,
25         restitution, or equitable relief.
26
27
28

1  **Google's illegal practice of forcing OEMs using Google's Android Operation System**

2      Android operating system (Android OS) is an open source operating system, and is

3  compatible with Android devices. The original Android operating system is often called the

4  vanilla Android Operating System (Plain Android OS). Google's Android Operating system is

5  branched from the original Android operating system (Google Android OS), it is Google's

6  branded version of the Android OS.

7      OEMs have the right to install Plain Android OS on their devices, which is an open

8  source operating system. Android applications are compatible for Android OS, and can be

9  updated to run on Plain Android OS.

10

11

12

13

14

15

16

17

18

19

20

21



22      As shown in the diagram above, OEMs should be allow to install Plain Android

23  operating system (non-Google Android OS), and use third party app stores on their devices.

24      Google uses a plural of interlocking types of contractual agreements with OEMs

25  including AFAs, ACCs and MADAs, MIAs and RSAs to maintain its monopoly power in the

26  market, and maintains Google Play Store's monopoly power on all Android devices.

27      Pursuant to CAL. BUS. & PROF. CODE §§ 17040 ET SEQ, it is unlawful for any

28  person engaged in the production, manufacture, distribution or sale of any article or product

1    of general use or consumption, with intent to destroy the competition of any regular established

2    dealer in such article or product, or to prevent the competition of any person who in good faith,

3    intends and attempts to become such dealer, to create locality discriminations.

4              It is illegal for Google to require OEMs to comply with Google's requirements on

5    devices that do not install Google's Android OS. It is illegal for Google to offer OEMs

6    Revenue Share Agreements ("RSAs") or other incentives in exchange of destroying the

7    competition of any third party providers or Android app publishers.

8              App stores operate as app publishers on mobile devices. There are more than 2832

9    book publishing houses in US, but why there are only one major Android app publisher

10   (Google Play Store) in US?

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CONCLUSION

2

Google's unfair and predatory business practices in a plural of markets makes it

3 impossible for it to maintain a neutral, unbiased position as an equal opportunity app publisher

4 serving application developers and businesses, who are and may be in the future, competitors

5 of Google in these markets.

6

Google's behavior violates antitrust and consumer protection law. Tang and the

7 Class seek monetary relief to redress the injuries caused by Google's past and ongoing conduct,

8 and it seeks injunctive relief to stop Google's ongoing improper, unlawful, and harmful

9 behavior in the relevant markets.

10

The terms in the Amended Settlement Agreement, including but not limited to

11 Section 2.7 is fraudulent and intentional misrepresentation under California's Civil Code

12 section 1710.

13

Pursuant to CA. BUS & PROF. CODE §§ 16722, any contract or agreement in

14 violation of this chapter is absolutely void and is not enforceable at law or in equity.

15

Because Google made fraudulent and intentional misrepresentation statements in the

16 Settlement Agreement filed on October 12th, 2022, the Settlement Agreement is void and not

17 enforceable at law or in equity.

18

19

## CLASS ACTION ALLEGATIONS

20 Based on the foregoing allegations, Tang and the Class claim for relief include those set forth

21 below.

22

23

24

25

26

27

28

1

2

## FIRST CAUSE OF ACTION
### Violations of the Sherman Act (15 U.S.C. §§ 1, 2, 3)

3    Tang repeat and re-allege every allegation above as if set forth herein in full.

4    Tang bring this federal law claim on her own behalf and on behalf of the Class.

5    Google's conduct as described herein, including its unlawful practices in restraint of

6 trade, is exclusionary vis-à-vis its rivals in the market for Android OS app distribution.

7    Google has behaved as alleged herein to achieve, maintain, and grow its monopoly

8 in the market for Android OS app distribution, with the effect being that competition is

9 foreclosed and that developer choice is gravely diminished. So is innovation.

10    There is no valid business necessity or pro-competitive justification for Google's

11 conduct. Instead, Google's actions are designed to destroy competition as alleged herein.

