**FILED**

JUN 05 2023   Sc

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Grace Tang
PO Box 691543
Stockton, CA 95269

Class Member
*Pro Per*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE GOOGLE PLAY DEVELOPER ANTITRUST LITIGATION | Case No. 3:20-cv-05792-JD |
| *Related Actions:*<br>*Epic Games, Inc. v. Google LLC,*<br>*No. 3:20-cv-5671-JD*<br>*In re Google Play Consumer Antitrust Litigation,* No. 3:20-cv-5761-JD<br>*In re\* Google LLC Antitrust Litigation Litigation,* No. 3:21-md-02981-JD | **TANG'S RESPONSE TO DEVELOPER PLAINTIFFS' RESPONSE TO SETTLEMENT OBJECTION** |

1

## INTRODUCTION

2      Class Member Grace Tang ("Tang") has submit her Objection to the Settlement (ECF

3  No. 253). Tang submit this response to the developer Plaintiff's response to the Settlement

4  objection filed by Tang (ECF No. 256).

5      Tang alleges the following (a) upon personal knowledge with respect to the matters

6  pertaining to the Class; (b); upon professional knowledge with respect to the matters pertaining to

7  the Class; (c) upon information and belief with respect to all other matters, based upon, among

8  other things, the material facts related to the subject matter of this litigation; (d) and upon the

9  Declaration of Grace Tang (ECF No. 253).

10

## PRELIMINARY STATEMENT

11      Tang's objection was filed and served to the parties timely pursuant to Rule 3.513 of

12  the California Rules of Court.

13      The Settlement Agreement is unfair and fraudulent because Google failed to disclose

14  material facts involving the subject matter of the Settlement. Google has conducted fraud in the

15  inducement in the Settlement. The Class was misled because of Google's knowingly inaccurate

16  statement in the Settlement Agreement that the Class reasonably relied upon.

17      The Settlement Agreement is unfair, fraudulent and invalid because the Class

18  Counsel(s)' intentionally omit material facts in the Settlement Agreement, made fraudulent

19  misrepresentation to the Class. The Class Counsel(s) has conducted fraud in the inducement. The

20  Class was misled and silenced because of the Class Counsel(s)'s knowingly inaccurate statement

21  that the Class reasonably relied upon.

22      The Settlement is unfair, inadequate, and invalid because it is not a result of arm's-

23  length Negotiations. It failed to reflect a meeting of the minds, due to the fraud in the inducement

24  conducts of Google, the Class Counsel(s) and the Class Representative.

25      Google on its own conducted actions before the Effective Date of the Settlement,

26  materially changed the scope of the facts underlying the claims asserted in the Action, causing

27  further damages to the Class.

28

1    The Settlement Agreement and Release is unfair, inadequate and unreasonable because
2  Google's actions conducted before the Effective Date materially altered the Settlement. The
3  Risks, Class Period and Class Size stated in the Settlement Agreement has substantially changed.
4  The percentage of the Settlement Class's single damages in the face of substantial risks
5  recalculated for the current date is drastically below the standard.

6    The Settlement Agreement and Release is unfair and fraudulent because it deprives the
7  Class the right to sue Google for claims that could have been asserted in the Action, but was not
8  included because of the misrepresentation of the Class Counsel(s) and Google.

9    The settlement relief is inadequate, unreasonable, and unfair to the Class because the
10  release does not adequately reflect the damages caused by Google's conduct before the Effective
11  Date of the Settlement.

12    The Settlement is unfair because the Class was deprived of the right of e-filing
13  objections to the case docket for this litigation. The Court's e-filing software Pacer automatically
14  rejects the filings of the Class members. Pacer is the Court's software but tampered by Defendant
15  Google's software including Google Analytics and Google Tag Manager.

16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **STATEMENT OF FACTS**



14       Above is a diagram of the timeline of this Settlement.

15       Four months before the Class Period ended on December 31, 2021, Google started the

16 illegal actions of depriving developers the right of signing and securing their apps via generating

17 encrypted APK files, a method used by developers to protect their apps form malware tampering.

18 Google omitted this material fact in the Settlement Agreement.

Android Developers  >  Docs  >  Guides                                      Was this helpful?  👍  👎

# **About Android App Bundles** 🔖 ⌄

 **Important:** From August 2021, new apps are required to publish with the Android App Bundle on Google Play. New apps larger than 150 MB are now supported by either Play Feature Delivery or Play Asset Delivery.

An *Android App Bundle* is a publishing format that includes all your app's compiled code and resources, and defers APK generation and signing to Google Play.