12    Tang and the Class have been injured, and will continue to be injured, in their

13 businesses and property as a result of Google's conduct.

14    Tang and the Class are entitled to an injunction to prevent Google from persisting in

15 its unlawful behavior to their detriment, including the harm that its behavior is causing to their

16 businesses.

17    Tang and the Class are therefore entitled to restitution and injunctive relief pursuant

18 to 15 U.S.C.

19

## SECOND CAUSE OF ACTION
### Violations of California's Unfair Competition Law ("UCL"),
### (Cal. Bus. & Prof. Code §§ 17200, et seq.)

20

21    Tang repeat and re-allege every allegation above as if set forth herein in full.

22    Tang bring this federal law claim on her own behalf and on behalf of each member.

23    California's Unfair Competition Law (UCL) defines "unfair competition" to include

24 any "unlawful, unfair, or fraudulent" business act or practice. CAL. BUS. & PROF. CODE §§

25 17200 et seq. As these are stated in the disjunctive, the UCL sets up three prongs—the

26 unlawful, unfair, and fraudulent prongs—the violation of any of which constitutes a violation

27 of the UCL.

28

1    Google has engaged in, and continues to engage in, acts of unfair competition as

2  defined in California's UCL. More specifically, Google, based upon the conduct alleged herein,

3  has violated the unlawful, unfair, and fraudulent prongs of the UCL.

4    Google's acts of unfair competition include its violations of the Sherman and

5  Cartwright Acts as alleged herein.

6    Google has violated the unlawful, unfair, and fraudulent prongs of the UCL.

7    Google's unlawful unfair, and fraudulent conduct has caused Tang and the Class to

8  suffer injury in fact. Tang and the Class have lost money or property as a result of Google's

9  unlawful, unfair, and fraudulent behavior.

10    Tang and the Class are entitled to an injunction to prevent Google from persisting in

11  its unlawful unfair, and fraudulent behavior to their detriment.

12    Tang and the Class are therefore entitled to restitution and injunctive relief pursuant

13  to the UCL.

14    ### THIRD CAUSE OF ACTION
      #### Violations of The Cartwright Act;
15    ### TYING AS ALTERNATIVE BASIS FOR RESTRAINT OF TRADE
      #### (Cal. Bus. & Prof. Code §§ 16700, *et seq.*)
16

17    Tang repeat and re-allege every allegation above as if set forth herein in full.

18    Tang brings this federal law claim on her own behalf and on behalf of the Class.

19    Google's acts and practices detailed above violate the Cartwright Act, Cal. Bus. &

20  Prof. Code § 16700 *et seq.*, which prohibits, *inter alia*, the combination of resources by two or

21  more persons to restrain trade or commerce or to prevent market competition. *See* §§ 16720,

22  16726.

23    Under the Cartwright Act, a "combination" is formed when the anti-competitive

24  conduct of a single firm coerces other market participants to involuntarily adhere to the anti-

25  competitive scheme.

26

27

28

1    Google has immense, monopoly power in the tying market— the market for

2    Android OS app distribution.

3    The tying product, Android app distribution, is distinct from the tied product,

4    Android Operating System and Android in-app payment processing. Google's unlawful tying

5    arrangement thus ties two separate products that are in separate markets.

6    Google's conduct forecloses competition in the market for Android app distribution

7    and Android in-app payment processing. Google's conduct thus affects a substantial volume of

8    commerce in that market.

9    Google has thus engaged in a *per se* illegal tying arrangement. *See* ¶¶ 190-195,

10   *supra*.

11   As app developers that consume in-app payment processing for in-app subscription

12   products, Tang and the Class have been harmed by Google's anticompetitive conduct. Tang and

13   members of the putative class have suffered and continue to suffer damages and irreparable

14   injury, including ongoing harm to their businesses, and such damages and injury will not abate

15   until the Court issues an injunction ending Google's anticompetitive conduct issues.