26       Google displayed the information of its illegal conduct via a small dialog, in small fonts on

27 developer's console on Google Play, making it visible to developers only when they are submitting

28 apps for publishing or update via the Google Play Store.

1      When Android 12 was release on October 4th, 2021, just two months before the Class

2  Period ended, Google started its conduct of depriving Android users the right to manually

3  authorize app updates on their Android devices.

4      Ten months later, on June 30, 2022, this conduct was inserted into the Plaintiff's

5  Motion for Preliminary Settlement Approval (ECF No. 218) as part of the relief for the

6  Settlement.

7      As for structural relief, Google has made a set of material
   commitments that add further value to the Settlement. In particular, Google

8      has:                                  ...

9          •   Agreed to make changes to the Android 12 operating system
   that allow auto updates from third-party Android app stores and to

10  maintain these changes for three years from implementation, and
   acknowledged that the pendency of this lawsuit was a factor in its decision

11  to invest in this aspect of Android 12; and

12                                     ...

13      Google intentionally misrepresented this material fact, making false statement that it

14  will not compromise the safety measures Android had in place (ECF 229-1 Section 2.7).

15      The material fact is that Google did the opposite by removing the safety measures that

16  Android had in place, at almost the same time, from both the developer side and the consumer

17  side, intentionally compromised the safety of Android devices.

18      Google stated that removing users's authority on app updates on their devices is

19  technically required for the implementation of the setRequireUserAction(int) function of Android

20  12. In Section 5.2.3 of the Settlement Agreement (ECF No. 229-1), it states that:

21

22      5.2.3 For a period of at least three (3) years following the public release of
   Android 12 (October 4, 2021), Google shall, subject to technical requirements

23  published at https://developer.android.com/reference/android/content/pm/
   PackageInstaller.SessionParams#setRequireUserAction(int), maintain in

24  subsequent versions of Android the changes implemented in Android 12 that Google
   believes made it even easier for people to use other app stores on their mobile devices

25  while being careful not to compromise the safety measures Android has in place. More
   specifically, Android 12 introduced a new method to allow installer apps to perform

26  app updates without requiring the user to confirm the action.

27

28

The following screenshots shows the content that are displayed at this website url.

https://developer.android.com/reference/android/content/pm/PackageInstaller.SessionParams#setRequireUserAction(int)



As shown in the screenshot, The setRequireUserAction(int) function is an **optional** function, meaning that this method is not required for all Android applications, nor all devices. Instead, it is an optional choice that could be set by the device users via a switch button or a checkbox provided in the settings menu of the Android devices. This provides material evidence that Google's action of depriving Android users the right of authorizing the app updates on their devices is an act of tort. This is a material evidence that Google's statement in Section 5.2.3 of the Settlement Agreement (ECF No. 229-1) is intentional fraudulent misrepresentation.

1        Furthermore, the other methods listed on that webpage can also cause server security

2   threat to the Android users. For example, the method of setRequestUpdateOwnership enables

3   people other than the device owners to install apps on their devices.

4        Starting from Android 12, users' safety measures of protecting their Android devices

5   from malware intrusions are intentionally removed by Google.

6        At around the same time, starting from August 2021, the developer's method of signing

7   and securing their apps via encryption and APK generation, a safety measure of protecting the

8   apps from malware contaminations is also removed by Google.

9        Because it is a procedure root level security breach, started and has been continued

10   since August 2021, the scale of the breach is unprecedented, and the actual damages is huge.

11        The Android applications that are published or updated after August 2021 have high

12   risk of being tampered with malware. Some of the material evidences have been reported by the

13   app users, some evidences are confirmed by the timeline of the events.

14        Signature Bank released a Signature2Go Mobile app on October 21, 2021. Its Android

15   app users have issued many alerts regarding issues that the apps are not being updated properly in

16   their app reviews. These app reviews are recorded in this app's listing information on the Google

17   Play Store.

18        Silicon Valley Bank released a SVB Go - Mobile Banking app on July 30, 2020, and

19   updated this app on February 17, 2023. Its Android app users have reported issues including the

20   app "walk you through steps to sync with 3rd party accounting software that isn't available yet".

21   Base on this description, the user's private credentials and data on the SVB Go banking app was

22   extracted by a 3rd party using the app.