16   Tang and the Class are entitled to an injunction to prevent Google from persisting in

17   its unlawful behavior to their detriment.

18   Tang and the Class are therefore entitled to restitution and injunctive relief pursuant

19   to the Cartwright Act.

20

21   **FOURTH CAUSE OF ACTION**
     **Fraudulent Misrepresentation**

22   **(Cal. Civil Code §§ 1710, *et seq*.)**

23   Tang repeat and re-allege every allegation above as if set forth herein in full.

24   Tang bring this federal law claim on her own behalf and on behalf of each member.

25   Google made fraudulent statement to the Court and to the Class, stating that

26   "Android 12 would include certain changes Google believes make it even easier for people to

27   use other app stores on their mobile devices while being careful not to compromise the safety

28   measures Android has in place. "

1    Google made fraudulent statement to the Court and the Class, stating that "this aspect

2  of Android 12 to be consistent with Google's belief and longstanding practice that developers

3  should have a choice in how they distribute their apps and that stores should compete for the

4  user's and developer's business." (Section 2.7 of the Settlement Agreement)

5    Google intentionally making the fraudulent statement to the Court and the Class, with

6  the statement of "Google also acknowledges that the pendency of this lawsuit was a factor in its

7  decision to invest in this aspect of Android 12". (Section 2.6 of the Settlement Agreement)

8  Google used this lawsuit and the Court to conduct its unlawful behavior of forcing the Class to

9  deferring the generation of APK and signing to Google Play, and forcing OEMs to accept Google

10  illegal practice of updating Android applications without users' acknowledgement and

11  permission, rendering the devices vulnerable to malware and attack.

12    Google represented to the Court and the Class that these statements were true. But

13  these statements are actually false.

14    Google knew the representation was false, but intentionally mislead the Court and the

15  Class to believe that it is true.

16    Google intended that the Court and the Class to rely upon these statements, and accept

17  Google's strategy of forcing the Class to deferring the generation of APK and signing to Google

18  Play.

19    The Court and the Class relied upon these statements and agreed to the Preliminary

20  Settlement Agreement, that included the fraudulent statements made by Google.

21    The Class was harmed by the reliance. Developers are forced to deferring the

22  generation of APK and signing to Google Play, unknowingly letting their applications be

23  tempered with malware during the software packaging and distribution process, and distributed to

24  the app users using their developer names.

25    The OEMs were harmed by the reliance, allowing their devices to let Google updating

26  apps without users' acknowledgement and permission, and rending the devices vulnerable to

27  malware and attack.

28

1    The consumers were harmed by this reliance, allowing Google updating apps on
2  their devices without users' acknowledgement and permission, rending their Android devices
3  vulnerable to malware and attacks.

4    The businesses that offer these Android applications were harmed by this reliance,
5  suffering damages resulting from the tempered Android applications and the malware attacks.

6    Google intentionally concealed its true intention in its fraudulent statements, making
7  the Class believed that they would benefit from Android 12.

8    But in fact, Google's unlawful and fraudulent representation has caused the Class to
9  suffer injury. the Class have lost money or property as a result of Google's unlawful, unfair,
10  and fraudulent behavior.

11    Google received the benefit of forcing the Class to deferring the generation of APK
12  and signing to Google Play, and forcing OEMs to accept Google updating apps without users'
13  acknowledgement and permission, based on their fraudulent representation.

14    Tang and the Class are entitled to an injunction to prevent Google from persisting in
15  its unlawful behavior to their detriment.

16    Tang and the Class are therefore entitled to restitution and injunctive relief.

17                          **FIFTH CAUSE OF ACTION**
                                      **Fraud**
18    Tang repeat and re-allege every allegation above as if set forth herein in full.