23        First Republic Mobile Banking App was updated on April 27, 2023, its app users also

24   noticed substantial issues after the app update. One user stated in his app review that "After the

25   recent update, this app has been a significant disappointment. After entering my credentials and

26   logging in, both using the stealth mode and no the stealth mode, I have been met with a

27   completely white screen and nothing being shown…"

28   Signature Bank, Silicon Valley Bank and First Republic all collapsed in 2023. Among them,

1 Silicon Valley Bank, a regional lender with $210 billion in assets, served the tech industry for 40

2 years, collapsed in just two days.

3      More material evidences will come to light when the app developers meet their app

4 users in person, comparing the timeline of the app release and the features being released, with

5 the app malfunction incidences experienced by the app users. The mismatch in the release

6 timeline and the mismatch in the app behavior are material evidences of the malware tampering

7 and security breach in the app release process.

8      The Android devices are owned by the people who purchased these devices, they are

9 not owned by Google. The third-party Android apps are owned by the people and companies that

10 build these apps, they are no owned by Google. Google is tampering with other people's

11 properties, causing severe material damages to other people.

12

13



1
2
3
4
5
6
7
8
9
10
11



**"After the recent update, this app has been a significant**

https://play.google.com/store/                **disappointment."**

12
13
14
15
16
17
18
19
20
21
22
23



24

https://www.nytimes.com/2023/05/01/business/first-republic-stock-deposits-sale.html

25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



https://play.google.com/store/

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





**App Reviews**

**"Unacceptably buggy for a business banking app."**

**"Walks you through steps to sync with 3rd party accounting software that isn't available yet!"**

https://play.google.com/store/

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## A timeline of the Silicon Valley Bank collapse

Silicon Valley Bank attracted deposits from startup firms in the tech industry.

By Max Zahn
March 14, 2023, 8:39 AM



Silicon Valley Bank's downfall: a timeline
Silicon Valley Bank's collapse is the largest since the 2008 financial crisis.

Silicon Valley Bank, a regional lender with $210 billion in assets, served the tech industry for 40 years. It collapsed in two days, marking the largest bank failure since the 2008 financial crisis.

https://abcnews.go.com/Business/timeline-silicon-valley-bank-collapse/story?id=97846565

## Forbes

FORBES > BUSINESS

BREAKING

# What Happened To Signature Bank? The Latest Bank Failure Marks Third Largest In History

Brian Bushard Forbes Staff
I cover breaking news for Forbes



Mar 12, 2023, 01:57pm EDT

 ▶ Listen to article 5 minutes

Updated Mar 16, 2023, 11:56am EDT

 TOPLINE Signature Bank, a New York-based regional bank that became a leader in cryptocurrency lending, shuttered suddenly on Sunday, marking the third-biggest bank failure in U.S. history just two days after the country's second biggest failure, Silicon Valley Bank, rocked the stock market and reignited fears of "challenging and turbulent" economic times.

https://www.forbes.com/sites/brianbushard/2023/03/13/what-happened-to-signature-bank-the-latest-bank-failure-marks-third-largest-in-history/

1  **The original Complaint did not request automatic app updates**

2  The following is stated in the Class Action Complaint filed on August 17, 2020, page 17 (ECF

3  No. 1).

4  [54] Google Play services is different from the Google Play store. In fact, one method of
distribution is via Google Play. (*See, e.g.,*

5  https://play.google.com/store/apps/details?id=com.google.android.gms&hl=en_US ("Google Play
services is used to update Google apps and apps from Google Play. This component provides core

6  functionality like authentication to your Google services, synchronized contacts, access to all the
latest user privacy settings, and higher quality, lower-powered location based services.") (last

7  accessed Aug. 15, 2020).) In its Overview of Google Play Services, Google writes:

8  With Google Play services, your app can take advantage of the latest, Google-
powered features such as Maps, Google+, and more, with automatic platform updates

9  distributed as an APK through the Google Play store. This makes it faster for your
users to receive updates and easier for you to integrate the newest that Google has to

10  offer.

    \* \* \*

11  The client library contains the interfaces to the individual Google services and

12  allows you to obtain authorization from users to gain access to these services with
their credentials.

13  https://developers.google.com/android/guides/overview (last accessed Aug. 15, 2020).

14

15  In August 2020, Google had stated in its guideline that automatic updates had been performed by

16  obtaining authorizations from the users. It did not require depriving users' authority on approving

17  the automatic updates.

18  The original Complaint in this litigation (ECF No. 1) did not contain any request from

19  developers regarding auto update apps downloaded from stores outside Google Play.