19    Tang bring this federal law claim on her own behalf and on behalf of each member.

20    Google made fraudulent statement to the Court and to the Class, stating that
21  "Android 12 would include certain changes Google believes make it even easier for people to
22  use other app stores on their mobile devices while being careful not to compromise the safety
23  measures Android has in place. " (Section 2.7 of the Settlement Agreement)

24    Google made fraudulent statement to the Court and the Class, stating that "this
25  aspect of Android 12 to be consistent with Google's belief and longstanding practice that
26  developers should have a choice in how they distribute their apps and that stores should
27  compete for the user's and developer's business." (Section 2.7 of the Settlement Agreement)

28    Google intentionally used the fraudulent statement to the Court and the Class, with

1   the statement of "Google also acknowledges that the <u>pendency of this lawsuit was a factor in its</u>

2   <u>decision to invest in this aspect of Android 12</u>". (Section 2.6 of the Settlement Agreement)

3          Google used this lawsuit and the Court to conduct its unlawful behavior of forcing the

4   Class to deferring the generation of APK and signing to Google Play, and forcing OEMs to accept

5   Google updating apps without users' acknowledgement and permission, rendering the devices

6   vulnerable to malware and attack.

7          Google represented to the Court and the Class that these statements were true. But

8   these statements are actually false.

9          Google knew the representation was false, but intentionally mislead the Court and the

10   Class to believe that it is true.

11          Google intended that the Court and the Class rely upon these statements, and accept

12   Google's strategy of forcing the Class to deferring the generation of APK and signing to Google.

13          The Court and the Class relied upon these statements and agreed to the Preliminary

14   Settlement Agreement, that included the fraudulent statements made by Google.

15          The Class was harmed by the reliance. Android developers are forced to deferring the

16   generation of APK and signing to Google Play, unknowingly letting their applications be

17   tempered with malware during the software packaging and distribution process, and distributed to

     their app users using their developer names.

18          The OEMs were harmed by the reliance, allowing their devices to let Google updating

19   apps without users' acknowledgement and permission, and rending the devices vulnerable to

20   malware and attack.

21          The consumers were harmed by the reliance, allowing Google updating apps on their

22   devices without their acknowledgement and permission, rending their Android devices vulnerable

23   to malware and attack.

24          The businesses that offers these Android applications were harmed by this reliance,

25   suffering damages resulting from the tempered Android applications.

26          Google intentionally concealed its true intention in these fraudulent statements.

27          Google's unlawful and fraudulent representation has caused the Class to suffer injury.

28

1    Tang and the Class have lost money or property as a result of Google's unlawful,

2    unfair, and fraudulent behavior.

3    Google received the benefit of forcing the Class to deferring the generation of APK

4    and signing to Google Play, and forcing OEMs to accept Google updating apps without users'

5    acknowledgement and permission, based on the fraudulent representation.

6    Google received the benefit of the reliance, and gained control of millions of users'

7    Android devices and the apps installed on their devices using its false statements.

8    Tang and the Class are entitled to an injunction to prevent Google from persisting in its

9    unlawful behavior to their detriment.

10    Tang and the Class are therefore entitled to restitution and injunctive relief.

11    **SIX CAUSE OF ACTION**
      **Unjust Enrichment**

12

13    Tang repeat and re-allege every allegation above as if set forth herein in full.

14    Tang bring this federal law claim on her own behalf and on behalf of each member.

15    As a result of their unlawful conduct described above, Defendants have been unjustly

16    enriched.

17    Google has been unjustly enriched by the receipt of, at a minimum, unlawfully gained

18    profits on sales of the relevant products and services, by its manipulation of millions of Android

19    devices and Android application users' accounts and information, and by its manipulation of the

20    market, since August 2021.

21    Google has benefited from their unlawful acts and it would be inequitable for them to

22    be permitted to retain any of the ill-gotten gains resulting from the harm they made to Tang and

23    members of the Class.

24    Tang and members of the Class are entitled to the amount of the Defendants' ill-gotten

25    gains resulting from their unlawful, unjust, and inequitable conduct.