20  On June 30, 2022, when the Developer Plaintiff's Motion for Preliminary Settlement

21  Approval was filed (ECF No. 218), LittleHoot filed a Declaration suggesting Google update

22  Android 12 to facilitate auto updates downloaded outside the Google Play store (ECF No. 218-5).

23  Two months later, Google released Android 13 on August 15, 2022, but this fact was omitted in

24  the Amended Settlement Agreement (ECF 229-1).

25  From LittleHoots's perspective, another noteworthy aspect of the

26  settlement is Google's commitment to maintain, for at least three years
following final approval, features in the Android 12 OS that facilitate auto

27  updates on apps downloaded outside the Google Play store.

28

On June 30, 2022, 20 months after the Class Action Complaint (ECF No. 1) was filed, the nexus between Google's illegal actions related to Android 12 and this Action was added into the Settlement, disguised as a relief Google offered to the developers and part of the facts underlying the claims in the Action.

**The scope of the release was changed in the Amended Settlement Agreement**

In the Developer Plaintiff's Motion for Preliminary Settlement Approval that was filed on June 30, 2022 (ECF No. 218, page 7), the Settlement Release was a limited release.

> b. Settlement Release
> In exchange for the monetary and structural relief just described, the Settlement Class would release Google from all past, present, and future claims "that were brought, could have been brought, or arise from the same facts underlying the claims asserted in [this action]." See id. ¶¶ 13.1, 13.2. The proposed Release does not relinquish claims of any developer not within the Settlement Class.

However, in the Amended Settlement Agreement and Release (ECF 229-1), general release clauses have been added into the Agreement. The release was changed from a limited release into an unlimited release, with a no sue clause (ECF No. 229-1, Section 4 and 5.3).

> 5.3 Covenant Not to Sue. In light of the conduct and monetary relief afforded by Google pursuant to this Amended Settlement Agreement, the members of the Settlement Class covenant not to sue Google on any claim that was or could have been asserted in the Action.

Class Members' right under Section 1542 of the California Civil Code, which could help the Class to seek restitution or sue for fraud damages is explicitly released Section 14.3 of the Settlement Agreement.

> 14.3 After entering into this Settlement, the Settlement Class Members and/or Plaintiffs may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the claims released by this Settlement, but they intend to release fully, finally and forever any and all such claims. The Settlement Class Members and Plaintiffs expressly agree that, upon the Effective Date, they waive and forever release any and all provisions, rights, and benefits conferred by:
> (a) Section 1542 of the California Civil Code, which reads:
> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE

HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(b) any law of any state, territory, or possession of the United States (or for any non-U.S. entity or person, their respective country, province, or state), or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

Section 14.1 further released Google's liabilities without limitation.

14.1 As of the Effective Date, the Settlement Class Members and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns shall have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights and liabilities, that were brought, could have been brought, or arise from the same facts underlying the claims asserted in the Action, known or **unknown**, recognized now **or hereafter**, existing or preexisting, expected or **unexpected**, pursuant to any theory of recovery recognized or available now **or hereafter** (including, but not limited to, those based in contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or regulation), against the Released Parties, for any type of relief that can be released as a matter of law, including, **without limitation**, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

The Amended Settlement Agreement also added in terms to dismiss the Act with prejudice.

14.4 Upon the Effective Date, the Action shall be dismissed with prejudice. Class Counsel shall have the responsibility for ensuring that the Action is dismissed with prejudice in accordance with the terms of this Settlement.

The scope of the release was changed from a limited release into an unlimited release in the Amended Settlement Agreement (ECF No. 229-1). The nexus between Google's illegal actions after August 2021 (including its actions related to Android 12) and this Action was inserted into the Settlement Agreement, disguised as part of the facts underlying the claims.

## ARGUMENT

Google removed the safety measures of Android almost simultaneously from both the developers' side and the app consumers' side. Google intentionally compromised the safety measures of Android via these actions, causing mass manipulation and malware contamination of many important Android applications. Some of these malware intrusions have been observed and reported by app users in their app reviews (Page 12 to 15 ECF No. 253). People are in the process of assessing the impact caused by the malware intrusions and the damages caused by these conducts.

Google have been performing these illegal conducts since August 2021, and will continue these illegal conducts unless stopped by law. The damages caused by these conducts continue to increase, the material damages are likely to be more than $100 billion dollars.