26

27

28

1                                   **PRAYER FOR RELIEF**

2            WHEREFORE, Tang and members of the Class requests that the Court enter

3 judgement on their behalf, by adjudging and decreeing:

4            A.  That the Court reject the Final Settlement Agreement and render it as invalid

5 and void;

6            B.  That Defendants have contracted, combined and conspired in violation of the

7 Sherman Act;

8            C.  That Defendants have contracted, combined and conspired in violation of the

9 Cartwright Act;

10            D.  That Tang, Plaintiff, and the Class have been injured in their business and

11 property as a result of Defendants' violations;

12            E.  That Tang, Plaintiff, and the Class recover damages, as provided by law,

13 determined to have been sustained as to each of them, in an amount to be trebled in

14 accordance with the antitrust laws, and that judgment be entered against Defendants on

15 behalf of Plaintiff and the Class;

16            F.  That Tang, Plaintiff, and the Class recover their costs of suit, including

17 reasonable attorneys' fees, costs, and expenses of the lawsuit, as provided by law;

18            G.  That Defendants, their subsidiaries, affiliates, successors, transferees, assignees

19 and the respective officers, directors, partners, agents, and employees thereof and all other

20 persons acting or claiming to act on their behalf be permanently enjoined and restrained

21 from continuing and maintaining the combination, conspiracy, or agreement alleged herein;

22            H.  That Tang, Plaintiff, and the Class be awarded pre-judgement and post-

23 judgement interest, and that such interest be awarded at the highest level rate from and

24 after the date of service of the initial complaint in this action;

25            I.  That Tang, Plaintiff, and the Class are entitled to equitable relief appropriate of

26 remedy Defendants' past and ongoing restraint of trade, including:

27                A.  A judicial determination declaring the rights of Tang, Plaintiff, and the Class,

28            and the corresponding responsibilities of Defendants; and

1          B.  Issuance of a permanent injunction against Defendants and their parents,

2     subsidiaries, affiliates, successors, transferees, assignees and the respective officers,

3     directors, partners, agents, and employees thereof and all other persons acting or claiming

4     to act on their behalf from violations of the law as alleged herein;

5          J.  That the Court award them and the proposed class all appropriate relief, to include,

6     but not be limited to, injunctive relief requiring that Google cease the abusive, unlawful, and

7     anticompetitive practices described herein (including pursuant to federal antitrust law, *see,*

8     *e.g.,* 15 U.S.C. § 26, and state law, *see, e.g.,* Cal. Bus. & Prof. Code §§ 16750 and 17203, as

9     requested herein); declaratory relief, adjudging such practices unlawful; as well as monetary

10    relief, whether by way of restitution (*see, e.g.,* Cal. Bus. & Prof. Code § 17203) or damages,

11    including treble damages (*see, e.g.,* 15 U.S.C. § 15(a), and Cal. Bus. & Prof. Code § 16750),

12    or other multiple or punitive damages, or restitution, where mandated by law (including

13    federal antitrust law, *see, e.g.,* 15 U.S.C. § 15(a)) or equity or as otherwise available; together

14    with recovery of their costs of suit, to include their reasonable attorneys' fees, costs, and

15    expenses (including pursuant to federal and state antitrust law, *see, e.g.,* 15 U.S.C. § 15(a) and/

16    or 15 U.S.C. § 26 and Cal. Bus. & Prof. Code § 16750; *see also* Cal. Code Civ. Pro. §

17    1021.5)), together with pre- and post-judgment interest to the maximum levels permitted by

18    law or equity.

19          K.  That the Court grant such additional orders or judgments as may be necessary to

20    prevent the unlawful practices complained of herein; and

21          L.  That the Court award Tang and the proposed class such other, favorable relief as

22    may be available and appropriate under federal or state law, or at equity.

23

24    Date: April 4, 2023                    Respectfully Submitted,

25                                  Grace Tang

26                                  By: *s/ Grace Tang*

27                                    Grace Tang<br>                                  PO Box 691543

28                                  Stockton, CA 95269<br>                                  *Pro Per*