**Google's Conducts Before the Effective Date Changed the Substantial Risks, Period and Size of the Class, Materially Altered the Settlement**

In the Amended Settlement Agreement, other reliefs start after the Effective Date of the Settlement. These reliefs include Google modifying the Google Play Developer Distribution Agreement (DDA), creating Indie App Corner and others. But the conduct regarding Android 12 had started on October 4, 2021, which is before the Effective Date of the Settlement, even before the Preliminary Settlement was approved. Google's conducts before the Effective Date of the Settlement have inflicted substantial damages to the Class, substantially changed the percentage of the Settlement Class' single damages. A great number of developers were injured by this damage. The size and period of the Class are inadequate compare to the scope of the damage, or the long term effect of the damages caused by Google's illegal actions.

The Class Period ended only four months after Google started these illegal conducts, many developers who are affected by these conducts are not included in the Class Period. More than 21 months have passed since August 2021. The Class Period, the Class Size and the percentage of the Settlement Class' single damages have changed drastically from the previous numbers. In the face of the substantial risks. The substantial risks are drastically increased, caused by Google's removing the safety measures of Android, likely to be 100 times more risk.

The percentage of the Settlement Class' single damages was calculated to be in the range of 36 to 47 percent - in the face of substantial risks based on the data collected before August 2021. The Settlement Class's single damages are most likely be calculated in the range of 0.36 to 0.47 percent or less - in the face of substantial risks based on the data collected at the current date.

"The court must determine the settlement is fair, adequate, and reasonable. The purpose of the requirement is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." (Dunk v. Ford Motor Co. (1996) 48 Cal.App.4th 1794, 1801 [internal quotations and citations omitted].) "The trial court has broad discretion to determine whether the settlement is fair." (Ibid.) "The Court found this increase in class size materially altered the settlement. As a result, the Court could not find the settlement is fair, adequate, and reasonable." (Nguyen vs. SK Capital Group, Inc Feb. 01, 2020 in Orange County, CA).

The Settlement Agreement and Release is unfair, inadequate and unreasonable because the Class Period and Class Size stated in the Settlement Agreement has substantially changed, this change materially altered the Settlement. The recalculated percentage of the Settlement Class's single damages in the face of substantial risks at the current date is below the standard. The settlement relief is not adequate, not reasonable, nor fair to the Class.

### The Settlement Agreement is Not a Result of Arm's-length Negotiations

The original Complaint in this litigation (ECF No. 1) filed on August 17, 2020 did not contain any developer's request regarding Android 12. Android 12 was released on October 4, 2021, just two months before the end of the Class Period. Ten months later, LittleHoots mentioned that Google's plan, that Google is planning on maintaining a feature in Android 12 to facility auto updates on apps downloaded outside the Google Play store **after the Effective Date of the Settlement**.

How did LittleHoots know about Google's plan on updating Android 12, especially when Android 13 was released just two months later?

Third party app stores require app developers to upload their app APKs via their app

1   stores' websites for app publishing and update, it is unrelated to Android 12. Why did LittleHoots

2   advocate for Android 12 when it is not related to third party app store? Why did Android 12 get

3   inserted into the Settlement, as part of the "relief" for the Class? LittleHoots is a class

4   representative, but it intentionally misled the Class and helped Google in this Action.

5          Android 12 was inserted into the Motion for Preliminary Settlement Approval (ECF

6   No. 218), for the purpose of creating the nexus of Google's actions after August 2021 to this

7   Settlement, misleading the developers to release Google from its liabilities.

8          The Settlement Release in the Preliminary Settlement Approval (ECF No. 218) was a

9   limited release. But it was changed into unlimited release in the Amended Settlement Agreement

10  (ECF No. 229-1). The Class was further deprived of their rights to sue for damages pursuant to

11  Section 1542 of the California Civil Code. Under such terms, this litigation would be dismissed

12  with prejudice and the Class would loss their right to reclaim damages forever. This is unfair and

13  unreasonable to the Class. Pursuant to Fed. R. Civ. P. 23(c)(2), Factors courts consider under Rule

14  23(c)(2) include whether:

15              (A) the class representatives and class counsel have adequately represented the class;

16              (B) the proposal was negotiated at arm's length;

17              (C) the relief provided for the class is adequate, taking into account:

18                  (i) the costs, risks, and delay of trial and appeal;

19                  (ii) the effectiveness of any proposed method of distributing relief to the class,

20  including the method of processing class-member claims;

21                  (iii) the terms of any proposed award of attorney's fees, including timing of

22  payment; and

23                  (iv) any agreement required to be identified under Rule 23(c)(3); and

24              (D) the proposal treats class members equitably relative to each other.

25          This Settlement is unfair, inadequate and unreasonable because the class representative

26  and class counsel(s) have not adequately represented the class. This Settlement is unfair,

27  inadequate and unreasonable because the proposal was not negotiated at arm's length.

28  This Settlement is unfair and unreasonable because the relief provided for the class is inadequate.

**Google failed to disclose material facts involving the subject matter of the Settlement**

Google started its illegal action of depriving Android Developers the right of signing and securing their apps via encryption and APK generation in August 2021, just four months after the end of the Class Period. Google failed to disclose this material fact in the Settlement Agreement.

Google displayed its action via a small dialog, which is displayed to developers when they are submitting apps for publishing via Google Play Store, in small fonts (page 4 of this document).

This dialog is only displayed to developers when they are publishing new apps or updating existing apps via Google Play. Most developers don't see this dialog. Many developers would miss this information because it is displayed in a small font, as if it is just a minor change in the standard procedure. Google did not reveal this important material fact in the Settlement Agreement (ECF No. 229-1).

Just two months before the Class Period ended, Google started depriving app users their rights on authorizing app updates on their Android devices. Google intentionally misrepresented this conduct, and stated in Section 2.7 of the Settlement Agreement that it will not compromise the safety measures Android had in place (ECF No. 229-1). The material fact is that Google did the opposite, intentionally compromised the safety of Android by removing the safety measures of Android almost simultaneously from both the developer side and the consumer side.

Google did not notify the Class about these conducts. The Settlement Agreement was kept confidential until the Preliminary Approval of the Settlement was filed with the Court. Developers were not informed about the Preliminary Settlement Agreement until early 2023. Majority of the Class were not aware about the existence of this litigation until March 2023.

These missing facts are well within the knowledge of Google, but Google chose to omit these material facts in the Settlement Agreement, made false representation to the Class. Google made intentional fraudulent misrepresentation to the Class.

The Class relied on Google's fraudulent statements, was misled and silenced by the Defendant Google.

1   These illegal conducts have been carried out by Google since August 2021, before the

2   Effective Date of the Settlement Agreement, causing substantial material damages to the Class.

3   The Settlement Agreement (ECF No. 229-1) and the Declaration of Grace Tang (ECF No.253)

4   provides material evidence of the fraud committed by Google.

5   The California Supreme Court held that "fraud undermines the essential validity of the

6   parties' agreement.  When fraud is proven, it cannot be maintained that the parties freely entered

7   into an agreement reflecting a meeting of the minds."  (*Id.*, 55 Cal.4th at p. 1182.)

8   The Settlement Agreement and Release is unfair, fraudulent and not valid because

9   Google has committed fraud in the inducement during the Settlement negotiation period. Google

10   has conducted illegal actions causing further damage to the Class before the Effective Date of the

11   Settlement. The parties did not reach a meeting of the minds since Google failed to reveal

12   material facts involving the subject matter of the Settlement, and intentionally made fraudulent

13   misrepresentation to the Class.

**The Class Counsel(s) intentionally made misrepresentation to the Class**

The Settlement Agreement is unfair, fraudulent and invalid because the Class Counsel(s)' intentional misrepresentation and omission of material facts in the Settlement Agreement to the Class. The Class Counsel(s) has conducted fraud in the inducement.

The Class was misled and silenced because of the Class Counsel(s)'s knowingly inaccurate statement that the Class reasonably relied upon.

In the developer Plaintiff's response to the Settlement objection filed by Tang (ECF No. 256), the Class Counsel(s) wrote that:

> To the extent Ms. Tang wishes to pursue her unrelated allegations, nothing in the Settlement or it release would prevent her from doing so. See ECF No. 229-1. Ex.B at §§ 2.7, 5.2.3.
> ...
> Again, the Settlement's release property extends only to claims "that were brought, could have been brought, or arise from the same facts underlying the claims asserted in the Action." Ex.B at §§ 14.1.

The Class Counsel(s) has made verbal statements to Tang that same he/they have made similar statements to the Class Members who have called and/or contacted the Class Counsel(s).

The Class Counsel(s) intentionally omitted the material fact to the Class and Tang that the clause of Covenant not to sue is explicitly included in the Section 5.3 of the Settlement Agreement (ECF No. 229-1).

> 5.3 Covenant Not to Sue. In light of the conduct and monetary relief afforded by Google pursuant to this Amended Settlement Agreement, the members of the Settlement Class covenant not to sue Google on any claim that was or could have been asserted in the Action.

The Class Counsel(s) intentionally omitted the material fact to the Class and Tang that their right under Section 1542 of the California Civil Code, which could help the Class and Tang to seek restitution or affirm the contract and sue for fraud damages would be explicitly released, in Section 14.3 of the Settlement Agreement (ECF No. 229-1).

14.3 After entering into this Settlement, the Settlement Class Members and/or Plaintiffs may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the claims released by this Settlement, but they intend to release fully, finally and forever any and all such claims. The Settlement Class Members and Plaintiffs expressly agree that, upon the Effective Date, they waive and forever release any and all provisions, rights, and benefits conferred by:

(a) Section 1542 of the California Civil Code, which reads:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(b) any law of any state, territory, or possession of the United States (or for any non-U.S. entity or person, their respective country, province, or state), or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

The Class Counsel(s) intentionally omitted the material fact to the Class and Tang that in Section 14.4 of the Settlement Agreement, the Action would be dismissed with prejudice, and the Class would not be able to reopen the Act to seek restitution or sue for fraud damages (ECF No. 229-1).

14.4 Upon the Effective Date, the Action shall be dismissed with prejudice. Class Counsel shall have the responsibility for ensuring that the Action is dismissed with prejudice in accordance with the terms of this Settlement.

These missing facts are within the knowledge of the Class Counsel(s) since they are written in the same Settlement Agreement that the Class Counsel(s) has reviewed and recited to the Class and to Tang. But the Class Counsel(s) has chosen to omit these important material facts to the Class and Tang, misleading the Class Members and Tang, preventing them from objecting to the Settlement.

1   The Class reasonably relied on the Class Counsel(s)' misrepresentation. Other Class

2   Members, except Tang, have not filed their objections to the Settlement. The Class Counsel(s)'s

3   misrepresentation, and the Class's reasonable reliance on the Class Counsel(s)'s misrepresentation

4   caused legal injury and material damages to the Class and Tang.

5   The written terms in the Settlement Agreement are being contradicted by the claimed

6   fraudulent statements of the Class Counsel(s), and the Class suffers material damages inflicted by

7   such contradiction.

8   The Class Counsel(s) has committed fraud in the inducement, misled the Class. The

9   Class Counsel(s)' statement in the developer Plaintiff's response to the Settlement objection filed

10   by Tang (ECF No. 256) and the Settlement Agreement (ECF No. 229-1) provides material

11   evidence of the fraud committed by the Class Counsel(s).

12   The California Supreme Court held that "fraud undermines the essential validity of the

13   parties' agreement.  When fraud is proven, it cannot be maintained that the parties freely entered

14   into an agreement reflecting a meeting of the minds."  (*Id.*, 55 Cal.4th at p. 1182.)

15   The Settlement Agreement and Release is unfair, fraudulent and not valid because the

16   Class Counsel(s) has committed fraud in the inducement to the Class. The parties did not reach a

17   meeting of the minds since the Class Counsel(s) failed to reveal material facts and made

18   fraudulent misrepresentation to the Class in the Settlement.

19   The Settlement Agreement and Release is unfair and fraudulent because it deprives the

20   Class the right to sue Google for claims that could have been asserted in the Action, but was not

21   included because of the misrepresentation of the Class Counsel(s) and Google.

22   **The Court's e-filing software Pacer is tampered by Google's software and unfairly rejected**

23   **the filings of the Class members**

24   The Court's e-filing software Pacer is tampered by Google's software, as show in the

25   following screenshot.

26   The Court's e-filing software Pacer automatically rejects the filings of the Class

27   members to the case docket. Tang tried e-filing her objection to the Settlement multiple times, but

28   was automatically rejected by Pacer each time.

https://pacer.uscourt.gov



The following steps was used to display the network activity of Google's software, that are attached to the Court's website:

1. Open a web browser (Firefox, Google Chrome, Opera) and enter the website url (https://pacer.uscourt.gov).

2. Right click on the web browser.

3. Select "Inspect" on the pop up dialog. (Or select on the toolbar:  Tools -> Browser Tools ->Web Developer Tools if available)

4. Click the "Network" tab.

5. Refresh the webpage.

Google's software, including Google Analytics and Google Tag Manager are attached to the Court's website, automatically collecting data from the users, including the users' IP addresses, web browser types, the links users click on the website and other user information.

The above screenshot shows that Google Analytics and Google Tag Manager automatically tag each user who visits the Court's website with a unique id, and send the data they collected directly to Google's website.

1    Whenever a Class Member accesses the Court Electronic Records, Google automatically
2 tracks and sends the data to Google. Google is the Defendant in this litigation, and it is collecting data
3 (including the data of the Class, the Plaintiffs and their representatives) from the Court's website, and
4 directly sending them to Google. Google is well aware that this is unfair and unreasonable, constitute
5 as obstruction of justice, but Google withheld this information from the Court and the Class.

6    The Court's e-filing software Pacer automatically rejects the filings of the Class
7 Members to the case docket. Tang made an inquiry to the Court and was informed that Class
8 Members need to file a request to get permission to e-file documents to the case docket. Since the
9 Class Members can not e-file documents (including the request) to the case docket, they can not
10 e-file their Objections to the Settlement.

11    Tang mailed her Objection to Settlement to the Court via US Postal Service Priority Mail
12 on April 4th, 2023, but the documents were returned to her via mail in a different envelope. Tang
13 updated and filed her Objection to Settlement with the Court again on May 8, 2023 (ECF No. 253),
14 and served the documents to the parties. According the Rule 3.513 of California Rules of Court, Tang's
15 Objection to the Settlement, Memorandum of Law and Declaration was served and submitted timely.

> Rule 3.513. Service of memorandums and declarations
>
> Unless otherwise provided in the rules in this chapter or directed by the assigned
> judge, all memorandums and declarations in support of or opposition to any petition,
> motion, or application must be served and submitted at least nine court days before
> any hearing on the matter at issue.

**CONCLUSION**

For these reasons, Tang as a Class Member respectfully request the Court for:

1.  Issuance of a permanent injunction against Google and their parents, subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf from violations of the law as alleged in this Action;

2.  Permanent Injunction Relief to prevent Google from conducting or engaging in any active that causing harm to the developers, preventing the Google from engaging in further monopolization, tying and anticompetitive behavior.

3.  Prohibitory Injunctive Relief requiring Google immediately cease its conduct of depriving developers their right of signing and securing their apps via encryption and APK generation, cease its conduct of depriving users the right of authorizing app updates on their devices. That the Court order Google to deprecate and/or rollback the related changes in Android 12, and immediately restore the safety measures on Android.

4.  That the Class are entitled to entitled to monetary relief appropriate to the damages inflicted by Google.

5.  Order modification to the Amended Settlement Agreement (ECF No. 229-1):

    A.  Remove Section 14 from the Amended Settlement Agreement.

    B.  Replace Section 14  with limited release, limit the Settlement Release to claims "that were brought, or arise from the same facts that underlying the claims asserted in this Action. The Release does not relinquish any claims arise from facts related to Google's conducts after July 2021."

    C.  Remove Section 5.3 (Covenant Not to Sue) and Section 15.3.

    D.  Remove Section 2.7 and 5.2.3.

    E.  Modify the Class Period to between August 17, 2016 and July 31, 2021.

    F.  Change the Class Counsel(s) and remove the Class Representative (LittleHoot).

6.  Notify the Class about the modifications, allow the Class to review the modified settlement agreement, file opinions with the Court, opt-out or object to the modified Settlement.

7.  That the Court grant such additional orders or judgments as may be necessary to prevent the unlawful practices complained of herein;

8.  That the Court award the Class all appropriate relief, to include, but not be limited to, injunctive relief requiring that Google cease the abusive, unlawful, and anticompetitive practices described in this Action; declaratory relief, adjudging such practices unlawful; as well as monetary relief, whether by way of restitution (see, e.g., Cal. Bus. & Prof. Code § 17203) or damages, including treble damages (see, e.g., 15 U.S.C. § 15(a), and Cal. Bus. & Prof. Code § 16750), or other multiple or punitive damages, or restitution, where mandated by law (including federal antitrust law, see, e.g., 15 U.S.C. § 15(a)) or equity or as otherwise available; together with recovery of their costs of suit, to include their reasonable attorneys' fees, costs, and expenses (including pursuant to federal and state antitrust law, see, e.g., 15 U.S.C. § 15(a) and/or 15 U.S.C. § 26 and Cal. Bus. & Prof. Code § 16750; see also Cal. Code Civ. Pro. § 1021.5)), together with pre- and post-judgment interest to the maximum levels permitted by law or equity;

9.  That the Court grant the Class the right to view and/or file documents related to this litigation on the Court's website without being tagged or tracked by the Defendant Google; and

10. That the Court award the Class such other, favorable relief as may be available and appropriate under federal or state law, or at equity.

Date: June 5, 2023

Respectfully Submitted,
Grace Tang
By: *s/ Grace Tang*
       Grace Tang
PO Box 691543
Stockton, CA 95269
*Pro Per*